**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF**
**NEW YORK**
-----------------------------------------------------------------X

In re:                              Chapter 7

**THE GATEWAY DEVELOPMENT GROUP, INC.**    Case No. 21-22304-rdd

      **Debtor.**

-------------------------------------------------------------X

**JAMES CARNICELLI, Jr., et. al.**

              **Plaintiffs,**              **Adversary Proceeding**
                                           **No. 21-7093-rdd**

**v.**

**CHRISTOPHER SHESKIER, et al.**

              **Defendants**

-------------------------------------------------------------X

**PLAINTIFF JAMES CARNICELLI, JR.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JOHN J. FARERI'S  MOTION TO DISMISS ALL CLAIMS ASSERTED BY PLAINTIFF JAMES CARNICELLI IN HIS INDIVIDUAL CAPACITY**

**PASTORE LLC**
420 Lexington Ave
Third Floor
New York, NY, 10170
jpastore@pastore.net

**LEVITT LAW LLP**
129 Front Street
Mineola, New York 11501
516.248.9700
slevitt@levittlawllp.com

**DAVIDOFF HUTCHER & CITRON LLP**
120 Bloomingdale Road, Suite 100
White Plains, NY 10605
(914) 381-7400
rlr@dhclegal.com
**Attorneys for Plaintiff**
**James Carnicelli, Jr.**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

LEGAL ARGUMENT ........................................................................................... 7

I.    CARNICELLI'S BREACH OF CONTRACT CLAIM SHOULD NOT BE
      DISMISSED ................................................................................................ 7

   A.   THE SHAREHOLDERS' AGREEMENT PROHIBTS CARNICELLI'S REMOVAL
        AS PRESIDENT AND THEREFORE CARNICELLI IS NOT AN AT WILL
        EMPLOYEE ............................................................................................ 7

   B.   FARERI, WHO IS A SIGNATORY TO THE SHAREHOLDERS' AGREEMENT
        AND THE MAJORITY SHAREHOLDER OF DEVELOPMENT, IS LIABLE FOR
        CARNICELLI'S REMOVAL IN BREACH OF THE AGREEMENT ...................... 9

   C.   CARNICELLI WAS DEPRIVED OF HIS INSPECTION RIGHTS IN VIOLATION
        OF THE SHAREHOLDERS' AGREEMENT ............................................... 11

II.   CARNICELLI'S CLAIM FOR VIOLATION OF CONNECTICUT GENERAL
      STATUTE § 31-72 SHOULD NOT BE DISMISSED ......................................... 12

III.  CARNICELLI'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING
      SHOULD NOT BE DISMISSED BECAUSE CARNICELLI'S ALLEGATIONS
      CONCERNING THE MALICIOUS TRANSFER OF SIGNIFICANT INCOME-
      GENERATING PROJECTS AWAY FROM DEVELOPMENT AND INTO OTHER
      FARERI-CONTROLLED ENTITIES ESTABLISHES PRIMA FACIE BAD FAITH 15

   A.   FARERI BREACHED THE SHAREHOLDERS' AGREEMENT IN BAD FAITH 16

   B.   CARNICELLI HAS SUFFICIENTLY ALLEGED BAD FAITH BY
        ILLUSTRATING THE SELF-DEALING, DIVERSIONARY, AND MALICIOUS
        ACTIONS UNDERTAKEN BY FARERI ................................................... 16

IV.   CARNICELLI'S FRAUD CLAIM AGAINST FARERI SHOULD NOT BE
      DISMISSED .............................................................................................. 19

   A.   CARNICELLI'S FRAUD CLAIM IS NOT TIME-BARRED BECAUSE IN THE
        CASE OF AN ONGOING FRAUD, THE STATUTE OF LIMITATIONS BEGINS
        RUNNING ONLY UPON THE DISCOVERY OF THE FRAUD UNDER
        CONNECTICUT LAW ............................................................................. 19

   B.   THE FRAUD CLAIM IS NOT BASED ON AN ILLUSORY PROMISE, AS IT
        WAS PROPERLY MEMORIALIZED IN THE SHAREHOLDER'S AGREEMENT
        ........................................................................................................... 20

   C.   CARNICELLI'S FRAUD CLAIM WAS FILED IN CONNECTICUT AND IS
        ROOTED IN CONNECTICUT LAW, THEREFORE HE WAS UNDER NO
        OBLIGATION TO PLEAD FRAUD BASED ON THE HEIGHTENED
        REQUIREMENTS SET FORTH IN RULE 9(b) ......................................... 21

D.    NOT ONLY HAS CARNICELLI SUFFICIENTLY SET FORTH THE BASIS FOR HIS DIRECT DAMAGES IN HIS FIRST AMENDED COMPLAINT, CARNICELLI CONTINUES TO SUFFER DAMAGES ON AN ONGOING AND CONTINUING BASIS ............................................................................................. 23

V.    CONCLUSION ............................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks v. Vito*,
  562 A.2d 71 (Conn. App. Ct. 1989) ................................................................ 20

*Bentley v. Tri-State of Branford, LLC*,
  No. 3:14-cv-1157 (VAB), 2017 WL 3392547 (D. Conn. Aug. 6, 2017) .................................. 9

*Butler v. Hartford Tech. Inst. Inc.*,
  704 A.2d 222 (Conn. 1997) ................................................................ 10, 13

*Campisano v. Nardi*,
  562 A.2d 1 (Conn. 1989) ................................................................ 9

*Capstone Bldg. Corp. v. American Motorists Ins. Co.*,
  67 A.3d 961 (Conn. 2013) ................................................................ 17

*Carolina Casualty Ins. Co. v. Connecticut Solid Surface, LLC*,
  No. HHBCV176038674S, 2018 WL 1385193 (Conn. Super. Ct. Feb. 16, 2018) .................... 15

*Carson v. Allianz Life Ins. Co. of North America*,
  No. HHDCV126030681S, 2015 WL 6144107 (Conn. Super. Ct. Sept. 17, 2015) .................. 19

*Chrysler Corp. v. Maiocco*,
  552 A.2d 1207 (Conn. 1989) ................................................................ 13

*Daley v. Aetna Life and Cas. Co.*,
  734 A.2d 112 (Conn. 1999) ................................................................ 13

*Devaney v. Chester*,
  813 F.2d 566 (2d Cir. 1987) ................................................................ 21

*FCM Grp., Inc. v. Miller*,
  17 A.3d 40 (Conn. 2011) ................................................................ 10

*Fiddelman v. Redmon*,
  623 A.2d 1064 (Conn. App. Ct. 1993) ................................................................ 7

*Flannery v. Singer Asset Finance Co., LLC*,
  94 A.3d 553 (Conn. 2014) ................................................................ 19

