UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IN RE:                                                              CHAPTER 7

THE GATEWAY DEVELOPMENT GROUP, INC.,                                Case No. 21-22304 (RDD)

        DEBTOR.
-----------------------------------------------------------------x
HOWARD MAGALIFF, TRUSTEE and                                        Adv. Proc. 21-07093-rdd
JAMES CARNICELLI, JR.,

        Plaintiffs,

    vs.

JOHN J. FARERI, JULIE FARERI, and
CHRISTOPHER SHESKIER,

        Defendants.
-----------------------------------------------------------------x

**DEFENDANT JOHN FARERI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS ALL CLAIMS ASSERTED BY
<u>PLAINTIFF JAMES CARNICELLI IN HIS INDIVIDUAL CAPACITY</u>**

 

**BENOWICH LAW, LLP**
1025 Westchester Avenue
White Plains, NY 10604
(914) 946-2400
leonard@benowichlaw.com
**Attorneys for Defendants John J. Fareri,
Julie Fareri, and Christopher Sheskier**

**FORD HARRISON LLP**
185 Asylum Street – Suite 610
Hartford, CT 06103
(860) 740-1361
jzelman@fordharrison.com
**Attorneys for Defendant John J. Fareri**

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................................ ii

Preliminary Statement .............................................................................................. 1

    Point I:    Carnicelli's Breach of Contract Claim Should be Dismissed ............................. 3

    Point II:   Carnicelli's Statutory Wage Claim, as against Fareri, Should be Dismissed ...... 6

    Point III:  Carnicelli has No Claim for Breach of the Covenant of Good Faith and Fair Dealing ............................................................................................ 8

    Point IV:  Carnicelli's Fraud Claim is Meritless ............................................... 11

Conclusion ............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. California,*
  460 U.S. 605 (1983) ............................................................................................... 1, 13

*Asnat Realty, LLC v. United Illuminating Co.,*
  253 A.3d 56 (Conn. App. Ct.) cert. denied, 252 A.3d 366 (Conn. 2021) .................... 1

*Bai Haiyan v. Hamden Public Schools,*
  875 F. Supp. 2d 109 (D. Conn. 2012) .......................................................................... 7

*Benjamin v. Island Mgmt., LLC,*
  No. 20501, 2021 WL 5098658 (Conn. Nov. 2, 2021) .................................................. 5

*Bentley v. Tri-State of Branford, LLC,*
  No. 3:14-CV-1157 (VAB), 2017 WL 3392547 (D. Conn. Aug. 6, 2017) .................... 3

*Bernhard v. Buttner,*
  No. CV95 032 30 62, 1995 WL 656772 (Conn. Super. Ct. Oct. 30, 1995) ................. 2

*Butler v. Hartford Technical Institute,*
  704 A.2d 222 (Conn. 1997) .......................................................................................... 3

*Campisano v. Nardi,*
  562 A.2d 1 (Conn. 1989) .............................................................................................. 3

*Carnicelli v. Fareri,*
  No. X08FSTCV206048778S, 2021 WL 1235749 (Conn. Super. Ct. Mar. 5, 2021) ............ 1, 13

*Carolina Casualty Ins. Co. v. Connecticut Solid Surface, LLC,*
  No. HHBCV176038674S, 2018 WL 1385193 (Conn. Super. Ct. Feb. 16, 2018) .......... 10

*Colebaugh v. Yale New Haven Hosp., Inc.,*
  No. CV156057999S, 2017 WL 3174293 (Conn. Super. Ct. June 12, 2017) ................ 8

*Daley v. Aetna Life and Cas. Co.,*
  734 A.2d 112 (Conn. 1999) .......................................................................................... 6

*Dickau v. Mingrone,*
  No. CFV166061317S, 2021 WL 3141298 (Conn. Super. Ct. June 28, 2021) .............. 9

*DiLaura v. Power Auth. of N.Y.,*
  982 F.2d 73 (2d Cir. 1992) ......................................................................................... 13

*Geysen v. Securitas Sec. Servs. USA, Inc.*,
   142 A.3d 227 (Conn. 2016) .......................................................................................... 8

