**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------------x
In re                                                                :      Chapter 7
                                                           :
THE GATEWAY DEVELOPMENT GROUP, INC.,        :      Case No. 21-22304-rdd
                                                            :
            Debtor                                            :
-------------------------------------------------------------------------------------x
HOWARD P. MAGALIFF, TRUSTEE and JAMES        :      Adversary Proceeding
CARNICELLI, JR.,                                                   :      No. 21-7093
                                                            :
                                 Plaintiffs,        :
       vs.                                                        :
                                                            :
JOHN J. FARERI, JULIE FARERI, and                      :
CHRISTOPHER SHESKIER,                                      :
                                                            :
                                 Defendants.        :
-------------------------------------------------------------------------------------x

## SECOND AMENDED COMPLAINT

Plaintiffs, Howard P. Magaliff, Chapter 7 Trustee (the "Trustee") of The Gateway Development Group, Inc. (the "Company"), James Carnicelli Jr. ("Mr. Carnicelli" and collectively with the Trustee, "Plaintiffs"), by their respective undersigned attorneys, Pullman & Comley, LLC and Pastore LLC, for their second amended complaint against Defendants John J. Fareri ("Mr. Fareri"), Julie Fareri ("Ms. Fareri"), and Christopher Sheskier ("Mr. Sheskier") (collectively, the "Individual Defendants"), allege as follows:

## NATURE OF ACTION

1. This is an action (the "Action") to hold a majority shareholder accountable for his wrongful actions toward the Company and its minority shareholder, Mr. Carnicelli. Since the filing of the original complaint initiating the Action (the "Complaint"), the Action was removed by the Trustee to the United States District Court for the District of Connecticut (21-cv-792-RNC)

1

and then transferred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), where it was assigned Adversary Proceeding No. 21-7093 (RDD) and remains pending.

2.       Mr. Fareri is a real estate mogul. He is the Company's majority shareholder as well as the Chairman of its Board of Directors; he is thereby legally required to act in the Company's best interests. However, in breach of his fiduciary duties and the Company's Shareholders' Agreement, Mr. Fareri has diverted millions of dollars that should have been paid to the Company to other entities he controls. This scheme has allowed him and his other entities to pocket the profits of the Company's work, at the expense of the Company and Mr. Carnicelli.

3.       Mr. Fareri repeatedly and continuously promised Mr. Carnicelli equity in the Company, a true partnership, and legitimate proceeds from jobs completed by the Company. When these promises were broken, Mr. Carnicelli questioned Mr. Fareri's conduct and Mr. Fareri unilaterally purported to suspend the Company's operations and terminate Mr. Carnicelli's role as President of the Company.

4.       Ms. Fareri, the Secretary of the Company and Mr. Sheskier, the self-proclaimed Chief Financial Officer of the Company, were complicit in Mr. Fareri's misconduct and actively participated in misstating the Company's financial records, improperly suspending the Company's operations and improperly diverting profits to other entities controlled by Mr. Fareri that should have been paid to the Company.

5.       Mr. Carnicelli brought the Action, both on his own behalf and derivatively on behalf of the Company, for compensation for the damages resulting from Mr. Fareri's, Ms. Fareri's and Mr. Sheskier's wrongful acts.  Since its removal to the Bankruptcy Court, the Trustee, on behalf

of the bankruptcy estate of the Company, has assumed the derivative claims originally brought by Mr. Carnicelli, as property of the estate.

6. In addition, Mr. Carnicelli sought a judicial dissolution of the Company, so that the Connecticut Superior Court could supervise an orderly winding down of the Company and bring about an accounting of the Company's assets, but given the filing and pendency of the Company's chapter 7 bankruptcy case in the Bankruptcy Court, that count has been withdrawn as moot. Mr. Carnicelli also sought a temporary restraining order to prevent the Defendants from further altering the Company's financial records and further profiting from the use of the Company's assets such as machinery, tools and equipment, but that count has been withdrawn as well.

## THE PARTIES

7. The Trustee is the duly appointed chapter 7 trustee of the Company and pursuant to sections 323(a) and (b) and Fed. R. Bankr. P. 6009, is empowered to bring the previously denominated derivative claims (the "Company Claims") on behalf of the Company's bankruptcy estate.

8. Plaintiff James Carnicelli Jr. is an individual, the President of the Company, and a resident of the State of New York.

