**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>THE GATEWAY DEVELOPMENT GROUP, INC.,<br><br>                      Debtor. | Chapter 7<br><br>Case No. 21-22304-rdd |
| JAMES CARNICELLI, JR. and HOWARD P. MAGALIFF, Chapter 7 Trustee of The Gateway Development Group, Inc.,<br><br>                      Plaintiffs,<br><br>v.<br><br>JOHN J. FARERI, JULIE FARERI and CHRISTOPHER SHESKIER,<br><br>                      Defendants. | Adv. Proc. No. 21-7093-rdd |
| JOHN J. FARERI,<br><br>                      Counterclaim Plaintiff,<br><br>v.<br><br>JAMES CARNICELLI, JR.,<br><br>                      Counterclaim Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF/COUNTERCLAIM DEFENDANT JAMES CARNICELLI JR.'S MOTION TO DISMISS DEFENDANT/ COUNTERCLAIM PLAINTIFF JOHN FARERI'S COUNTERCLAIM**

i

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................................1

II. FACTUAL BACKGROUND...................................................................................................1

III. LEGAL STANDARD................................................................................................................2

IV. ARGUMENT .............................................................................................................................3

   i. A Claim of Common Law Indemnity Under Connecticut Law Does Not Apply to The Intentional Tort Claims Asserted in This Action ....................................................3

   ii. The Counterclaim Does Not Allege Exclusive Control by Mr. Carnicelli. ............................5

   iii. The Counterclaim Does Not Allege that Mr. Fareri had No Knowledge or Reason to Have Knowledge of Mr. Carnicelli's Supposed Negligence. ..........................................................7

   iv. There Is No Right to Indemnification Under the Shareholders' Agreement. .........................7

V. CONCLUSION ..........................................................................................................................8

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Allaire Corp. v. Okumus*,
   433 F.3d 248, 249-50 (2d Cir. 2006) ..................................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662, 667 (2009) ........................................................................................................ 3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) .................................................................................................... 2, 3

*Herrera v. Adams*,
   No. CV106004615, 2011 WL 6756914, at *4 (Conn. Super. Ct. Nov. 30, 2011) ........................ 5

*Martel v. Burkamp*,
   No. CVH 7684, 2009 WL 2243768, at *2 (Conn. Super. Ct. July 23, 2009) ............................... 5

*Parks v. Town of Southington*,
   CV205027166S, 2021 WL 779186 at *8 (Conn. App. Ct., Feb. 3, 2021) ................................... 5

*Pellecchia v. Connecticut Light & Power Co.*,
   57 A.3d 803, 808 (Conn. App. Ct. 2012) .................................................................................. 4

*Peterson v. Hume*,
   No. HHDCV115035394S, 2015 WL 1919433, at *5 (Conn. Super. Ct. Mar. 30, 2015) ............. 4

*Scholz v. Epstein,*
   232 A.3d 1155, 1170 (Conn. App. Ct. 2020) ........................................................................... 5

*Skuzinski v. Bouchard Fuels, Inc.,*
   694 A.2d 788, 791 (Conn. 1997). .............................................................................................. 4

*Ulbrich v. Groth*,
   78 A.3d 76, 100 (Conn. 2013) ................................................................................................... 5

*Wood v. Club, LLC*,
   No. FSTCV136016946S, 2013 WL 6912874, at *3 (Conn. Super. Ct. Nov. 29, 2013) ............... 4

**Treatises**

Deborah DeMott, *Culpable Participation in Fiduciary Breach,* Harvard Law School Forum on
Corporate Governance, (Oct. 24 2016) ............................................................................................ 5

I.   **PRELIMINARY STATEMENT**

Pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure as incorporated by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure, Plaintiff/Counterclaim Defendant James Carnicelli, Jr. ("Mr. Carnicelli") submits this memorandum of law in support of his Motion to Dismiss Defendant/Counterclaim Plaintiff John J. Fareri's ("Mr. Fareri") counterclaim dated April 12, 2022 ("Counterclaim") (ECF Docket No. 26).

The Counterclaim, which asserts a claim for common law indemnification, fails to state a claim on which relief may be granted because under Connecticut law, common law indemnification is unavailable for claims based on intentional wrongdoing. Even if indemnification were available for intentional torts, the Counterclaim fails to state a claim because it fails to allege facts essential to the claim, including that Mr. Carnicelli had exclusive control the relevant events or that Mr. Fareri lacked knowledge of any alleged negligence. The Counterclaim also fails to state a claim for indemnification under the Shareholders' Agreement, because the Shareholders' Agreement provides no right to indemnification.[1] Accordingly, the Counterclaim should be dismissed.