*Gerber v. EPE Holdings, LLC*,
  No. 3543–VCN, 2013 WL 209658 (Del. Ch. Jan. 18. 2013) ................................ 16

*Geysen v. Securitas Sec. Services USA, Inc.,*
   142 A.3d 227 (Conn. 2016) ............................................................................... 18

*Hearth Kitchen Products, Inc. v. Stearn,*
   X05CV010184294S, 2006 WL 436998 (Conn. Super. Ct. Feb. 1, 2006) ................... 8

*Henry v. Klein,*
   545 A.2d 575 (Conn. App. Ct. 1988) .................................................................. 20

*In re 21st Century Holdings, Inc.,*
   591 B.R. 134 (Bankr. S.D.N.Y. 2018) ................................................................. 21

*In re Atlas Energy Resources, LLC,*
   No. 4589-VCN, 2010 WL 4273122 (Del.Ch. 2010) .............................................. 16

*In re Jeweled Objects LLC,*
   No. 10-11831 RDD, 2012 WL 3638006 (Bankr. S.D.N.Y. Aug. 22, 2012) ............. 21

*Joseph Gen. Contracting, Inc. v. Couto,*
   119 A.3d 570 (Conn. 2015) ............................................................................... 10

*Katz Corp. v. T.H. Canty & Co.,*
   362 A.2d 975 (Conn. 1975) ................................................................................. 9

*Lemma v. York and Chapel, Corp.,*
   254 A.3d 1020 (Conn. App. Ct. 2021) ................................................................ 13

*Li Poa v. Stamford Hosp.,*
   No. CV095027372, 2010 WL 2926007 (Conn. Super. Ct. May 10, 2010) .............. 14

*Mytych v. May Dept. Stores Co.,*
   793 A.2d 1068 (Conn. 2002) ............................................................................. 13

*Naples v. Keystone Building & Development, Corp.,*
   990 A.2d 326 (Conn. 2010) ................................................................................. 9

*Ostrowski v. Avery,*
   703 A.2d 117 (Conn. 1997) ................................................................................. 9

*Paoletta v. Anchor Reef Club at Branford, LLC,*
   545 A.2d 575 (Conn. App. Ct. 1988) .................................................................... 7

*Petronella ex rel. Maiorano v. Venture Partners, Ltd.,*
   758 A.2d 869 (Conn. App. Ct. 2000) .................................................................. 10

iv

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ................................................................. 21

*Saunders v. Firtel*,
    978 A.2d 487 (Conn. 2009) ................................................................. 13

*Saunders v. Firtel*,
    No. CV054007690S, 2008 WL 2314070 (Conn. Super. Ct. May 14, 2018)............................ 14

*Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc.*,
    651 A.2d 1286 (Conn. 1995) ........................................................ 13, 14

*Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
    662 A.2d 89 (Conn. 1995) ................................................................. 7

*Tucci v. Jones*,
    No. FSTCV206048351S, 2021 WL 2182826 (Conn. Super. Ct. May 5, 2021)...................... 20

*Tuckerbrook Alternative Investments, LP v. Alkek & Williams, LTD*,
    No. FSTX08CV116010952, 2015 WL 1588550 (Conn. Super. Ct. Mar. 16, 2015)................ 16

*Welch v. Stonybrook Gardens Co-op., Inc.*,
    118 A.3d 675 (Conn. App. Ct. 2015) ................................................... 15

**Statutes**

Conn. Gen. Stat. § 31-72......................................................... 10, 12, 13, 14

Conn. Gen. Stat. § 33-946(a) ........................................................... 11

Conn. Gen. Stat. § 52-577 ............................................................. 19

**Rules**

Conn. P.B. § 10-44.......................................................................... 1

Fed. R. Civ. P. 9(b) ............................................................... 21, 22, 24

Fed. R. Civ. P. 12(b) ................................................................... 24

## PRELIMINARY STATEMENT

Plaintiff James Carnicelli, Jr. ("Mr. Carnicelli"), respectfully submits this Memorandum of Law in Opposition to Defendant John J. Fareri's ("Fareri" or "Defendant") Motion to Dismiss. Defendant's Motion should be denied in its entirety, and to the extent it is not, Plaintiff should be allowed to replead any dismissed cause of action consistent with Connecticut procedural law, the forum where this action was proceeding at the time of the filing of this action. This is particularly true where, as here, Plaintiff opposed the removal and transfer of this action, and the causes of action at issue in this Motion involve only personal claims by Mr. Carnicelli against Fareri, none of which are before the Court for any reason other than judicial economy with the related bankruptcy party adversarial proceedings. This is also especially true where the Connecticut mechanisms to challenge the legal sufficiency of the claims, the Motion to Strike, see Conn. P.B. § 10-44, expressly allows for the repleading of a cause of action if it is stricken.

## STATEMENT OF FACTS

### *General Corporate Matters*

The facts relevant to this motion, as alleged in the Amended Complaint, are as follows:

The Gateway Development Group, Inc. (the "Company" or "Development") was a construction services business created by Mr. Fareri in 2006, with Mr. Carnicelli's assistance. It performed services for a variety of other entities, all controlled by Mr. Fareri. (Am. Compl. ¶ 15).

By 2014, Mr. Fareri recognized that "Carnicelli has been and continues to be a valued employee" of the Company. Shareholders' Agreement at page 1. Mr. Fareri therefore agreed to "cause the [Company] to issue" shares to Mr. Carnicelli. Accordingly, M. Fareri, Mr. Carnicelli and the Company entered into a "Shareholders' Agreement" effective January 14, 2014 (the "Shareholders' Agreement"), pursuant to which the Company issued 98 shares to Mr. Carnicelli

and Mr. Fareri continued to own 102 shares. (Am. Compl. ¶ 16). Accordingly, Mr. Carnicelli owns 49% of the Company and Mr. Fareri owns a controlling 51% of the Company. (Am. Compl. ¶ 16). The Shareholders' Agreement requires that "the operation of the [Company] in accordance with this Agreement will be in the best interest of the [Company] and its Shareholders and creditors." (Am. Compl. ¶ 17).

Paragraph 4.1 of the Shareholders' Agreement lists three officers who "shall remain as such during the entire term of this Agreement": Mr. Fareri as Chairman of the Board of Directors, Mr. Carnicelli as President, and Ms. Fareri as Secretary. **The Shareholders' Agreement expressly provides that "no officer" - including Mr. Carnicelli, the President – "shall be removed with or without cause, for any reason whatsoever, during the term of [the] Agreement."**

Pursuant to Paragraph 5 of the Shareholders' Agreement, Mr. Carnicelli is entitled to receive a base salary of $250,000 solely by virtue of his position as President of the Company. Further, **Paragraph 5.2 states that there "shall be no change in any of the aforementioned salaries, nor in any of the duties of said employees, during the term of said employment."**

Paragraph 4.1 and 5.1 both identify Mr. Carnicelli as "President," indicating that both paragraphs refer to the same role. Defendant relies heavily on the fact that Section 4 of the Shareholders' Agreement has the heading "Officers" and Section 5 has the heading "Employees; Non-Competition," and that Section 5 does not repeat the non-removal language of Paragraph 4.1. But Paragraph 16.5 clearly states that "[t]he Article and Section headings in this Agreement are inserted for convenience of reference only and shall not affect the construction or interpretation of this Agreement" and Paragraph 4.1 clearly states that Mr. Carnicelli cannot be removed as President.