*Gousse v. Giardullo*,
   2021 WL 5626673, n.1 (2d Cir. Nov. 15, 2021) ........................................................... 1

*In re Crysen/Montenay Energy Co.*,
   226 F.3d 160 (2d Cir. 2000) ......................................................................................... 1

*Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.*,
   257 A.3d 874 (2021) ................................................................................................ 6, 7

*Landry v. Spitz*,
   925 A.2d 334 (Conn. 2007) .......................................................................................... 9

*Li Poa v. Stamford Hosp.*,
   No. CV09502732, 2010 WL 2926007 (Conn. Super. Ct. May 10, 2010) .................... 7

*Luck v. McMahon*,
   No. 3:20-CV-00516 (VAB), 2021 WL 4248887 (D. Conn. Sept. 17, 2021) ................ 9

*Maraschiello v. City of Buffalo Police Dep't*,
   709 F.3d 87 (2d Cir. 2013) ......................................................................................... 13

*May v. Coffee*,
   967 A.2d 495 (Conn. 2009) .......................................................................................... 5

*Metcoff* v. *Lebovics*,
   123 Conn. App. 512, 2 A.3d 942 (2010) ...................................................................... 7

*Naples v. Keystone Building & Development, Corp.*,
   990 A.2d 326 (Conn. 2010) .......................................................................................... 3

*Nelson v. Countrywide Home Loans, Inc.*,
   No. 3:18-CV-02081 (SRU), 2019 WL 4762086 (D. Conn. Sept. 30, 2019) .............. 12

*Nino v. Countrywide Home Loans, Inc.*,
   No. 3:18-CV-2086 (JCH), 2019 WL 2357565 (D. Conn. June 4, 2019) ................... 12

*Ocampo v. Countrywide Home Loans, Inc.*,
   No. 3:19-CV-00436 (SRU), 2020 WL 1532392 (D. Conn. Mar. 31, 2020) .............. 12

*Petronella ex rel Maiorano v. Venture Partners, Ltd.*,
   758 A.2d 869 (Conn. App. 2000) ................................................................................. 3

*Rezzonico v. H&R Block, Inc.*,
    182 F.3d 144 (2d Cir. 1999) .............................................................................................. 13

*Rivera v. Mattingly*,
    No. 06-CV-7077 (LAP), 2021 WL 1292726 (S.D.N.Y. Apr. 7, 2021) ..................................... 13

*Tenemille v. Town of Ramapo*,
    No. 18-CV-724 (KMK), 2022 WL 126003 (S.D.N.Y. Jan. 13, 2022) ....................................... 1

*Thibodeau v. Design Grp. One Architects, LLC*,
    802 A.2d 731 (Conn. 2002) ................................................................................................. 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992) ............................................................................................... 1

**Statutes and Rules**

Conn. Gen. Stat. § 31-72 .................................................................................................... 4, 6

Conn. Gen. Stat. § 33-946 ...................................................................................................... 4

Conn. Gen. Stat. § 33-946(a) .................................................................................................. 4

Conn. Gen. Stat. § 33-946(d) .................................................................................................. 4

Conn. Gen. Stat. § 33-946(f) ................................................................................................... 5

Conn. Gen. Stat. § 52-577 ..................................................................................................... 11

Federal Rules of Civil Procedure, Rule 9(b) ............................................................................ 1

Federal Rules of Civil Procedure, Rule 12(b) .......................................................................... 1

Defendant John J. Fareri ("Fareri") respectfully submits this Reply Memorandum in further support of his Motion to dismiss the claims asserted by Plaintiff Carnicelli. For the reasons discussed below, each of Carnicelli's claims should be dismissed.