9. Defendant John J. Fareri is an individual, the Chairman of the Company, and a resident of the State of Connecticut. Mr. Fareri is an officer and the majority shareholder of the Company.

10. Defendant Julie Fareri is an individual and a resident of the State of Connecticut. Ms. Fareri is the Secretary of the Company. On information and belief, Mr. Fareri and Ms. Fareri are father and daughter.

11.     Defendant Christopher Sheskier is an individual. On information and belief, he is a resident of the State of New York. Upon information and belief, Mr. Sheskier is a Certified Public Accountant. He performed financial and accounting services for the Company as well other businesses controlled by Mr. Fareri, and he holds himself out as the Chief Financial Officer of the Company.

## JURISDICTION AND VENUE

12.     Jurisdiction in the Bankruptcy Court is proper pursuant to 28 U.S.C. § 1334(b) because the Company Claims arise under Title 11 or arise in the Company's bankruptcy case and because the remaining claims of Mr. Carnicelli arise in or are related to the Company's bankruptcy case and the Bankruptcy Court would otherwise have ancillary jurisdiction to adjudicate them. The claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), or in the alternative as to the claims of Mr. Carnicelli, are related to the Company's bankruptcy case pursuant to 28 U.S.C. § 157(c)(1).

13.     The Action relates to the chapter 7 bankruptcy case of the Company, which is pending under Case No. 21-22304 (RDD) in the Bankruptcy Court, White Plains Division. The Plaintiffs consent to the entry of final orders or judgments of the Bankruptcy Court.

14.     Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1408.

## BACKGROUND FACTS

*General Corporate Matters*

15.     The Company was a construction services business created by Mr. Fareri in 2006, with Mr. Carnicelli's assistance. It performed services for a variety of other entities, all controlled by Mr. Fareri.

16.     In 2014, Mr. Fareri, Mr. Carnicelli and the Company entered into a "Shareholders' Agreement" effective January 14, 2014 (the "Shareholders' Agreement"), pursuant to which the Company issued 98 shares to Mr. Carnicelli and Mr. Fareri continued to own 102 shares. Accordingly, Mr. Carnicelli owns 49% of the Company and Mr. Fareri owns 51% of the Company. The Shareholders' Agreement requires that "the operation of the [Company] in accordance with this Agreementwill be in the best interest of the [Company] and its Shareholders and creditors." Paragraph 4.1 of the Shareholders' Agreement lists three officers who "shall remain as such during the entire term of this Agreement": Mr. Fareri as Chairman of the Board ofDirectors, Mr. Carnicelli as President, and Ms. Fareri as Secretary.

17.     The Shareholders' Agreement expressly provides that "no officer" – including Mr. Carnicelli, the President – "shall removed with or without cause, for any reason whatsoever, during the term of [the] Agreement."

18.     Pursuant to paragraph 5 of the Shareholders' Agreement, Mr. Carnicelli is entitled to receive a base salary of $250,000 as President of the Company.

19.     Further, Mr. Carnicelli is entitled to receive shareholder distributions based on his 49% ownership position in the Company. Mr. Fareri represented to Mr. Carnicelli, and Mr. Carnicelli understood, that the Company would be paid the profits that were usual and customary in the construction industry for the jobs the Company would do for other entities owned 100% by Mr. Fareri (the "Projects").

20.     Indeed, a principal purpose of the Shareholders' Agreement was to recognize and reward Mr. Carnicelli for his valued service to the Company by providing a means by which he could share in the actual profits associated with the Projects.

21. On numerous occasions following the execution of the Shareholders' Agreement, including in 2018 and the summer of 2019, Mr. Fareri repeated his promises of partnership, equity splits, and increased construction management fees. Despite these repeated promises, such benefits never materialized. Mr. Fareri clearly intended to stall Mr. Carnicelli to keep him working and committed to Projects where Mr. Fareri was making millions of dollars.

22. For every dollar owed to the Company that Mr. Fareri transfers to a company of which he is the 100% owner, Mr. Fareri effectively doubled his money because he thereby avoids paying Mr. Carnicelli his 49% share.

23. As a result of the foregoing, Mr. Fareri had, and continues to have, an irreconcilable conflict of interest.

24. Furthermore, Mr. Fareri took no steps to resolve the conflict of interest; instead, he capitalized on it.

25. Mr. Carnicelli's responsibilities at the Company are detailed in paragraph 5 of the Shareholders' Agreement and include providing leadership and business judgment on the financial and profitability aspects of various Projects.