II.  **FACTUAL BACKGROUND**

The Court is familiar with the background facts of this matter from prior motion practice. Briefly stated, as alleged in the Counterclaim, Mr. Fareri is the sole director and majority shareholder of the Debtor, the Gateway Development Group, Inc. ("Gateway"). (Counterclaim ¶ 1). In the Second Amended Complaint, the Chapter 7 Trustee of Gateway asserts claims against Mr. Fareri for diverting hundreds of millions of dollars that should have been paid to Gateway to other entities Mr. Fareri controls. (Sec. Am. Cmplt. ¶ 2; *see id.* ¶¶ 32, 39-42). The Trustee seeks

---

[1] References to the "Shareholders' Agreement" are to the Shareholders' Agreement identified in paragraph 16 of the Second Amended Complaint (ECF Docket No. 24) and paragraph 4 of the Counterclaim. A copy of the Shareholders' Agreement is attached as Exhibit A to the Declaration of Joseph M. Pastore III, submitted herewith.

1

to recover damages from Mr. Fareri on the following causes of action: (1) breach of fiduciary duty (Sixth Cause of Action) (*id.* ¶¶ 80-86), (2) statutory theft under section § 52-564 of the Connecticut General Statutes (Eleventh Cause of Action) (¶¶ 103-107), (3) conversion of funds (Twelfth Cause of Action) (¶¶ 108-110), and (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Thirteenth Cause of Action) (¶¶ 111-117).

In his Counterclaim, Mr. Fareri seeks common law indemnification from Mr. Carnicelli "if and in the event Fareri is held liable to the Trustee." (Counterclaim ¶ 17). The Counterclaim alleges that if Gateway suffered any damages, those damages "were directly and immediately caused by the exclusive actions, inactions, omissions, negligence, carelessness, recklessness, breach of contract, and/or breach of duty by Carnicelli." (*Id.*)

The only specific facts alleged in the Counterclaim are that Mr. Carnicelli was Gateway's President and previously had served as Gateway's Vice President (*id.* ¶ 6), that he had certain duties enumerated in the Shareholders' Agreement (¶ 8), and that "he negotiate[d] the terms of the construction and construction management agreements Gateway executed and entered into with the Fareri Project Entities." (¶ 11). The Counterclaim also contains conclusory allegations that "if" Gateway was not paid appropriately "then Carnicelli was solely responsible therefore." (*Id.* ¶ 14).

### III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 8(a) and 12(b)(6), a plaintiff must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a) and Fed.R.Civ.P. 12(b)(6). Although Rule 8(a) does not demand a plaintiff to provide "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Rule 8(a) does demand more than simple conclusory allegations. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 667 (2009). For instance, Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* As such, a complaint that offers nothing more than "labels and conclusions" or "naked assertions" unsupported by "further factual enhancement" will not satisfy Rule 8(a) and must be dismissed. *Id.* at 667 and 678 (quotations omitted).

Furthermore, in order to survive a motion to dismiss based on a failure to state a claim for relief, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although as a general rule the court must accept as true all well-pleaded factual allegations in the complaint, and "draw [ ] all inferences in the plaintiff's favor," there are exceptions. *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted). For instance, a court should not accept as true legal conclusions and statements contained in the complaint. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

IV. <u>ARGUMENT</u>

    i. **A Claim of Common Law Indemnity Under Connecticut Law Does Not Apply to The Intentional Tort Claims Asserted in This Action**

Common law indemnification under Connecticut Law is a claim by a defendant to hold a third-party tortfeasor liable for damages **negligently** caused to the plaintiff. *Valente v. Securitas Sec. Services, USA, Inc.,* 96 a.3d 1275, 1281 (Conn. App. Ct. 2014). To state a successful claim for common law indemnification for the purposes of surviving a motion to dismiss, the claimant must allege that: (1) The third party against whom indemnification is sought was negligent; (2)

3

Any injury was caused by the third party's active negligence, rather than the defendant's own passive negligence; (3) The third party was in control of the situation to the exclusion of the defendant seeking reimbursement; *and* (4) The defendant did not know of the third party's negligence, had no reason to anticipate it, and reasonably could rely on the third party not to be negligent. *Id.* at 1282; *see also Pellecchia v. Connecticut Light & Power Co.,* 57 A.3d 803, 808 (Conn. App. Ct. 2012).