Furthermore, nothing in Paragraph 5 or any provision of the Shareholders' Agreement states that Mr. Carnicelli is an at-will employee, sets forth any basis upon which Mr. Carnicelli's employment can be terminated, or otherwise purports to quality or limit the explicit, plain language of Paragraph 4.1 stating that Mr. Carnicelli may not be removed as President "with or without cause, for any reason whatsoever, during the term of [the] Agreement."

In addition to his salary, Mr. Carnicelli is also entitled under the Shareholders' Agreement to receive shareholder distributions based on his 49% ownership position in the Company. Mr. Fareri represented to Mr. Carnicelli, and Mr. Carnicelli understood, that the Company would be paid the profits that were usual and customary in the construction industry for the jobs the Company would do for other entities owned 100% by Mr. Fareri (the "Projects"). The purpose for the Shareholders' Agreement was to memorialize this understanding that Mr. Carnicelli would share in the profits earned by Development as a shareholder in the Company.

It is now clear, however, that Mr. Fareri never intended to share those profits with Mr. Carnicelli. Despite repeating the promise for many years, Mr. Fareri never made good. Instead, he arranged for Development to manage the Projects for his entities without fair payment for services rendered, and he caused his entities to keep those profits for themselves. For every dollar owed to the Company that Mr. Fareri transfers to a company of which he is the 100% owner, Mr. Fareri effectively doubled his money because he thereby avoids paying Mr. Carnicelli his 49% share. This math is plain and obvious. This issue has been litigated at least as to the Kensington project and was determined by a 3-person American Arbitration Association panel to be clear: Kensington, at Fareri's direction, underpaid Development by $14 million. Mr. Fareri had, and continues to have, an irreconcilable conflict of interest with regard to these transfers, and he took no steps to resolve the conflict of interest; instead, he capitalized on it.

As the Company's President, Mr. Carnicelli took on an active role in managing the Company as it worked on and completed numerous Projects for entities controlled by Mr. Fareri. Despite the Company's performance, the Fareri entities repeatedly failed to pay the Company the profits it had earned. Notwithstanding his obligations to the Company as an officer and the majority shareholder and his representations and agreement with Mr. Carnicelli, Mr. Fareri kept the profits from the various Projects in other entities and withheld them from the Company and Mr. Carnicelli. Mr. Fareri would pay the Company for its "costs," meaning the salaries and wages necessary for the Company to perform the services, not the "rate multipliers" on the professionals' time that would create "profit" for the Company. This scheme created a great savings for Mr. Fareri's other entities and deprived the Company of standard business profit and Mr. Carnicelli of his value as the 49% owner. Nonetheless, Mr. Fareri continued to promise Mr. Carnicelli that he would share in the profits as a shareholder, and in reliance on those promises, Mr. Carnicelli continued to devote himself to Mr. Fareri and the Company's work on the Projects.

*Mr. Fareri Purports to Suspend the Company's Operations and Fire Mr. Carnicelli*

Finally, in 2018 and 2019, Mr. Carnicelli demanded that Mr. Fareri honor his obligations and pay the Company the profits it had earned. In response, Mr. Fareri wrongfully purported to suspend the Company's operations and terminate Mr. Carnicelli's role at the Company.

Specifically, on October 18, 2019, Ms. Fareri wrote to Mr. Carnicelli and stated: "**I have spoken to [Mr. Fareri] and he asked me to reach out to you. Given the overall circumstances, acting as the majority shareholder and the sole director of [the Company] he has decided to suspend operations of the company. This means that at this point you should not come to the office at 2 Deerfield and [Mr. Fareri] has decided to award the Goshen project to WESCORP, please refrain from going to this site also. As of the end of workday today,**

**October 18, 2019, you will no longer have access to your Gateway email or work computer.**" (Am. Compl. ¶ 36).

Upon purportedly suspending the Company's operations, Mr. Fareri, with Ms. Fareri's assistance, transferred highly lucrative Company Projects to other entities, thus diverting work and profits away from the Company to other Fareri-controlled entities. Mr. Fareri and Ms. Fareri also took Company assets, including trucks and other equipment, and put them to use for the benefit of those other companies (in which Mr. Carnicelli has no financial interest). Ms. Fareri also reassigned the staff of the Company to other entities controlled by Mr. Fareri. The Company's operations thus were effectively terminated, and its assets were transferred to other entities controlled by Mr. Fareri without consent from Mr. Carnicelli, its President and 49% shareholder.

On October 18, 2019, Ms. Fareri wrote to Mr. Carnicelli that "[Mr. Fareri] does not believe it is appropriate or productive for you and he to engage in any further direct communications until there is a resolution of the current situation; and, in that regard, we are suggesting that you engage an attorney to represent you in negotiating a mutually acceptable settlement."

Mr. Carnicelli has not been paid his contractually required salary as President of the Company since October 31, 2019.

In December of 2019, Mr. Carnicelli, derivatively on behalf of the Company commenced an American Arbitration Association arbitration against Kensington in which he sought $16,094,720 representing fees due to the Company for services rendered on a large construction project. On or about April 23, 2021, the three-member arbitration panel rendered a decision and an Award of Arbitrators requiring Gateway Kensington to pay Development $14,228,806. (Am. Compl. ¶ 31). On May 14, 2021, shortly after the rendering of the Award, Gateway Kensington filed for bankruptcy in the United States Bankruptcy Court in the Southern District of New York,

suggesting liabilities of up to $50 million including liabilities to entities controlled by Mr. Fareri.

*Mr. Fareri and Mr. Sheskier Manipulated the Company's*
*Financial Records and Denied Mr. Carnicelli Access to Tax Records*

Pursuant to Paragraph 16.8 of the Shareholders' Agreement, "[p]roper accounting records of all [Company] business shall be kept and shall remain open to inspection (or copying) by any of the Shareholders, or their designees or legal representatives at all reasonable times." Shareholders' Agreement at 16.8. Mr. Fareri, with the assistance of Mr. Sheskier, manipulated the Company's books and records. In July 2020, Mr. Sheskier informed Mr. Carnicelli that the 2019 Company income tax returns were unavailable and that there were no funds available for distributions to shareholders. He further instructed Mr. Carnicelli that based on his "internal review" of financial records, the prior year financial records and tax returns would need to be amended. Mr. Sheskier further refused to deliver to Mr. Carnicelli his K-1 schedules and other tax documents and back up information.