**Preliminary Statement**

Initially, the operative pleading is the *Amended Complaint* that was filed *in this Court* on December 7, 2021. (Dkt. 10) It is settled law in this Circuit "that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Gousse v. Giardullo*, 2021 WL 5626673, *1, n.1 (2d Cir. Nov. 15, 2021) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). Consequently, despite Carnicelli's arguments to the contrary, the Federal Rules of Civil Procedure, especially Rules 9(b) and Rule 12(b), are applicable to and govern the Amended Complaint and this Motion; and any determinations by the Superior Court in Connecticut with respect to the original pleading filed in that court, *Carnicelli v. Fareri*, No. X08FSTCV206048778S, 2021 WL 1235749 (Conn. Super. Ct. Mar. 5, 2021), are not binding on this Court on this Motion.[1] Even if Connecticut procedural law does apply, the Amended Complaint does not "[set forth] the specific acts relied upon," and "the mere allegation that a fraud has been perpetrated is insufficient." *Asnat Realty, LLC v. United Illuminating Co.*, 253 A.3d 56, 66 (Conn. App. Ct.), *cert. denied,* 252 A.3d 366 (Conn. 2021).

In addition, Carnicelli's Opposition Memorandum ("Opp. Mem.") repeatedly claims that he has been deprived of his share of the *profits* that should have been received by Gateway (from

---

[1] See e.g. *Arizona v. California,* 460 U.S. 605, 618 (1983) (the law-of-the-case doctrine "directs a court's discretion, it does not limit the tribunal's power"); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The law of the case doctrine is admittedly discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment"); *Tenemille v. Town of Ramapo*, No. 18-CV-724 (KMK), 2022 WL 126003, at *9 (S.D.N.Y. Jan. 13, 2022) (same).

Fareri's other companies and projects) and then distributed by Gateway to him in accordance with his interest as a 49% shareholder. He claims:

- to be "entitled under the Shareholders' Agreement to receive shareholder distributions based on his 49% ownership" (Opp. Mem. at 3)

- Gateway was to be "paid the profits that were usual and customary in the construction industry" and he was to "share in the profits earned … as a shareholder" (*id.*)

- Kensington "underpaid" Gateway (*id.*)

- The "Fareri entities repeatedly failed to pay [Gateway] the profits it had earned" (*id.* at 4)

- "the diversion of profits away from [Gateway]" (*id.* at 15); and

- the "shareholder distributions" "would in the ordinary course be paid from the profits earned by [Gateway]" (*id.* at 16)

But a claim for these damages – whether sought under the guise of the *covenant of good faith and fair dealing* or *fraud* – is a paradigmatic derivative claim for breach of fiduciary duty that belongs to Gateway, not to Carnicelli. And the Trustee has, in fact, asserted a claim against Fareri for breach of fiduciary duty in this case. (See Amd Cplt ¶¶72-78, "Fifth Cause of Action, Trustee – Breach of Fiduciary Duty as to Mr. Fareri") To the extent he seeks any damages other than his salary, Carnicelli must yield to the Trustee. "A stockholder has no individual cause of action to recover dividends that have not been declared." *Bernhard v. Buttner*, No. CV95 032 30 62, 1995 WL 656772, at *2 (Conn. Super. Ct. Oct. 30, 1995) ("In actions to compel the declaration of dividends and in actions against directors for waste or misappropriation of corporate assets….[r]edress is sought, not in the individual right of the minority stockholders, but through the corporation") (internal citations omitted).

Each of Carnicelli's claims should be dismissed.

2

**Point I:       Carnicelli's Breach of Contract Claim Should be Dismissed**

*First,* Plaintiff's argument that the Shareholders' Agreement somehow altered his at-will employment relationship is unavailing. That Agreement separately treats Carnicelli's role as an employee and his role as an officer. Plaintiff offers no argument or law to the contrary.

*Second*, there is no dispute that under the Shareholders' Agreement, Carnicelli was employed by Gateway – and not by Fareri.

Even assuming, *arguendo*, that Carnicelli was not an at-will employee (he was) and could not be removed (he could be), Carnicelli fails to demonstrate how Fareri can be held personally liable for Gateway's breach of the Shareholders' Agreement.