26. Paragraph 5.2 of the Shareholders' Agreement provides that there would be no change in Mr. Carnicelli's salary or in his duties during the term of his employment.

27. Pursuant to Paragraph 16.8 of the Shareholders' Agreement, "[p]roper accounting records of all [Company] business shall be kept and shall remain open to inspection (or copying) by any of the Shareholders ... at all reasonable times.

*Diversion of Company Profits*

28. As the Company's President, Mr. Carnicelli took on an active role in managing the

Company as it worked on and completed numerous Projects for entities controlled by Mr. Fareri. Despite the Company's performance, the Fareri entities repeatedly failed to pay the Company the profits it had earned. Notwithstanding his obligations to the Company as an officer and the majority shareholder and his representations and agreement with Mr. Carnicelli, Mr. Fareri kept the profits from the various Projects in other entities and withheld them from the Company and Mr. Carnicelli. Mr. Fareri would pay the Company for its "costs," meaning the salaries and wages necessary for the Company to perform the services, not the "rate multipliers" on the professionals' time that would create "profit" for the Company. This scheme created a great savings for Mr. Fareri's other entities and deprived the Company of standard business profit and Mr. Carnicelli of his value as the 49% owner.

29.     A particularly egregious example of Mr. Fareri's wrongdoing involves a condominium development for the Village of Bronxville, New York (the "Bronxville Project"). The Company performed extensive environmental mediation and construction work for Gateway Kensington, LLC ("Kensington"), a business entity controlled by Mr. Fareri. A written agreement memorialized the terms of the services engagement between the Company and Kensington and set forth written fee schedules.

30.     As a result of the Company's work, upon information and belief Kensington sold the condominiums for over $100 million and Mr. Fareri received millions of dollars in profits and tax credits through Kensington.

31.     The Company, however, did not receive the fees to which it was entitled. Mr. Fareri refused to pay the Company millions of dollars that remain due for work performed on the Bronxville Project. Prior to the filing of the Company's voluntary chapter 7 petition in the

Bankruptcy Court, Mr. Carnicelli successfully prosecuted an arbitration on behalf of the Company and against Kensington, pursuant to which he received an award in the amount of more than $14 million, which is now an asset of the Company's bankruptcy estate.

32. The Bronxville Project was just one instance in which Mr. Fareri and his entities refused to pay the Company its fair, agreed-upon labor rates and fees for services rendered. On multiple other Projects, entities owned and controlled by Mr. Fareri have paid the Company only enough to cover the Company's out of pocket costs and have withheld management fees and usual and customary labor fees. Those Projects include construction projects at 3030 Westchester Avenue, 415 Greenwich Avenue, Old Track Residential, The Harbor, 1162 East Putnam Avenue, and Temple Street.

33. Among other things, the fees identified by Mr. Fareri and Mr. Sheskier do not reflect the usual and customary labor rates that the Company is owed for each project. Accordingly, a complete accounting is required to determine the total amount, due to theCompany.

34. Additionally, at numerous times throughout the working relationship between Mr. Carnicelli and Mr. Fareri, Mr. Fareri promised to "true up" with Mr. Carnicelli. In other words, Mr. Fareri promised to pay Mr. Carnicelli the agreed-upon fees due to him based on his work on the various Projects undertaken by the Company.

35. Despite Mr. Fareri's repeated and continuous promises to pay Mr. Carnicelli for his work on the Projects, to date, Mr. Carnicelli has not been paid these fees to which he is rightfully entitled. Such "true up" promises continued for years with no intention by Fareri of fulfilling his promises.

*Mr. Fareri Purports to Suspend the Company's Operations and Fire Mr. Carnicelli*

36.     In 2018 and 2019, Mr. Carnicelli demanded that Mr. Fareri honor his obligations and pay the Company the profits it had earned on the Bronxville Project and other Projects.

37.     In response, Mr. Fareri wrongfully purported to suspend the Company's operations and terminate Mr. Carnicelli's role at the Company.