Stated another way, a claim for common law indemnification has been successfully alleged where "one of the defendants is in control of the situation and his negligence alone is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear burden of damages due to the injury." *Skuzinski v. Bouchard Fuels, Inc.,* 694 A.2d 788, 791 (Conn. 1997).

In Connecticut, common-law indemnification is not available when the primary liability is for intentional conduct. *Peterson v. Hume,* No. HHDCV115035394S, 2015 WL 1919433, at *5 (Conn. Super. Ct. Mar. 30, 2015). In *Peterson,* the court held that "the majority of Superior Court Judges who have addressed the issue have held that there is no common-law action for indemnification when the first-party action is based solely on intentional conduct." *Id., see also* Wood v. Club, LLC, No. FSTCV136016946S, 2013 WL 6912874, at *3 (Conn. Super. Ct. Nov. 29, 2013) ("Although there is an 'absence of any controlling [a]ppellate authority' regarding whether a claim of indemnification can be brought for intentional torts, 'the majority [of Superior Courts] view that there is no common-law action for indemnification for intentional tortious conduct.'" (quoting *Martel v. Burkamp*, No. CVH 7684, 2009 WL 2243768, at *2 (Conn. Super. Ct. July 23, 2009)); *Herrera v. Adams*, No. CV106004615, 2011 WL 6756914, at *4 (Conn. Super.

4

Ct. Nov. 30, 2011) ("Although the appellate case law does not explicitly limit common-law indemnification to negligence cases only, the majority of trial court decisions find that there is no common-law indemnification for intentional tortious conduct." (internal citations omitted)).

The claims alleged in the Second Amended Complaint for which the Counterclaim seeks indemnification are breach of fiduciary duty (Count 6), statutory theft (Count 11), conversion of funds (Count 12), and violation of CUPTA (Count 13). Each of these causes of action sounds in intentional wrongdoing, not negligence. *See* Deborah DeMott, *Culpable Participation in Fiduciary Breach,* Harvard Law School Forum on Corporate Governance, (Oct. 24 2016) (breach of fiduciary duty); *Scholz v. Epstein,* 232 A.3d 1155, 1170 (Conn. App. Ct. 2020) (statutory theft); *Parks v. Town of Southington,* CV205027166S, 2021 WL 779186 at *8 (Conn. App. Ct., Feb. 3, 2021); (conversion); *Ulbrich v. Groth,* 78 A.3d 76, 100 (Conn. 2013) (CUTPA).

Connecticut caselaw is clear that a claim for indemnity is not available for the causes of action alleged against Mr. Fareri. Accordingly, the Counterclaim fails to state a claim and should be dismissed.

### ii. The Counterclaim Does Not Allege Exclusive Control by Mr. Carnicelli.

Even if common law indemnification were available in this case (it is not), the Counterclaim fails to state a claim because it does not allege that Mr. Carncielli had exclusive control over the terms of Gateway's compensation for the work it did for Mr. Fareri's entities or the transfer of projects, opportunities, employees, and other assets away from Gateway. Allegations of such exclusive control are required to state a claim for common law negligence in Connecticut. *Skuzinski v. Bouchard Fuels, Inc.,* 694 A.2d 788, 791 (Conn. 1997). Here, not only does the Counterclaim fail to allege Mr. Carnicelli's exclusive control, the facts that are alleged in the Counterclaim demonstrate that Mr. Carnicelli did not exercise exclusive control.

For example, the Counterclaim quotes at length from the provisions of the Shareholders' Agreement that delineate Mr. Carnicelli's responsibilities as President of Gateway. Nothing in those allegations suggests that Mr. Carnicelli had exclusive control over Gateway's work for, or agreements with, Mr. Fareri's entities. To the contrary, the provisions of the Shareholders' Agreement cited in the Counterclaim indicate that Mr. Carnicelli was not solely responsible for the activities of Gateway and thus did not have exclusive control. For example, Paragraph 5.(1)(d)(iii) states that Mr. Carnicelli would "**often times**, lead client and project pursuit efforts." (Counterclaim ¶ 8 (emphasis added)). Similarly, Paragraph 5.1(d)(x) states that Mr. Carnicelli would "**[p]articipate in, and at times,** lead the estimating budgeting process for competitive proposals" (Counterclaim ¶ 8 (emphasis added)). This language is not sufficient to allege the exclusivity prong needed to state a claim for common law indemnity. If Mr. Carnicelli was "often times" or "at times" responsible, that would indicate that at other times there was another individual who was responsible for making these decisions on the part of Gateway. Indeed, the Counterclaim alleges that Mr. Fareri is the sole director and majority shareholder of Gateway. (*Id.* ¶ 1). It also tacitly acknowledges Mr. Fareri's control over Gateway's work, when it alleges that "[i]f Fareri transferred the right or ability to perform construction or construction management services that had been performed or might have been performed by Gateway to another person or entity . . . ." (*Id.* ¶ 14). The Counterclaim certainly does not deny that Mr. Fareri had such control.