The claims set forth in the Amended Complaint were initially brought by complaint filed in Connecticut State Court on October 9, 2020. On January 11, 2021, Defendant filed a Motion to Dismiss the Complaint, which was denied on March 5, 2021. Additionally, on February 2, 2021, Defendant filed a Motion to Stay the case pending Arbitration. This Motion was also denied by the Court on March 19, 2021. Following the denial of these motions, and in an improper effort to escape accountability, Fareri caused the company to file a Notice of Bankruptcy on May 26, 2021 without consulting Mr. Carnicelli, who holds 49% of Development's shares. Following the filing of bankruptcy, the case was removed to federal bankruptcy court, initially over Mr. Carnicelli's objection.

**LEGAL ARGUMENT**

**I.      CARNICELLI'S BREACH OF CONTRACT CLAIM SHOULD NOT BE DISMISSED**

> **A. THE SHAREHOLDERS' AGREEMENT PROHIBTS CARNICELLI'S REMOVAL AS PRESIDENT AND THEREFORE CARNICELLI IS NOT AN AT WILL EMPLOYEE**

Defendant contends that his removal of Mr. Carnicelli as President is not a breach of the Shareholders' Agreement on the ground that the Shareholders' Agreement supposedly only prohibits the removal of Mr. Carnicelli as President as an officer but not his removal as President as an employee. The crux of Defendant's argument is that the language stating that Mr. Carnicelli cannot be removed appears only once in the Shareholders' Agreement, in a section titled "Officers," and is not repeated in the section titled "Employees." This tortured reading of the Shareholders' Agreement should be rejected.

While Connecticut follows the rule that employment generally is at- will "[p]ursuant to traditional contract principles…the default rule of employment at will can be modified by the agreement of the parties." *Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 662 A.2d 89, 102 (Conn. 1995)." In this case, the default rule of at-will employment was modified and agreed to by both Fareri and Carnicelli. The Shareholders' Agreement expressly states, "no officer shall be removed, with or without cause, for any reason whatsoever, during the term of this Agreement." Shareholders' Agreement § 4. Defendant suggests that the Court should read § 4 and § 5 of the Shareholders' Agreement independently; however, "[a] contract is to be construed as a whole and all relevant provisions will be considered together." *Paoletta v. Anchor Reef Club at Branford, LLC*, No. X10UWY054005853S, 2008 WL 256575 (Conn. Super. Ct. Jan. 11, 2008) (citing *Fiddelman v. Redmon*, 623 A.2d 1064, 1066 (Conn. App. Ct. 1993). Moreover, "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to

its terms." *Hearth Kitchen Products, Inc. v. Stearn*, X05CV010184294S, 2006 WL 436998, at *7 (Conn. Super. Ct. Feb. 1, 2006)." Therefore, when construing § 4 and § 5 of the Shareholders' Agreement together, it is clear that Carnicelli could not be removed as president of Development "during the term of this Agreement." Shareholders' Agreement § 4. Therefore, Defendant and Mr. Carnicelli contracted to change the default rule of employment at will.

Both Section 4 and Section 5 of the Shareholders' Agreement use the same word to describe Mr. Carnicelli: President. Section 5 spells out Mr. Carnicelli's responsibilities and compensation as president. The fact that Section 5 of the Shareholders' Agreement does not provide for a term of employment or means of termination does not make Carnicelli an at-will employee because Section 4 of the Shareholders' Agreement provides that Mr. Carnicelli could not be removed. Shareholders' Agreement § 4.

Defendant also argues that, even if Mr. Carnicelli was "removed as an officer of Gateway, he sustained no damages as a result" because "[u]nder the Agreement, Carnicelli was paid a salary for his employment by Gateway, but he was not paid any compensation for his service as an elected officer." (MTD p.8).

This assertion is incorrect for several reasons. As president of Development, Mr. Carnicelli was entitled to the composition contemplated in Section 5 of the Shareholders' Agreement by virtue of his position as president, and such composition was not tied to "employment" or performance of any specific duties, or any duties at all. Defendant wrongfully removed Mr. Carnicelli as **president**. In addition, Fareri justified his cessation of salary payments to Mr. Carnicelli because Mr. Carnicelli was no longer president. By removing Mr. Carnicelli in violation of the Shareholders' Agreement, Defendant denied Mr. Carnicelli the compensation he was

entitled to as president of Development. Therefore, Mr. Carnicelli is entitled to the compensation in which he has been denied by his wrongful removal as president of Development.

Finally, Defendant incorrectly argues that an allegation in the Amended Complaint that Fareri removed Mr. Carnicelli "without approval by the Board of Directors" is an admission that Mr. Carnicelli could be removed. It is not. The Amended Complaint clearly alleges that the Shareholders' Agreement prohibits Mr. Carnicelli's removal, period. The reference to the Board of Directors does not qualify or contradict that allegation.

### B. FARERI, WHO IS A SIGNATORY TO THE SHAREHOLDERS' AGREEMENT AND THE MAJORITY SHAREHOLDER OF DEVELOPMENT, IS LIABLE FOR CARNICELLI'S REMOVAL IN BREACH OF THE AGREEMENT

Fareri argues that "if the failure to pay Carnicelli his salary since October 2019 is a breach of the Shareholders' Agreement, then it is [the Company] ... not its officers or directors, [that is] solely responsible for any salary that was or may be due to Carnicelli under the Agreement." (MTD p.11) This argument fails because Fareri is a signatory to the Agreement and the majority shareholder of Development and courts in Connecticut have held that "[a]n officer and director occupies a fiduciary relationship to the corporation and its stockholders." *Katz Corp. v. T.H. Canty & Co.,* 362 A.2d 975, 978-979 (Conn. 1975); *Ostrowski v. Avery,* 703 A.2d 117, 121–22 (Conn. 1997). Thus, Fareri sits in the position of an employer to Carnicelli and he is liable for his failure to pay Mr. Carnicelli as required by the Shareholders' Agreement.

Defendant relies on cases in which plaintiffs had a contract strictly with a corporate entity. *Campisano v. Nardi*, 562 A.2d 1, 2 (Conn. 1989) ("[P]laintiffs could not hold defendant individually liable, because their contract was with the corporation); *Naples v. Keystone Building & Development, Corp.*, 990 A.2d 326, 331 (Conn. 2010) ("[P]laintiffs entered into a contract with the [corporation], signed by [the principal]"); *Bentley v. Tri-State of Branford, LLC*, No. 3:14-CV-

1157 (VAB), 2017 WL 3392547 at *1 (D. Conn. Aug. 6, 2017) ("[Plaintiff] was bound to a contract with [the LLC]"). Defendant ignores that he **and** Development are parties to the Shareholders' Agreement. Therefore, Defendant cannot escape liability for breach of contract by invoking the protection of the corporate veil. The Shareholders' Agreement necessarily imposes obligations on the shareholders, in this case, on Fareri.