We pointed out in Fareri's Moving Memorandum ("Mov. Mem.") that an officer, director, or shareholder is not liable for a corporation's breach of contract, except in circumstances – which are not alleged to be present here – where "the individual in control has used the corporate instrumentality to avoid personal liability that he had previously assumed." (Mov. Mem. at 12) *Campisano v. Nardi*, 562 A.2d 1 (Conn. 1989); *Naples v. Keystone Building & Development, Corp.*, 990 A.2d 326 (Conn. 2010); see *Bentley v. Tri-State of Branford, LLC*, No. 3:14-CV-1157 (VAB), 2017 WL 3392547 at *4 (D. Conn. Aug. 6, 2017).

Nevertheless, Carnicelli seeks to distinguish that controlling authority with the facile assertion that, because Fareri signed and is a party to the Shareholders' Agreement, he thus is liable for *Gateway's alleged breach*. (Opp. Mem. at 9-11) But his authorities are inapposite. Carnicelli asserts that *Butler v. Hartford Technical Institute*, 704 A.2d 222 (Conn. 1997) and *Petronella ex rel Maiorano v. Venture Partners, Ltd.*, 758 A.2d 869 (Conn. App. 2000) (Opp. Mem. at 10) support the proposition that Fareri can be held personally liable for Gateway's alleged breach of contract. Neither case supports that position, and neither was brought by an

3

employee against his employer for breach of contract. Rather, each case was brought by the Connecticut Commissioner of Labor pursuant to Conn. Gen. Stat. § 31-72. Any determination in those cases that an executive or officer was ultimately responsible for a statutory wage claim is inapplicable to this common-law breach of contract claim, and does not mean that Fareri is personally "ultimately responsible for ensuring that Carnicelli's salary was paid in accordance with the Shareholders' Agreement." (Opp. Mem. at 10) Fareri simply was not Carnicelli's employer under the Shareholders' Agreement.

Carnicelli offers no support for the argument that Fareri can be held personally liable for an employment contract when he is not the employer. Although Fareri did sign the Shareholders' Agreement – once in his representative capacity as Gateway's president, and again in his individual capacity as a shareholder (Dkt. 11-3 at 12) – neither signature makes him Carnicelli's employer, and neither makes him personally liable for Gateway's alleged breach of contract.

*Third*, Carnicelli's contention that he was deprived of "inspection" rights under the Shareholders' Agreement is similarly deficient. Carnicelli cites no authority for his argument that his contractual right of inspection obviates his obligation to make a demand for inspection under Conn. Gen. Stat. § 33-946(a). (Opp. Mem. at 11) That argument is facile, and Carnicelli points to no authority to support his *ipse dixit*. With or without the Shareholders' Agreement, Carnicelli has rights of inspection by virtue of his shareholder status. Section 33-946 imposes a uniform demand requirement on every shareholder – that "(1) His demand is made in good faith and for a proper purpose; (2) he describes with reasonable particularity his purpose and the records he desires to inspect; and (3) the records are directly connected with his purpose." § 33-946(d). Indeed, § 33-946 specifically identifies the situations when its provisions do not apply: such as

the right to inspect a shareholders' list after a meeting has been scheduled or when the shareholder is in litigation with the corporation. (§ 33-946(f)) Neither situation is present here.[2]

In addition, Carnicelli sets up a straw-man argument that intentionally mischaracterizes Fareri's position. Fareri does not contend that Carnicelli's rights of *inspection* are a derivative claim. (See Opp. Mem. at 11-12) Rather, Fareri argues that any claim that he allegedly manipulated or allowed Gateway's books to misstate its financial condition (see Amd Cplt ¶¶11, 44, 46, 69) is a derivative claim that belongs to Gateway (Mov. Mem. at 12), precisely because the books and records belong to Gateway, and not to Carnicelli.[3] In fact, <u>the Trustee has included these allegations in his breach of fiduciary claim against Fareri</u>, claiming that "misrepresenting and retroactively altering the Company's financial records; [and] concealing and withholding the Company's tax returns and tax schedules" are among the "wrongful acts" on which his claim is based. (Amd Cplt ¶76) As the Connecticut Supreme Court recently wrote:

> [t]he books [of the corporation] are not the private property of the directors or managers, but are the records of their transactions as trustees for the [shareholders]." (Internal quotation marks omitted.) *Guthrie* v. *Harkness*, supra, 199 U.S. [148] at 155 (1905). "The right of inspection rests [on] the proposition that those in charge of the corporation are merely the agents of the [shareholders] who are the real owners of the property."