38.     Specifically, on October 18, 2019, Ms. Fareri wrote to Mr. Carnicelli and stated:

*"I have spoken to [Mr. Fareri] and he asked me to reach out to you. Given the overall circumstances, acting as the majority shareholder and the sole director of [the Company] he has decided to suspend operations of the company. This means that at this point you should not come to the office at 2 Deerfield and [Mr. Fareri] has decided to award the Goshen project to WESCORP, please refrain from going to this site also. As of the end of workday today, October 18, 2019, you will no longer have access to your Gateway email or work computer."*

39.     Upon purportedly suspending the Company's operations, Mr. Fareri, with Ms. Fareri's assistance, transferred Company Projects to other entities, thus diverting work and profits away from the Company to other Fareri-controlled entities. Mr. Fareri and Ms. Fareri also took Company assets, including trucks and other equipment, and put them to use for the benefit of those other companies (in which Mr. Carnicelli has no financial interest). Ms. Fareri also reassigned the staff of the Company to other entities controlled by Mr. Fareri. The Company's operations thus were effectively terminated, and its assets were transferred to other entities controlled by Mr. Fareri without consent from Mr. Carnicelli, its President and 49% shareholder, or approval by the Company's board. Thus, Mr. Fareri's misrepresentations regarding a "true up" continued until

October 18, 2019, when it appeared through Ms. Fareri, Mr. Fareri announced that his true intentions were never to honor his commitments to Mr. Carnicelli to eventually "true up" on Mr. Carnicelli's rightful share of the Company's profits.

40.     For example, the Goshen project (referred to in Ms. Fareri's email quoted above) was a redevelopment project that the Company performed for an entity controlled by Mr. Fareri. Mr. Fareri took the Goshen Project from the Company and gave it to another entity he controlled

41.     Mr. Fareri and Mr. Sheskier have acknowledged that at the time Mr. Fareri took the Goshen Project from the Company, the Company was owed more than $65,100 in fees for construction services rendered. Once again, however, that amount falls far shy of the amount the Company should have been paid. The fee is arbitrary and does not reflect the usual and customary labor rates that should have been paid. In addition, if the Company had not been deprived of the opportunity to complete the Project, it would have been due additional fees.

42.     When Mr. Fareri purported to suspend the Company's operations, he further deprived the Company of the opportunity to profit on upcoming Projects that would have been awarded to the Company in the absence of Mr. Fareri's wrongful acts. For example, the Company was slated to work on the development of the North 60 Project, a $1.2 billion development of nearly 3 million square feet of space in the Town of Mount Pleasant, New York. On information and belief, Mr. Fareri has diverted this Project, which is expected to be highly profitable, to another entity that he controls. Mr. Fareri's purported suspension of Company operations and diversion of corporate opportunities was done without shareholder or board approval and otherwise constituted an unlawful diversion or usurpation of corporate opportunities.

43.     On October 18, 2019, Ms. Fareri wrote to Mr. Carnicelli that "[Mr. Fareri] does

not believe it is appropriate or productive for you and he to engage in any further direct communications until there is a resolution of the current situation; and, in that regard, we are suggesting that you engage an attorney to represent you in negotiating a mutually acceptable settlement."

44.　　As of the date hereof, Mr. Carnicelli has not been paid his contractually required salary as President of the Company since October 31, 2019.

45.　　As Chairman of the Board, Mr. Fareri has not held a board meeting, conducted a shareholder vote, or otherwise properly governed the Company.

46.　　The Individual Defendants, in their scheme to convert, steal or otherwise defraud the Company and Mr. Carnicelli of money to which they were rightfully entitled, engaged in self-dealing, unauthorized manipulation, misallocation and diversion of profits owed to the Company. The Defendants have effectively taken the profits from past Company Projects, ongoing Company Projects, and prospective Company Projects that are very substantial. Mr. Fareri's actions were undertaken without proper formalities or corporate approval, and should therefore be rendered null and void.

*Mr. Fareri and Mr. Sheskier manipulated the Company's financial records and denied Mr. Carnicelli access to tax records.*

47.　　Upon information and belief, Mr. Fareri, with the assistance of Mr. Sheskier, manipulated the Company's books and records.

48.　　In July 2020, Mr. Sheskier informed Mr. Carnicelli that the 2019 Company income tax returns were unavailable and that there were no funds available for distributions to shareholders. He further instructed Mr. Carnicelli that based on his "internal review" of financial records, the prior year financial records and tax returns would need to be amended. Mr. Sheskier

further refused to deliver to Mr. Carnicelli his K-1 schedules and other tax documents and back up information.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION

### (Mr. Carnicelli - Breach of Contract as to Mr. Fareri)

49.     Mr. Carnicelli repeats and realleges Paragraphs 1-48.

50.     Mr. Fareri, Mr. Carnicelli, and the Company are parties to the Shareholders' Agreement.

51.     Mr. Carnicelli has fully performed his obligations under the Shareholders' Agreement. Mr. Fareri has not.

52.     Section 4.1 of the Shareholders' Agreement prohibits the removal of Mr. Carnicelli from his position as President "with or without cause, for any reason whatsoever."