Because the Counterclaim fails to allege that Mr. Carnicelli maintained exclusive control of Gateway during the relevant time periods, even if under Connecticut law such a claim for indemnification was available for intentional torts, the Counterclaim would fail to state a claim and should be dismissed.

### iii. The Counterclaim Does Not Allege that Mr. Fareri had No Knowledge or Reason to Have Knowledge of Mr. Carnicelli's Supposed Negligence.

To state a claim for common law indemnification, a Counterclaim must allege that the would-be indemnitee "did not know of the third party's negligence, had no reason to anticipate it, and reasonably could rely on the third party not to be negligent." *Valente*, *supra*, at 1282. Here, the Counterclaim does not allege that Mr. Fareri did not know of Mr. Carnicelli's alleged negligence. (*See* Counterclaim). It does allege that Mr. Fareri is the "Sole Director" of Gateway, which renders implausible the idea that if Mr. Carnicelli had been negligent, Mr. Fareri would have not known or had reason to anticipate it. (*Id.* ¶ 1). For this additional reason, the Counterclaim should be dismissed.

### iv. There Is No Right to Indemnification Under the Shareholders' Agreement.

To the extent the Counterclaim asserts a right to indemnification under the Shareholders' Agreement, it fails to state a claim. There is no right to indemnification under the Shareholders' Agreement. Any such claim is barred by the Shareholders' Agreement's merger clause.

The Counterclaim appears to rest solely on a common law right to indemnification. The Counterclaim does, however, allege that the claim for indemnity is based in part on various "exclusive actions, inactions, omissions, negligence, carelessness, recklessness, **breach of contract**, and/or breach of duty by Carnicelli" (Counterclaim ¶ 7 (emphasis added)). It further alleges that "[b]y reason of the foregoing, and by reason of the allegations asserted by the Trustee in the Second Amended Complaint, Carnicelli breached the terms of the Shareholders' Agreement and his obligations to Gateway as its President." (Counterclaim ¶ 18). Accordingly, according to the Counterclaim, "[b]y reason of the foregoing, Fareri is entitled to common law indemnification from, and for judgment over and against Carnicelli, for the full amount of any verdict or judgment entered against Fareri." (Counterclaim ¶ 22).

The Counterclaim does not identify any provision of the Shareholder's Agreement that would support a contractual claim for indemnification. (*See generally* Counterclaim). In fact, there is no such provision. (*See generally Decl. of Joseph M. Pastore III; Ex. A)*. Furthermore, the Shareholders' Agreement contains a merger clause, which provides as follows: "This Agreement contains the entire understanding of the parties hereto with regard to the subject matter hereof, and may not be amended or modified, nor may any of its provisions be waived, except by a writing executed by all of the parties hereto or, in the case of a waiver, by each party waiving compliance." (*See* Gateway Shareholders' Agreement § 16.7). This provision precludes Mr. Fareri's claim for indemnification to the extent it is based on the Shareholders' Agreement.

## V. <u>CONCLUSION</u>

Based on the foregoing, Mr. Carnicelli respectfully requests that this Court dismiss the Counterclaim in its entirety.

Dated: New York, New York
       May 9, 2022

**PLAINTIFF/COUNTERCLAIM DEFENDANT,**
**James Carnicelli, Jr.**

**PASTORE LLC**

By: */s/ Joseph M. Pastore III*
Joseph M. Pastore III
Melissa Rose McClammy
420 Lexington Ave
Third Floor
New York, NY, 10170
Tel: (845) 667-5711
Jpastore@pastore.net
Mmcclammy@pastore.net

**LEVITT LLP**

By: /s/ Steven L. Levitt
Steven L. Levitt
Trevor M. Gomberg
  129 Front Street
Mineola, New York 11501
Tel: (516) 248-9700
slevitt@levittlawllp.com
tgomberg@levittlawllp.com

**DAVIDOFF HUTCHER & CITRON LLP**

By: /s/ Robert L. Rattet
Robert L. Rattet
Jonathan S. Pasternak
605 Third Avenue
New York, New York 10158
(212) 557-7200
rlr@dhclegal.com
jsp@dhclegal.com