In addition, the Connecticut Supreme Court has made clear that when an individual's name is on the contract in an individual capacity, the individual may be held personally liable in addition to the corporate entity. *Cf. Joseph Gen. Contracting, Inc. v. Couto*, 119 A.3d 570, 580 (Conn. 2015) ("The fact that his name was not on the original construction contract in an individual capacity is indicative of the fact that no personal liability was intended."). It is always clear that, parties to a contract are liable for their breach. *FCM Grp., Inc. v. Miller*, 17 A.3d 40, 54 (Conn. 2011).

Additionally, Fareri is liable under Connecticut law because he was the "ultimate responsible authority," meaning he was the one ultimately responsible for ensuring that Carnicelli's salary was paid in accordance with the Shareholders' Agreement. In *Butler v. Hartford Tech. Inst. Inc.*, 704 A.2d 222(Conn. 1997), the Connecticut Supreme Court stated that an individual may be held liable in a personal capacity if "the individual is the ultimate responsible authority to set the hours of employment and pay wages and is the specific cause of the wage violation." *Id.* at 227. General Statute §31-72 states that an employer "encompasses an individual who possesses ultimate authority and control within a corporate employer to set the hours of employment and pay wages and therefore is the specific or exclusive cause of improperly failing to do so." *Petronella ex rel. Maiorano v. Venture Partners, Ltd.,* 758 A.2d 869, 873 (Conn. App. Ct. 2000) (citing *Butler*, 704 A.2d). In *Petronella ex rel.,* the plaintiff brought an action against the

executives of the company the plaintiff was employed at for unpaid wages. *Id.* at 208. Because the defendants were found to be in control of the company and had "ultimate authority and control to pay wages," the defendants were liable for plaintiff's unpaid wages claim. *Id.* at 210.

The concept of "ultimate authority" fits squarely within the confines of the Amended Complaint and the Shareholders' Agreement. Thus, Mr. Carnicelli has clearly stated a claim against Fareri for breach of contract for unpaid salary.

### C. CARNICELLI WAS DEPRIVED OF HIS INSPECTION RIGHTS IN VIOLATION OF THE SHAREHOLDERS' AGREEMENT

Defendant offers a variety of arguments that Mr. Carnicelli's claim for breach of his contractual right to inspect Development's books and records should be dismissed. First, Defendant argues that it was "Gateway's duty to maintain its books and records," not his. (MTD p.12). But as discussed above, Fareri himself is a party to the Shareholders' Agreement and had ultimate authority and control over access to the Company's accounting records. He breached his obligations under the Shareholders' Agreement by denying Mr. Carnicelli access to those records.

Defendant also argues that Mr. Carnicelli did not make a demand pursuant to statute. (MTD p.13). Defendant's reliance on Conn. Gen. Stat. § 33-946(a) is misplaced, however, because the claim is based not on the statute but on Defendant's specific contractual obligations. The Shareholders' Agreement expressly provides that "[p]roper accounting records of all [Company] business shall be kept and shall remain open to inspection (or copying) by any of the Shareholders, or their designees or legal representatives at all reasonable times." Shareholders' Agreement § 16.8. It does not require Mr. Carnicelli, as a shareholder, to follow the procedures provided by statute.

Finally, Defendant argues that this claim is a derivative claim that Mr. Carnicelli has improperly styled as a direct claim. Defendant previously made this argument to the Connecticut

Superior Court, before he filed the Company's petition for bankruptcy and removed this case, in support of his motion to dismiss Mr. Carnicelli's claims for breach of the covenant of good faith and fair dealing and fraud. The Connecticut court summarily rejected this argument, clearly holding that the claims "are properly brought in plaintiff's individual capacity." *Carnicelli, Jr, James v. Fareri, John J Et. Al.*, Case No. FST-CV20-6048778-S, Dkt.112.01 at 6. Similarly, Mr. Carnicelli – who is a party to the contract, here represented by the Shareholders' Agreement, to whom the contract expressly gives a right of inspection – properly brings this claim in his individual capacity.

## II.    CARNICELLI'S CLAIM FOR VIOLATION OF CONNECTICUT GENERAL STATUTE § 31-72 SHOULD NOT BE DISMISSED

Defendant argues that Mr. Carnicelli is not entitled to lost wages for the period beginning with his wrongful termination on November 1, 2019 "because Mr. Carnicelli was no longer permitted by [the Company] to work for it, and because he did not actually render or perform any services to [the Company], he was no longer entitled to wages." (MTD p.14) Defendant's attempt to rely on his own misconduct to avoid liability under the statute is, of course, absurd, and should be rejected.

Conn. Gen. Stat. §31-72 states that:

When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. Any agreement between an employee and his or her employer for

> payment of wages other than as specified in said sections shall be no defense to
> such action.

Conn. Gen. Stat. § 31-72. Because General Statute §31-72 is a remedial statute, it should be "liberally construed in favor of those whom the legislature intended to benefit." *Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc.* 651 A.2d 1286, 1289 (Conn. 1995) (citing *Chrysler Corp. v. Maiocco*, 552 A.2d 1207, 1215 (Conn. 1989). Additionally, there is intentionally no "specific formula by which wages must be calculated or determined. Rather, it merely requires that wages be paid as compensation to an employee for services rendered." *Mytych v. May Dept. Stores Co.* 793 A.2d 1068, 1071 (Conn. 2002). Connecticut courts have frequently extended this wage statute to salaried employees such as Mr. Carnicelli. (*See Lemma v. York and Chapel, Corp.,* 254 A.3d 1020, 1025 (Conn. App. Ct. 2021); *See Butler,* 704 A.2d at 470-471; *Saunders v. Firtel,* 978 A.2d 487, 495-496 (Conn. 2009).

As alleged in the Complaint, Defendant prohibited Plaintiff from coming to work, took away his access to his work email, and went so far as to shut down the operations of the Company and transfer its assets and staff to other entities he controlled. Defendant's actions clearly constitute tortious interference with an employment opportunity consisting of "intentional interference without justification." *Daley v. Aetna Life and Cas. Co.,* 734 A.2d 112, 135 (Conn. 1999). Here, Defendant intentionally interfered with Mr. Carnicelli's employment by removing Mr. Carnicelli as President without authority or justification. Mr. Carnicelli rendered services until his position was wrongfully taken away from him. Thus, Mr. Carnicelli was entitled to his annual salary, as he would be working but for the Defendant's tortious interference with his employment opportunity.

Because the wage statute does not require a formula calculating wages respective to services rendered, Mr. Carnicelli is entitled to his salary regardless of whether he was doing work on the exact date that the Defendant claims Mr. Carnicelli stopped rendering services.