*Benjamin v. Island Mgmt., LLC,* No. 20501, 2021 WL 5098658, at *12 (Conn. Nov. 2, 2021). Moreover, Carnicelli's claim completely disregards his own responsibility. Carnicelli reiterates

---

[2] Of course, the Shareholders' Agreement also does not waive the statutory demand requirement.

[3] In Fareri's Moving Memorandum, we cited *May v. Coffee*, 967 A.2d 495, 502 (Conn. 2009) for the proposition that "[i]n order for a shareholder to bring a direct or personal action against the corporation or other shareholders, that shareholder must show an injury that is separate and distinct from that suffered by any other shareholder or by the corporation ... [A] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation." Carnicelli ignores that argument and that authority.

5

in his opposition to this Motion that as Gateway's President, he "took on an active role in managing the Company" (Opp. Mem. at 4; see Amd Cplt ¶28), but he refuses to take any responsibility for his apparent failure to keep Gateway's books and records as required by the Shareholders' Agreement he signed.

Even assuming, *arguendo*, that Carnicelli's right of inspection was breached (it was not), he has failed to allege (1) how Fareri interfered with that right, or (2) or identify any damages resulting therefrom. Carnicelli neither alleges damages, nor disputes that such an allegation (and proof) is an essential element of a breach of contract claim. (See Mov. Mem. at 7, 13)

**Point II:    Carnicelli's Statutory Wage Claim, as against Fareri, Should be Dismissed**

Carnicelli has failed to establish that he has a statutory wage claim in this case. Indeed, he does not dispute Fareri's central argument: that under Conn. Gen. Stat. § 31-72 he may not recover wages for a period of time he did not work. On this basis alone, dismissal is warranted.

Rather, Carnicelli argues that his removal was the result of misconduct and interference, and that Fareri should not be able "to rely on his own misconduct to avoid liability" under that statute. (Opp. Mem. at 12) Carnicelli misapprehends the law. Carnicelli has cited no authority for the proposition he asks this Court to blindly accept: that he can recover wages under § 31-72 for a period of time *he admittedly did not work* because, so he claims, his purported termination was wrongful. The Connecticut cases are legion that § 31-72 is not intended to and does not convert a wage recovery statute (or, indeed, a contract claim for wages) into a claim for wrongful termination or interference against Fareri. (Opp. Mem. at 13-14) Even the cases cited by Carnicelli so state. See e.g. *Daley v. Aetna Life and Cas. Co*., 734 A.2d 112 (Conn. 1999) (Opp. Mem. at 13); see also *Kent Literary Club of Wesleyan Univ. at Middletown v. Wesleyan Univ.,*

257 A.3d 874, 894 n.15 (2021);[4] *Thibodeau v. Design Grp. One Architects, LLC*, 802 A.2d 731, 735 (Conn. 2002).

Moreover, even if Carnicelli is covered by that statute as a salaried employee, his claim under the wage statute is still limited to recovery of unpaid compensation that he earned prior to his purported termination. (See Mov. Mem. at 13-14) Carnicelli's reliance on *Li Poa v. Stamford Hosp.*, No. CV09502732, 2010 WL 2926007 (Conn. Super. Ct. May 10, 2010) (Opp. Mem. at 14) is misplaced. In that case, the plaintiff, a "prominent cardiothoracic surgeon who was recruited by the Stamford Hospital to start and lead a new cardiac surgery program in 2007," *id.* at *1, was induced to leave his position in California and move his family to Connecticut. He was given an employment agreement pursuant to which he was to be paid $5.5 million, at the rate of $1.1 million per year for five years, and if he was terminated early without cause the hospital was obligated to pay the unpaid balance of the $5.5 million. The complaint alleged that "defendants agreed to pay the plaintiff a sum of $5,500,000 regardless of whether he worked for them for five years, so long as he did not leave voluntarily or was not terminated for cause." *Id.*, *4. That is not this case.