53.     Mr. Fareri wrongfully purported to remove Mr. Carnicelli from his position as President of the Company, thereby breaching the Shareholders' Agreement.

54.     In the alternative, Mr. Fareri's purported attempt to remove Mr. Carnicelli from his position as President of the Company was ineffective, as it was done in violation of the Shareholders' Agreement and without approval by the Board of Directors. Mr. Carnicelli therefore remains President of the Company and is entitled to his annual salary, which the Shareholders' Agreement provides will be $250,000 and shall not be changed.

55.     Mr. Fareri has breached the Shareholders' Agreement by failing to pay or causing the Company to fail to pay Mr. Carnicelli his annual salary from November 1, 2019.Accordingly, Mr. Carnicelli has been damaged in an amount to be determined at trial, including unpaid salary

through the date of the Company's chapter 7 filing.

## SECOND CAUSE OF ACTION
**(Mr. Carnicelli - Violation of Conn. General Statute § 31-72 as to Mr. Fareri)**

56.     Mr. Carnicelli repeats and realleges Paragraphs 1-48.

57.     Mr. Carnicelli is entitled under the Shareholders' Agreement to wages in the form of an annual salary of $250,000 as President of the Company. He cannot be removed from his position as President "with or without cause, for any reason whatsoever."

58.     Mr. Fareri has violated or is responsible for the Company's violation of Connecticut General Statute 31-72 by failing to pay or causing the Company to fail to pay Mr. Carnicelli his annual salary from November 1, 2019.

59.     Mr. Carnicelli is therefore entitled to damages of twice the full amount of his unpaid wages through the date of the Company's chapter 7 filing, plus costs and attorney's fees.

## THIRD CAUSE OF ACTION
**(Mr. Carnicelli - Breach of the Covenant of Good Faith and Fair Dealing as to Mr. Fareri)**

60.     Mr. Carnicelli repeats and realleges Paragraphs 1-48.

61.     Mr. Fareri, Mr. Carnicelli, and the Company are parties to the Shareholders' Agreement.

62.     Mr. Fareri engaged in the conduct described above, which interfered with Mr. Carnicelli's right to receive the benefits under the Shareholders' Agreement to which he is entitled, including his salary.

63.     Mr. Fareri was acting in bad faith when he engaged in the conduct described above.

64.     Accordingly, Mr. Carnicelli was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Mr. Carnicelli - Fraud as to Mr. Fareri)

65.     Mr. Carnicelli repeats and realleges Paragraphs 1-48.

66.     Mr. Fareri represented to Mr. Carnicelli that he would receive substantial financial benefits from his ownership interest in the Company. Mr. Fareri represented that the Company would earn significant profits, and that the Company would make shareholder distributions after receiving those profits.

67.     On numerous occasions following the execution of the Shareholders' Agreement, Mr. Fareri repeated his promises of partnership, equity splits, and increased construction management fees. Despite these repeated promises, such benefits never materialized.

68.     Throughout the business relationship, Mr. Fareri continually acknowledged his promises to Mr. Carnicelli and represented that despite a lack of payment on various Projects, a "true up" would be coming which would make Mr. Carnicelli whole. A fair and complete "true up" never happened, however.

69.     Mr. Fareri's representations were false. Mr. Fareri never intended to live up to the representations he made. To the contrary, he intended to maximize his own financial interests at the expense of Mr. Carnicelli's, including by causing entities he controls to withhold monies owed to the Company, and by causing the Company to refrain from making shareholder distributions.

70.     Mr. Fareri intended for Mr. Carnicelli to rely on his misrepresentations, and Mr. Carnicelli did rely. He worked hard to execute his responsibilities as President of the Company, and did not receive the profits and salary to which he was entitled.

71.     Mr. Fareri's fraud and misrepresentation was ongoing for years, as alleged above, at least through October 18, 2019.

72.     Accordingly, Mr. Carnicelli has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
**(Mr. Carnicelli - Tortious Interference with Contractual Relations as to Mr. Fareri)**

73.     Mr. Carnicelli repeats and realleges Paragraphs 1-48.

74.     A contractual relationship existed between Mr. Carnicelli and the Company as provided in the Shareholders' Agreement.