13

Additionally, because General Statute §31-72 is a remedial statute that should be read broadly according to *Tianti*, the statute should be read in Mr. Carnicelli's favor. 651 A.2d at 1289. The court in *Li Poa v. Stamford Hosp.*, No. CV095027372, 2010 WL 2926007 (Conn. Super. Ct. May 10, 2010) addressed a similar set of fact to this matter, where a plaintiff demanded wages after wrongful termination under §31-72. *Id.* at *3. The employee in *Li Poa* was also a salaried employee. *Id.* The court explained that "the wage statutes, as a whole, do not provide substantive rights regarding how a wage is earned; rather, they provide remedial protections for those cases in which the employer-employee wage agreement is violated." *Id.* Further, the court states that "[t]he determination of the proper amount to be tendered purposely is left vague by reference to 'or other basis of calculation' …It has been stated expressly that statutes do not dictate the manner in which wages are calculated. Instead, courts are to focus on the agreement between the employer and employee." *Id.* Additionally, the court in *Li Poa* held the plaintiff was entitled to salary owed to him after wrongful termination under §31.72.

In the Defendant's Motion to Dismiss, the Defendant relies on *Saunders v. Firtel.* Defs. Mot. to Dismiss, n. 4 (Dec. 13, 2021). *Saunders*, however, did not involve a contract with a provision stating that the plaintiff could not be terminated, unlike the Shareholder's Agreement here. *See Saunders*, No. CV054007690S, 2008 WL 2314070 (Conn. Super. Ct. May 14, 2018). Here, the Shareholder's Agreement plainly states that Mr. Carnicelli may not be removed from his position. Shareholder's Agreement, 4.1. Additionally, the employee in *Sauders* who claimed wrongful termination was an employee at will, and the court expressly states that because of his at-will status, he was "not protected by a 'no termination exception for good cause requirement' in a contract, or other guarantee of employment." *Id.* at *7.

Because the Shareholder's Agreements makes clear that Mr. Carnicelli was not an at-will employee by an express contractual provision stating Mr. Carnicelli could not be terminated for any reason whatsoever, *Saunders* is not analogous to this matter. Mr. Carnicelli was not an at-will employee, and he has sufficiently plead his claim for lost wages.

### III. CARNICELLI'S CLAIM FOR BREACH OF GOOD FAITH AND FAIR DEALING SHOULD NOT BE DISMISSED BECAUSE CARNICELLI'S ALLEGATIONS CONCERNING THE MALICIOUS TRANSFER OF SIGNIFICANT INCOME-GENERATING PROJECTS AWAY FROM DEVELOPMENT AND INTO OTHER FARERI-CONTROLLED ENTITIES ESTABLISHES PRIMA FACIE BAD FAITH

Defendant's argument that Mr. Carnicelli's third cause of action, for breach of the duty of good faith and fair dealing, should be dismissed, also fails because it also rests on the false premise that Mr. Carnicelli was an at-will employee. Under Connecticut Law, the covenant of good faith and fair dealing is breached when "(1) the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith." *Carolina Casualty Ins. Co. v. Connecticut Solid Surface, LLC,* No. HHBCV176038674S, 2018 WL 1385193 at *2 (Conn. Super. Ct. Feb. 16, 2018). To constitute a breach of the implied covenant of good faith and fair dealing, "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive *under the contract* must have been taken in bad faith." *Welch v. Stonybrook Gardens Co-op., Inc.*, 118 A.3d 675, 685 (Conn. App. Ct. 2015) (emphasis added).

The actions undertaken by Fareri, including the diversion of profits away from Development, the wrongful termination of Mr. Carnicelli, the refusal to pay Mr. Carnicelli's

salary, and suspension of the Company's operations are unfair practices and represent a breach of the covenant of good faith and fair dealing. Mr. Carnicelli has alleged facts sufficient to support this claim, and accordingly, it should not be dismissed.

## A. FARERI BREACHED THE SHAREHOLDERS' AGREEMENT IN BAD FAITH

As discussed above, the Shareholders' Agreement is clear that Mr. Carnicelli cannot be dismissed. Mr. Carnicelli reasonably relied on his position as President of the Company and the express terms contained in the Shareholders' Agreement for his expectation that he would receive his salary payments, and that he would have access to the Company's accounting records. The Shareholders' Agreement also provided for shareholder distributions, which would in the ordinary course be paid from the profits earned by the Development for the work it did, based on Mr. Carnicelli's work on various projects as described in the duties section of the Shareholders' Agreement. Fareri deprived Mr. Carnicelli of these expected benefits by removing him from his position as President, in a clear breach of the Shareholders' Agreement, and by causing other Fareri-controlled entities not to pay Development a fair profit for its work and by suspending the Company's operations, ensured that Mr. Carnicelli didn't receive shareholder distributions that fairly represented the Development's success.

## B. CARNICELLI HAS SUFFICIENTLY ALLEGED BAD FAITH BY ILLUSTRATING THE SELF-DEALING, DIVERSIONARY, AND MALICIOUS ACTIONS UNDERTAKEN BY FARERI

The facts alleged in the Amended Complaint amply demonstrate Fareri's bad faith. Bad faith is a subjective standard and requires evidence that the defendant acted "in a manner [it] subjectively believed *was not* in the best interests of [the limited partnership]." *In re Atlas Energy Resources, LLC,* No. 4589-VCN, 2010 WL 4273122 at *12 (Del. Ch. 2010); *See Gerber v. EPE Holdings, LLC,* No. 3543–VCN, 2013 WL 209658 (Del. Ch. Jan. 18. 2013). *Tuckerbrook*

*Alternative Investments, LP v. Alkek & Williams, LTD*, No. FSTX08CV116010952, 2015 WL 1588550 at *19 (Conn. Super. Ct. Mar. 16, 2015). Under Connecticut law, a defendant acts in bad faith where the defendant's actions constitute:

> both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.... [b]ad faith means more than mere negligence; it involves a dishonest purpose.

*Capstone Bldg. Corp. v. American Motorists Ins. Co.,* 67 A.3d 961, 986 (Conn. 2013). A plaintiff must demonstrate that the defendant was intentionally acting in bad faith that caused injury to the plaintiff, such as Mr. Fareri did to Mr. Carnicelli by Mr. Fareri's deliberate diversion of business that Mr. Carnicelli was entitled to in this matter.

Additional facts that illustrate Fareri's bad faith include the fact that over a period of years starting in 2014, Fareri promised Mr. Carnicelli that he would be a partner in the business, would accordingly share in the profits derived from various Development projects, and would have plenty of room to grow and earn more than his base salary based on the satisfactory performance of his duties under the Shareholders' Agreement. Despite these oral promises, and despite those codified in the Shareholders' Agreement, Mr. Carnicelli was not fairly compensated, not did Fareri allow him to enjoy the fruits of his considerable labor in furtherance of the Company.