Even viewing the facts in the light most favorable to Carnicelli, no post-termination wages were earned under, or fixed in or even calculable under the Shareholders' Agreement. To the contrary, Carnicelli contends it was indeterminate because he could not be terminated, period. Consequently, as of his termination in October 2019, Carnicelli had not *earned* all the

---

[4] "[A] person cannot tortiously interfere with a contractual arrangement, existing or anticipated, to which the person is a party. See, e.g., *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 520, 2 A.3d 942 (2010); see also *Bai Haiyan* v. *Hamden Public Schools*, 875 F. Supp. 2d 109, 134 (D. Conn. 2012) (under Connecticut law, "[t]here can be no intentional interference with contractual relations by someone who is directly *or indirectly* a party to the contract" (emphasis added; internal quotation marks omitted))." 257 A.3d at 894 n.15.

salary that he might have received (or hoped to receive) as compensation under the Shareholders' Agreement had he not been terminated. Interestingly, Carnicelli cites *Geysen v. Securitas Sec. Servs. USA, Inc.,* 142 A.3d 227, 240 (Conn. 2016) (Opp. Mem. at 18-19) for the proposition that an employer should not be permitted to act in bad faith to prevent payment of earned commissions. But even *Geysen* recognized that an employer does not act in bad faith solely by refusing to pay commissions on sales that had not been earned prior to the employee's termination. 142 A.3d at 240. In this case, there is nothing in the Shareholders' Agreement that fixes Carnicelli's post-termination compensation at a liquidated or calculable sum that had been *earned* prior to the purported termination.

Carnicelli does not allege that he "perform[ed] work that he was not compensated for, as was the case in *Geysen*." *Colebaugh v. Yale New Haven Hosp., Inc.,* No. CV156057999S, 2017 WL 3174293, at *23 (Conn. Super. Ct. June 12, 2017). His statutory wage claim fails.

**Point III:    Carnicelli has No Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Carnicelli claims that he did not receive the benefits he expected to receive under the Shareholders' Agreement because Fareri diverted profits away from Gateway, wrongfully terminated him, refused to pay his salary, and suspended Gateway's operations. (Opp. Mem. at 15-16) This claim is not only insufficient, but to the extent it seeks damages for other than Carnicelli's salary, it belongs to Gateway and, in fact has been asserted by the Trustee. (See Amd Cplt ¶¶72-78, "Fifth Cause of Action, Trustee – Breach of Fiduciary Duty as to Mr. Fareri")

Carnicelli ignores the fact that as an at-will employee he cannot maintain a claim for breach of the covenant of good faith and fair dealing where, as here, he has not alleged a violation of public policy. (Mov. Mem. at 16-17) This is fatal to his claim.

8

The covenant of good faith and fair dealing "presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *Landry v. Spitz*, 925 A.2d 334, 342 (Conn. 2007). For this reason, "[m]ost courts decline to find a breach of the covenant apart from a breach of an express contract term," and "the claim [that the covenant has been breached] must be tied to an alleged breach of a specific contract." *Luck v. McMahon*, No. 3:20-CV-00516 (VAB), 2021 WL 4248887, at *11 (D. Conn. Sept. 17, 2021) (quoting *Landry*, 925 A.2d at 344).

"[T]he claim of a breach of the implied covenant of good faith and fair dealing is predicated upon the existence of a contract to which the parties have agreed to perform the terms thereunder." *Dickau v. Mingrone*, No. CFV166061317S, 2021 WL 3141298, at *3 (Conn. Super. Ct. June 28, 2021). In this case, however, the terms Carnicelli seeks to enforce are not contained in the Shareholders' Agreement. This, too, is fatal to Carnicelli's claim.

The Shareholders' Agreement does not provide that Fareri must or will push all profits from his controlled construction companies to Gateway, nor does it provide that Carnicelli, by becoming a 49% shareholder of Gateway, thereby becomes entitled to 49% of the profits from all of Fareri's controlled entities. This claim, if it is a claim at all, is one for breach of fiduciary duty: it is held by Gateway, not Carnicelli; and any damages recoverable are derivative, not direct, because even if he prevailed, the damages would be payable to Gateway. Indeed, the Trustee asserts that the claim and seeks these same damages in this case.