75.     Mr. Fareri had knowledge of the Shareholders' Agreement and the contractual relationship between  Mr. Carnicelli and the Company.

76.     Mr. Fareri intentionally interfered with the Shareholders' Agreement by causing the Company to terminate Mr. Carnicelli's employment with the Company and by causing the Company to fail to pay Mr. Carnicelli his contractual salary.

77.     Mr. Fareri's interference with the Shareholders' Agreement was tortious, in that Mr. Fareri's actions constituted fraud, misrepresentation and intimidation, and were malicious, as alleged above.

78.     Mr. Fareri's actions were taken outside the legitimate scope of his authority as delineated by the Shareholders' Agreement, which expressly provides that Mr. Carnicelli may not "be removed" from his position as President "with or without cause, for any reason whatsoever."

79.     As a direct and proximate result of Mr. Fareri's unlawful interference with the Shareholders' Agreement, Mr. Carnicelli has been damaged in an amount to be determined at trial, including unpaid salary through the date of the Company's chapter 7 filing.

## SIXTH CAUSE OF ACTION
### (Trustee - Breach of Fiduciary Duty as to Mr. Fareri)

80.     The Trustee repeats and realleges Paragraphs 1-48.

81.     As majority shareholder, Mr. Fareri owes a duty of loyalty, good faith and fair dealing to the Company.

82.     As a director, Mr. Fareri owes a duty of loyalty, good faith and fair dealing to the Company.

83.     As an officer, Mr. Fareri owes a duty of loyalty, good faith and fair dealing to the Company.

84.     Mr. Fareri breached his fiduciary duties by committing the wrongful acts alleged herein, including by withholding millions of dollars in payments due to the Company from the Bronxville Project and other Projects and diverting those payments to other entities for his own benefit; misrepresenting and retroactively altering the Company's financial records; concealing and withholding the Company's tax returns and tax schedules; purporting to suspend the Company's business; transferring the Company's assets to other entities controlled by him and causing Kensington to become insolvent and seeking bankruptcy protection, on the same day as the petition to confirm the Award became returnable in New York State Court, in an attempt to avoid paying the Company.

85.     Mr. Fareri's actions include self-dealing and usurpation of corporate opportunities in breach of his fiduciary duties.

86.     Accordingly, the Company has been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Trustee - Breach of Fiduciary Duty as to Ms. Fareri)

87.     The Trustee repeats and realleges Paragraphs 1-48.

88.     As an officer, Ms. Fareri owes a duty of loyalty, good faith and fair dealing to the Company.

89.     Ms. Fareri breached her fiduciary duties by committing the wrongful acts alleged herein, including suspending the Company's operations and transferring the Company's assets to other entities controlled by Mr. Fareri.

90.     The actions of Ms. Fareri include self-dealing and usurpation of corporate opportunities in breach of her fiduciary duties.

91.     Accordingly, the Company has been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Trustee - Breach of Fiduciary Duty as to Mr. Sheskier)

92.     The Trustee  repeats and realleges Paragraphs 1-48.

93.     As an officer, Mr. Sheskier owes a duty of loyalty, good faith and fair dealing to the Company.

94.     Mr. Sheskier breached his fiduciary duties by committing the wrongful acts alleged herein, including by withholding millions of dollars in payments due to the Company and diverting those payments to other entities; misrepresenting and retroactively altering the Company's financial records; concealing and withholding the Company's tax returns and tax schedules; purporting to suspend the Company's business; and transferring the Company's assets to other entities controlled by Mr. Fareri.

95.     The actions of Mr. Sheskier include self-dealing and usurpation of corporate

opportunities in breach of his fiduciary duties.

96.     Accordingly, the Company has been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
**(Trustee - Aiding and Abetting Mr. Fareri's Breach of Fiduciary Duty as to Ms. Fareri)**

97.     The Trustee repeats and realleges Paragraphs 1-48.

98.     Ms. Fareri assisted Mr. Fareri in the performance of wrongful acts in breach of his fiduciary duties to the Company, including the wrongful suspension of the Company's operations and diversion of Company assets. Ms. Fareri knew these actions to be in breach of Mr. Fareri's fiduciary duties to the Company.