Based on the facts of this case, it is apparent that Fareri never intended to fully live up to his obligations, at the expense of Mr. Carnicelli. Based on Fareri's inducements, Mr. Carnicelli forewent many opportunities that were otherwise available to him from different firms. When, after years of broken promises, unfair compensation, and a lack of vertical mobility, Mr. Carnicelli confronted Fareri about his deliberate, repeated, and harmful representations, instead of honoring his obligations, Fareri suspended Development's operations, locked Mr. Carnicelli out of the

Development office, suspended his work email, and stopped paying Mr. Carnicelli his agreed upon salary.

When Mr. Carnicelli sought to hold Fareri accountable for these bad faith actions in a Connecticut Court of law before Judge Ozalis, Fareri engaged in bad faith, dilatory, and outrageous conduct designed to slow down, impede, and reduce Mr. Carnicelli's chances of recovery. When the Connecticut Court rejected Fareri's efforts to scuttle the case, Fareri filed a Voluntary Bankruptcy Petition on behalf of Development, despite the fact that Development's balance sheet plainly illustrated Development's solvency based on the simple fact that Development's assets far outweighed its liabilities.

These actions are a clear attempt to pervert of the purposes of the bankruptcy law. Furthermore, the filing of the Bankruptcy petition was a largely tactical move, based on the fact that Fareri believed that removal from an unfavorable state court to a debtor-friendly Southern District of New York Bankruptcy Court would allow him to incur the least personal liabilities.

As a final point, it is public record that Mr. Carnicelli won a $14 million award against another Fareri-owned company: Gateway Kensington LLC ("Kensington"). The day the Arbitration Award was due to be confirmed in New York Supreme Court, Fareri caused Kensington to file for bankruptcy. The Kensington bankruptcy is another instance in which, despite the filing of bankruptcy, the financial data showed solvency. There is nothing to indicate that either Development nor Kensington was in any danger of bankruptcy prior to Fareri's filings. If for nothing else, the filing of these Petitions deserves a more thorough look.

With respect to the facts laid out above, a Connecticut court held that "an employer may not act in bad faith to prevent paying the employee commissions he reasonable expected to receive for services rendered under [a] contract." *Geysen v. Securitas Sec. Services USA, Inc.,* 142 A.3d 227

(Conn. 2016). Additionally, where a plaintiff can demonstrate that an employer "interfered in bad faith with an employee's ability to secure his commissions, this would violate the reasonable expectation that his employer would not inhibit his ability to earn commissions he worked for under the contract. *Id.* at 241-242. There is nothing in in Fareri's resuscitation of 'facts' that could possibly justify these actions, nor is there anything in Mr. Carnicelli's that could explain why Fareri was diverting a large percentage of the income owed to Mr. Carnicelli.

## IV. CARNICELLI'S FRAUD CLAIM AGAINST FARERI SHOULD NOT BE DISMISSED

### A. CARNICELLI'S FRAUD CLAIM IS NOT TIME-BARRED BECAUSE IN THE CASE OF AN ONGOING FRAUD, THE STATUTE OF LIMITATIONS BEGINS RUNNING ONLY UPON THE DISCOVERY OF THE FRAUD UNDER CONNECTICUT LAW

Under Connecticut law, fraud claims are subject to a 3-year statute of limitations set out in Conn. Gen. Stat. § 52-577. However, in *Flannery v. Singer Asset Finance Co., LLC,* 94 A.3d 553 (Conn. 2014) the Court recognized that "in certain circumstances... we have recognized the applicability of the continuing course of conduct doctrine to toll a statute of limitations... when the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." *Id.* at 569. The continuing course of conduct has been applied in claims of ongoing fraud, and is applicable here because Mr. Fareri's fraudulent conduct was ongoing. *See Carson v. Allianz Life Ins. Co. of North America,* No. HHDCV126030681S, 2015 WL 6144107 at *4 (Conn. Super. Ct. Sept. 17, 2015).

The Amended Complaint sufficiently sets forth facts to establish an ongoing course of fraudulent conduct, and thus the fraud claim is not time barred. That fraud "continued" until the day Development filed its bankruptcy petition. Although Fareri promised that Kensington would pay Development, and that Mr. Carnicelli would be entitled to 49%, Kensington never did. (Am.

Compl. ¶¶ 76, 96). Equally, the transfer of various projects to other Fareri-controlled entities constituted fraud, and the fees and monies currently being earned from those projects likewise constitutes an ongoing fraud complaint. This continuing course of conduct demonstrates that Mr. Carnicelli has sufficiently plead a fraud cause of action that is not time-barred, and that should not be dismissed.

### B. THE FRAUD CLAIM IS NOT BASED ON AN ILLUSORY PROMISE, AS IT WAS PROPERLY MEMORIALIZED IN THE SHAREHOLDER'S AGREEMENT

Defendant argues that the Complaint does not adequately allege a misrepresentation of an existing or past material fact that Fareri "never intended" to live up to his purported representations. Under Connecticut law, "a promise to do something in the future is not actionable unless the promise is coupled with a present intention not to fulfill the promise." But, Connecticut law is equally clear that "[S]uch a promise may constitute actionable fraud if it is blended with a misrepresentation of a material fact and an evasion of the very promise, after the promisee has performed." *Tucci v. Jones*, No. FSTCV206048351S, 2021 WL 2182826 (Conn. Super. Ct. May 5, 2021) (MTD p. 21-22)

In a more recent decision, the Connecticut Appellate Court upheld a judgment in favor of the plaintiff who alleged that the defendant, an officer and director of a corporation, violated the trust and confidence conferred upon him in this capacity, committed fraud, and fraudulently concealed his acts by preventing the plaintiff from gaining access to books and records. *Henry v. Klein,* 545 A.2d 575 (Conn. App. Ct. 1988). *Banks v. Vito*, 562 A.2d at 74, (Conn. App. Ct. 1989). The Amended Complaint makes clear that Fareri evidenced a then-present intention to evade the promises set forth in the Shareholders' Agreement by continuing to "true up" at a later date. (Am. Compl. ¶ 28). By making such a claim, and subsequently refusing to "true-up" or even pay Mr.

Carnicelli the wages due to him, Fareri engaged in fraudulent conduct that intentionally violated the Shareholders' Agreement. Based on the foregoing, it is clear that Mr. Carnicelli has met his pleading burden and his fraud claims should not be dismissed.