Although Carnicelli acknowledges that he must also allege and prove that Fareri did the "wrongful acts" in bad faith, the Amended Complaint fails to allege bad faith in anything more than conclusory fashion; it alleges only that "Fareri was acting in bad faith when he engaged in the conduct described above." (Amd Cplt ¶65) Even the case cited by Carnicelli recognized that

9

the commission of the acts themselves is insufficient to establish a claim for breach of the implied covenant; they must have been undertaken *while* "the defendant was acting in bad faith." *Carolina Casualty Ins. Co. v. Connecticut Solid Surface, LLC*, No. HHBCV176038674S, 2018 WL 1385193 at *2 (Conn. Super. Ct. Feb. 16, 2018). (Opp. Mem. at 15)

Carnicelli recognizes that bad faith means a sinister motive or dishonest purpose (Opp. Mem. at 16-17), but merely alleging the wrongful acts that Fareri supposedly committed does not satisfy the sinister motive or dishonest purpose. Yet that is all that Carnicelli claims, that the acts themselves "are unfair practices and represent a breach of the covenant." (Opp. Mem. at 16) Fareri's ownership interests in his other operating entities – entities in which Carnicelli did not have any ownership interest – were known to Carnicelli when he signed the Shareholders' Agreement, and none of those circumstances changed after the Shareholders' Agreement was executed.

Carnicelli's attempt to amend the Amended Complaint with arguments in his Memorandum that do not appear in his pleading is not only ineffectual, it is proof that the Amended Complaint fails to state a claim. For example, Carnicelli asserts that "over a period of years starting in 2014, Fareri promised [him] that he would be a partner in the business." (Opp. Mem. at 17) But the Amended Complaint contains no such allegation. Carnicelli was a "partner" in Gateway's business and he received a 49% ownership interest, for no consideration. His claim is only that Fareri allegedly deprived Gateway of income and profits from other entities from which, once they were paid into Gateway, he should have been entitled to receive distributions.

Carnicelli argues that he "was not fairly compensated" and Fareri did not "allow him to enjoy the fruits of his considerable labor in furtherance of" Gateway. (Opp. Mem. at 17) But that is not the test: Carnicelli was paid his agreed-upon salary during the time he worked for

Gateway, and he does not allege (nor can he) that he did not enjoy the benefits he reasonably expected *under the Shareholders' Agreement*.

Based on nothing more than his own disappointment with his compensation,[5] Carnicelli alleges that "Fareri never intended to fully live up to his obligations." (Opp. Mem. at 17) But in his zeal to conjure "bad faith" from gossamer and malign Fareri, Carnicelli ignores his own allegation that Fareri invited him to "engage an attorney to represent you in negotiating a mutually acceptable settlement." (Amd Cplt ¶41)

This is hardly evidence of bad faith.

**Point IV:      Carnicelli's Fraud Claim is Meritless**

The Amended Complaint asserts that the statements alleged to be the basis for Carnicelli's fraud claim occurred prior to, and were made in order to induce his execution of the January 2014, Shareholders' Agreement. (Opp. Mem. at 23: the "fraud that was perpetrated against him personally … induced him personally into entering into the Shareholders' Agreement.") The Amended Complaint does not allege that the purportedly fraudulent statements continued thereafter.

*First*, the fraud claim is subject to a 3-year statute of limitations which accrues on the utterance of the statements, Conn. Gen. Stat. § 52-577, and not on discovery. (See Mov. Mem. at 20) (In fact, Carnicelli does not actually argue that his claim is tolled until discovery; the assertion only appears in the argument heading on page 19 – but not in any argument contained in Point IV. See Opp. Mem. at 19-24)

---

[5]     Carnicelli was also more than a little disappointed that the Trustee removed this case, over his objections (Opp. Mem. at 1, 6), to this "debtor-friendly" Court. (Opp. Mem. at 18)