99.     Accordingly, the Company has been harmed in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
**(Trustee - Aiding and Abetting Mr. Fareri's Breach of Fiduciary Duty as to Mr. Sheskier)**

100.    The Trustee repeats and realleges Paragraphs 1-48.

101.    Mr. Sheskier assisted Mr. Fareri in the performance of wrongful acts in breach of his fiduciary duties to the Company, including the alteration of Company financial records, diversion of Company assets and the wrongful suspension of the Company's operations. Mr. Sheskier knew these actions to be in breach of Mr. Fareri's fiduciary duties to the Company.

102.    Accordingly, the Company has been harmed in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
**(Trustee - Statutory Theft Conn. Gen. Stat. § 52-564 as to Mr. Fareri)**

103.    The Trustee repeats and realleges Paragraphs 1-48.

104.    Mr. Fareri's actions, including withholding millions of dollars in payments due to

the Company and diverting those payments to other entities for his own benefit, misrepresenting and retroactively altering the Company's financial records, concealing and withholding the Company's tax returns and tax schedules, purporting to suspend the Company's business and transferring the Company's assets, to other entities he controls, constitute theft.

105.    Mr. Fareri took and withheld the Company's property and deprived the Company of its property.

106.    Accordingly, the Company has been damaged in an amount to be determined at trial.

107.    Additionally, pursuant to Conn. Gen. Stat. § 52-564, the Company is entitled to treble damages.

**TWELFTH CAUSE OF ACTION**
**(Trustee - Conversion of Funds as to Mr. Fareri)**

108.    The Trustee repeats and realleges Paragraphs 1-48.

109.    Mr. Fareri intentionally and wrongfully took property of the Company, including millions of dollars in payments due to the Company for services rendered on the Bronxville Project and other Projects, as well as other assets of the Company, without authority or permission.

110.    Accordingly, the Company has been damaged in an amount to be determined at trial.

**THIRTEENTH CAUSE OF ACTION**
**(Trustee - Violation of the Connecticut Unfair Trade Practices Act ("CUTPA") as to Mr. Fareri)**

111.    The Trustee  repeats and realleges Paragraphs 1-48.

112.    Mr. Fareri's actions, including withholding millions of dollars in payments due to the Company and diverting those payments to other entities; misrepresenting and retroactively

altering the Company's financial records; concealing and withholding the Company's tax returns and tax schedules; suspending the Company's business; transferring the Company's assets to other entities controlled by Mr. Fareri and facilitating the actions detailed above, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

113.    Mr. Fareri's aforementioned conduct was undertaken in the course of his trade or business.

114.    Mr. Fareri's aforementioned conduct therefore constitutes unfair or deceptive practices within the meaning of Connecticut General Statute § 42-110(b), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, or is substantially injurious to consumers, competitors or other businesspersons.

115.    Mr. Fareri's aforementioned conduct caused substantial monetary injury to the Company that could not reasonably have been avoided and is not overweighed by any countervailing benefit to consumers, competitors or other businesspersons.

116.    As a direct and proximate result of Mr. Fareri's violations of CUTPA, the Company has suffered an ascertainable loss of money.

117.    Pursuant to Conn. Gen. Stat. § 42-110g(c), copies of this Amended Complaint have been or will be mailed to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection of the State of Connecticut.

### FOURTEENTH CAUSE OF ACTION
#### (Trustee - Violation of CUTPA as to Ms. Fareri)

118.    The Trustee repeats and realleges Paragraphs 1-48.

119.    Ms. Fareri's actions, including suspending the Company's business; transferring the Company's assets to other entities controlled by Mr. Fareri and facilitating the actions detailed

above, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

120. Ms. Fareri's aforementioned conduct was undertaken in the course of her trade or business.

121. Ms. Fareri's aforementioned conduct therefore constitutes unfair or deceptive practices within the meaning of Connecticut General Statute § 42-110(b), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, or is substantially injurious to consumers, competitors or other businesspersons.

122. Ms. Fareri's aforementioned conduct caused substantial monetary injury to the Company that could not reasonably have been avoided and is not overweighed by any countervailing benefit to consumers, competitors or other businesspersons.

123. As a direct and proximate result of Ms. Fareri's violations of CUTPA, the Company has suffered an ascertainable loss of money.

124. Pursuant to Conn. Gen. Stat. § 42-110g(c), copies of this Amended Complaint have been or will be mailed to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection of the State of Connecticut.