### C. CARNICELLI'S FRAUD CLAIM WAS FILED IN CONNECTICUT AND IS ROOTED IN CONNECTICUT LAW, THEREFORE HE WAS UNDER NO OBLIGATION TO PLEAD FRAUD BASED ON THE HEIGHTENED REQUIREMENTS SET FORTH IN RULE 9(b)

Defendants argue that Plaintiff's fraud claim fails to satisfy the particularity requirements of Rule 9(b). "As this Court has recognized, generally to satisfy that particularity requirement a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). *In re 21st Century Holdings, Inc.*, 591 B.R. 134, 141 (Bankr. S.D.N.Y. 2018). "Particularity" for purposes of Rule 9(b) means that the complaint must state the who, what, when, and where of the alleged misrepresentation (unless there is "some alternative means of injecting precision and some measure of substantiation" into the complaint's allegations. *In re Jeweled Objects LLC*, No. 10-11831 RDD, 2012 WL 3638006 at *8 (Bankr. S.D.N.Y. Aug. 22, 2012)). When alleging fraud "a party must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." While intent or knowledge may be averred generally, however, the plaintiff must plead the events claimed to give rise to an inference of intent or knowledge. *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987); 2012 WL 3638006 at *7.

In crafting his argument, Defendant deliberately overlooks several factors that undermine the grounds on which his argument relies. First, Mr. Carnicelli's Amended Complaint was drafted in accordance with Connecticut legal standards, as that is where the contract was initially signed,

and where the initial litigation was commenced. In Connecticut state court, or in any state court for that matter, Federal Rule 9(b) and its heightened pleading standard does not apply.

Second, when read in the light most favorable to the Plaintiff, Mr. Carnicelli's Amended Complaint does in fact satisfy Rule 9(b). Federal Rule 9(b) states that "[i]n alleging fraud… a party must state with particularity the circumstances constituting fraud.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Here, Mr. Carnicelli has alleged with particularity the circumstances constituting fraud: the Shareholders' Agreement, the numerous informal handshake deals between the parties, the lack of payment despite the promises to provide payment, the transfer of projects away from Development, and the ongoing financial benefit to the recipient Fareri entities. (Am. Compl. ¶¶ 28, 38, 40). These facts, taken alone, would seem to indicate a pleading of particularity with respect to fraud, and when taken together, certainly meet that threshold. Furthermore, the oral modification of the Shareholders' Agreement, initiated by Fareri, and always putting Mr. Carnicelli at a disadvantage, is just one of the facts plead by Mr. Carnicelli that tends to show malice and intent to defraud Mr. Carnicelli by denying him the profits rightfully owed to him. (Am. Compl. ¶¶ 21, 28).

Finally, if the Court does not find that the ample facts set forth in the Amended Complaint ate sufficient to support a cause of action for fraud, leave to amend the Amended Complaint should be granted in favor of Mr. Carnicelli to, at the very least, bring the Amended Complaint in line with the Rule 9(b) requirements. While Mr. Carnicelli believes that he has plead facts sufficient to support this cause of action, should the Court find that he has not, in the interest of justice, leave to amend should be granted to prevent the very real possibility of fatal prejudice to Mr. Carnicelli's fraud claims, which underpin many of his more substantial claims against Fareri.

This is particularly true where the claims, which were initially removed to this Court under protest, are only along for the ride to promote judicial efficiency as they are personal between Mr. Carnicelli and Fareri, and do not involve the parties in bankruptcy. This is also especially true where the Connecticut mechanisms to challenge the legal sufficiency of the claims, the Motion to Strike, see Conn. P.B.§ 44, expressly allows for the repleading of a cause of action if it is stricken.

Thus, should the Court not find sufficient facts to allege fraud on the face of the Amended Complaint, Mr. Carnicelli hereby respectfully requests the Court's leave to replead this cause of action.

**D. NOT ONLY HAS CARNICELLI SUFFICIENTLY SET FORTH THE BASIS FOR HIS DIRECT DAMAGES IN HIS FIRST AMENDED COMPLAINT, CARNICELLI CONTINUES TO SUFFER DAMAGES ON AN ONGOING AND CONTINUING BASIS**

Finally, Defendant asserts that the fraud claim is improperly pled as an individual claim and contends that Mr. Carnicelli's "injuries, if any, are derivative, not direct; and he cannot state a fraud claim when his damages are derivative." Mot. To Dismiss at 23. The Connecticut Superior Court, however, has already rejected this argument, holding that the fraud claim was "properly brought in plaintiff's individual capacity." *Carnicelli, Jr, James v. Fareri, John J Et. Al.*, Case No. FST-CV20-6048778-S, Dkt.112.01 at 6.

As previously demonstrated to the Connecticut court, the Amended Complaint alleges that Fareri made representations to Mr. Carnicelli that were false and, relying on the truth of these representations, Mr. Carnicelli executed his responsibilities as President of the Company to his detriment. This injury is personal and individual to Mr. Carnicelli as it relates to fraud that was perpetrated against him personally that induced him personally into entering into the Shareholders' Agreement and performing his duties as President of the Company. These damages may overlap in part with the damage done by Fareri as a fiduciary to Development, and some may not. For

example, Mr. Carnicelli's determination to stay at Development and forego building his own career, based upon the promises made by Fareri, is not a harm to Development, but is a personal harm to Mr. Carnicelli. The Venn Diagram of damages overlaps, but not completely. Thus, Mr. Carnicelli was personally injured (and Development was injured in the derivative case) and Mr. Carnicelli has properly plead the fraud claim as an individual claim.

## V.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss should be denied in its entirety. In the alternative, for the reasons set forth above, including that the complaint was initially filed in Connecticut Superior Court pursuant to the requirements of the Connecticut Practice Book, Plaintiff should be granted leave to replead any causes of action that fail to satisfy Federal Rules of Civil Procedure 9(b) or 12(b).

Dated: January 18, 2022

**PASTORE LLC**

By      */s/ Joseph M. Pastore III*_____
       Joseph M. Pastore III, Esq.
       Melissa Rose McClammy, Esq.
       4 High Ridge Park, Third Floor
       Stamford, Connecticut 06905
       Tel: (203) 658-8454
       *    *    *    *
       420 Lexington Avenue, Third Floor
       New York, New York 10170
       Tel: (845) 667-5711
       jpastore@pastore.net
       mmcclammy@pastore.net

**DAVIDOFF HUTCHER & CITRON LLP**

By:     */s/Robert L. Rattet*_____
       Robert L. Rattet, Esq.
       James B. Glucksman, Esq.
       120 Bloomingdale Road
       White Plains, New York 10605
       Tel: (914) 381-7400
       rlr@dhclegal.com
       jbg@dhclegal.com

**LEVITT LLP**

By:    */s/Steven L. Levitt*
       Steven L. Levitt, Esq.
       Trevor M. Gomberg, Esq.
       129 Front Street
       Mineola, New York 11501
       Tel: (516) 248-9700
       slevitt@levittlawllp.com
       tgomberg@levittlawllp.com

       *Counsel for James Carnicelli, Jr.*