11

Rather, Carnicelli argues that his fraud claim is somehow saved from extinction by the "continuing course of conduct" doctrine. (Opp. Mem. at 19) But that argument is misplaced. The Amended Complaint does not – nor could it – allege a continuing fraud. To the contrary, the Amended Complaint alleges that the alleged fraud occurred when Carnicelli was induced to sign the Shareholders' Agreement that he now alleges Fareri did not intend to honor. This is a single wrong, even if the effects were not discovered until later. See *Ocampo v. Countrywide Home Loans, Inc.,* No. 3:19-CV-00436 (SRU), 2020 WL 1532392, at *5-6 (D. Conn. Mar. 31, 2020); *Nelson v. Countrywide Home Loans, Inc.*, No. 3:18-CV-02081 (SRU), 2019 WL 4762086, at *5 (D. Conn. Sept. 30, 2019); *Nino v. Countrywide Home Loans, Inc.*, No. 3:18-CV-2086 (JCH), 2019 WL 2357565, at *2-3 (D. Conn. June 4, 2019).

Moreover, despite his repeated assertions that he had been lied to, Carnicelli fails to account for the fact that he took absolutely no steps to pursue his rights for six years, even though he received no dividends, distributions or profit sharing based on his 49% interest in Gateway for 2014, 2015, 2016, 2017, 2018 or 2019, even as he continued to work at Gateway and collect his agreed salary.

For one who admittedly "took on an active role in managing the Company as it worked on and completed numerous Projects for entities controlled by" Fareri (Opp. Mem. at 4; Amd Cplt ¶28), Carnicelli's failure to explain why he waited so long to assert this claim is fatal to his fraud claim.

Carnicelli sat on his supposed rights for more than 6 years, and now asks this Court to rescue him from his own knowing inaction.

*Second*, even if Fareri has alleged a fraud claim (and he has not) he lacks standing to assert it because any damages allegedly caused by the fraud are based on payments the Fareri-

controlled entities allegedly owed to Gateway (not to Carnicelli), and from which Carnicelli would have been entitled to receive dividends or distributions. This is the essence of a derivative claim (see Mov. Mem. at 23), and it is precisely these damages that are sought to be recovered by the Trustee in this case. (Amd Cplt ¶¶ 72-78) Carnicelli makes no effort to controvert Fareri's argument that the damages sought on this claim are derivative of those sustained by Gateway.

Carnicelli's only response to this argument is his assertion that this argument was previously rejected, in *Carnicelli.* (Opp. Mem. at 23) But that decision is manifestly wrong and erroneous and, for that reason alone, is not entitled to law-of-the-case treatment binding on this Court.[6] In addition, the Trustee – who was not a party to *Carnicelli* – has asserted claims in this case seeking precisely the same relief. The parties and the circumstances are different than they were when the Connecticut Superior Court decided *Carnicelli.*

As Judge Preska has written, "Put plainly, district court rulings are subject to revision any time before the entry of a final judgment." *Rivera,* 2021 WL 1292726, at *3; *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (same).

---

[6] *Arizona,* 460 U.S. at 618 & n. 8 ("Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice"); *DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992) (same). The doctrine, which is discretionary, "permits a change of position if it appears that the court's original ruling was erroneous." *Rivera v. Mattingly*, No. 06-CV-7077 (LAP), 2021 WL 1292726, at *3 (S.D.N.Y. Apr. 7, 2021) (quoting *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999).

**Conclusion**

Fareri's Motion should be granted in all respects.

Dated: January 21, 2022

**BENOWICH LAW, LLP**

*Leonard Benowich*
By:_____
Leonard Benowich
1025 Westchester Avenue
White Plains, NY 10604
(914) 946-2400
leonard@benowichlaw.com

**Attorneys for Defendants John J. Fareri, Julie Fareri, and Christopher Sheskier**

**FORD HARRISON LLP**

*Johanna G. Zelman*
By: _____
Johanna G. Zelman
185 Asylum Street – Suite 610
Hartford, CT 06103
(860) 740-1361
jzelman@fordharrison.com

**Attorneys for Defendant John J. Fareri**