## FIFTEENTH CAUSE OF ACTION
### (Trustee - Violation of CUTPA as to Mr. Sheskier)

125. The Trustee repeats and realleges Paragraphs 1-48.

126. Mr. Sheskier's actions, including withholding millions of dollars in payments due to the Company and diverting those payments to other entities; misrepresenting and retroactively altering the Company's financial records; concealing and withholding the Company's tax returns and tax schedules; suspending the Company's business; transferring the Company's assets to other

entities controlled by Mr. Fareri and facilitating the actions detailed above, are unfair and oppressive and violate the public policy against unfair and deceptive business practices.

127.    Mr. Sheskier's aforementioned conduct was undertaken in the course of his trade or business.

128.    Mr. Sheskier's aforementioned conduct therefore constitutes unfair or deceptive practices within the meaning of Connecticut General Statute § 42-110(b), in that said conduct violates or offends public policy, is immoral, unethical or unscrupulous, or is substantially injurious to consumers, competitors or other businesspersons.

129.    Mr. Sheskier's aforementioned conduct caused substantial monetary injury to the Company that could not reasonably have been avoided and is not overweighed by any countervailing benefit to consumers, competitors or other businesspersons.

130.    As a direct and proximate result of Mr. Sheskier's violations of CUTPA, the Company has suffered an ascertainable loss of money.

131.    Pursuant to Conn. Gen. Stat. § 42-110g(c), copies of this Amended Complaint have been or will be mailed to the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection of the State of Connecticut.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants as follows:

1.    An order of equitable and legal relief requiring Defendants to return any and all monies wrongfully obtained, immediately, and without delay.

2.    Awarding the Plaintiffs punitive damages to the extent of Plaintiffs' entitlement

thereto under applicable laws, including pursuant to Conn. Gen. Stat. § 42-1 l0g(a);

3.     Awarding the Plaintiffs compensatory and incidental damages against all Defendants;

4.     Awarding the Trustee actual damages pursuant to Conn. Gen. Stat. § 42-110g(a);

5.     Awarding Mr. Carnicelli damages pursuant to Conn .Gen. Stat. § 31-72;

6.     Awarding the Plaintiffs all costs incurred in this action;

7.     Awarding the Plaintiffs attorney's fees;

8.     The Trustee requests an equitable order preventing the Defendants from gaining any monies paid to the Company's estate at the resolution of this action

9.     Awarding the Trustee as representative of the Company's estate such other and further relief, both legal and equitable, as the Court, in its discretion, may deem just and proper;

10.     Awarding the Trustee as representative of the Company's estate attorney' s fees;

11.     Awarding the Trustee as representative of the Company's estate treble damages for theDefendants' CUTPA violations;

12.     Awarding the Trustee as representative of the Company's estate punitive damages to theextent of Plaintiffs entitlement thereto under applicable laws, including pursuant to Conn. Gen. Stat. § 42-110g(a); and

13.     Awarding the Plaintiffs any legal and equitable relief that the Court deems just.

**PLAINTIFF,
HOWARD P. MAGALIFF,
TRUSTEE**

By: */s/ Irve J. Goldman*
Irve J. Goldman, Esq.
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06604
203-330-2000 (Tel.)
203-576-8888 (Fax)
igoldman@pullcom.com

**PLAINTIFF,
James Carnicelli, Jr.**

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III, Esq.
(JP1717)
Melissa Rose McClammy, Esq.
Pastore LLC
420 Lexington Ave
Third Floor
New York, NY, 10170
Tel: (845) 667-5711
Jpastore@pastore.net
Mmcclammy@pastore.net

**LEVITT LLP**

By: /s/ Steven L. Levitt
Steven L. Levitt, Esq.
Trevor M. Gomberg, Esq.
129 Front Street
Mineola, New York 11501
Tel: (516) 248-9700
slevitt@levittlawllp.com
tgomberg@levittlawllp.com

## <u>CERTIFICATON OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent by email this 22nd day of March, 2022, to all counsel and self-represented parties of record.

Leonard Benowich, Esq. Benowich Law, LLP
1025 Westchester Avenue
White Plains, NY 10604
(914) 946-2400
Fax : (914) 946-9474
Email: leonard@benowichlaw.com

Johanna G. Zelman, Esq.
Elizabeth M. Smith, Esq.
FordHarrison LLP
CityPlace II, 185 Asylum Street
Suite 610
Hartford, CT 06103
Email: jzelman@fordharrison.com

*/s/ Joseph M. Pastore III*
Joseph M. Pastore III