Avery Samet
Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
- and -
Leonard Benowich
BENOWICH LAW, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400
leonard@benowichlaw.com
Attorneys for Defendant and Counterclaim
Plaintiff John J. Fareri

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>THE GATEWAY DEVELOPMENT GROUP, INC.,<br><br>                    Debtor. | .<br><br>Chapter 7<br><br>Case No. 21-22304-shl |
| JAMES CARNICELLI, JR. and HOWARD P. MAGALIFF, Chapter 7 Trustee of The Gateway Development Group, Inc.,<br><br>                    Plaintiffs,<br><br>v.<br><br>JOHN J. FARERI, JULIE FARERI and CHRISTOPHER SHESKIER,<br><br>                  Defendants. | Adv. Proc. No. 21-7093-shl<br><br>**OBJECTION TO MOTION TO DISMISS COUNTERCLAIM**<br><br>Re: Dkt. 30 |
| JOHN J. FARERI,<br><br>                  Counterclaim Plaintiff,<br><br>v.<br><br>JAMES CARNICELLI, JR.,<br><br>                  Counterclaim Defendant. | |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ........................................................................................................................ 5

I. THE COUNTERCLAIM STATES A CLAIM FOR RELIEF .......................................... 5

    A.    Legal Standard ................................................................................................ 5

    B.    The Counterclaim is Based on Allegations of Negligence .................................... 5

    C.    The Elements of a Common law Indemnification Claim are Adequately Pleaded ............................................................................................................. 6

CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
   131 F. Supp. 3d 196 (S.D.N.Y. 2015) ..................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................................5

*McAvoy v. Highgate Condominium Ass'n, Inc.*,
   2020 WL 854629 (Conn. Super. Jan. 15, 2020) ................................................................7, 8

*In re Mundo Latino Mkt. Inc.*,
   590 B.R. 610 (Bankr. S.D.N.Y. 2018) ..................................................................................6

*Skuzinski v. Bouchard Fuels Inc.*,
   694 A.2d 788 (Conn. 1997) ...............................................................................................6, 7

**Statutes and Rules**

Fed. R. Civ. P. 12 ..........................................................................................................................5

**Other Authorities**

3A Fletcher Cyc. Corp. § 1070 (Inadequate supervision) ..............................................................6

Defendant-Counterclaim Plaintiff John Fareri ("Fareri") objects to the motion to dismiss ("Motion") of Plaintiff-Counterclaim Defendant James Carnicelli, Jr. ("Carnicelli"), and states:

**INTRODUCTION**

1. After having been employed by the Debtor ("Gateway") for eight or nine years, Carnicelli became its President and 49% shareholder in 2014 pursuant to the parties' Shareholders' Agreement [Dkt. 11-3], under which he became the President, with all executive authority and made all business and financial decisions for which the Trustee is now suing Fareri. Carnicelli's responsibilities included entering into contracts with Gateway's counterparties, contracts which provided for specific construction management fees. In the Second Amended Complaint [Dkt. 24] ("Complaint"), the Trustee alleges that Fareri breached his fiduciary duty as Gateway's sole director because Gateway failed to collect receivables due under contracts it had entered into with entities owned by or affiliated with Fareri, contracts which had been (or should have been) negotiated, signed, and administered by Carnicelli as Gateway's President. The Complaint does not allege that Fareri personally was involved in the negotiation or administration of any of these contracts at any time prior to Carnicelli's departure in 2019. By his Counterclaim, Fareri seeks to hold Carnicelli liable to the extent that the Trustee holds Fareri liable for Carnicelli's actions and omissions as President.

2. The sole basis for Carnicelli's dismissal Motion is that the Trustee's underlying claim against Fareri is based on intentional (not negligent) conduct, and that Fareri failed to plead (a) that Carnicelli exercised the requisite degree of control over Gateway, and (b) that he, Fareri, had no reason to anticipate Carnicelli's negligence or failure to act in accordance with his own duties as Gateway's President.

3. These arguments fail. As described below, the Complaint's allegations make clear that the breach of fiduciary duty claim is based on an omission, the purported failure to negotiate

1

appropriate construction management fees and the failure to collect receivables. The Answer and Counterclaim [Dkt. 26] further plead, and the employment provisions of the Shareholders' Agreement make clear, that notwithstanding Fareri's status as sole director, Carnicelli was at all relevant times the person in charge of Gateway who was actually responsible for the operation of its business. In essence, the claims against Fareri are that as director he failed to supervise Carnicelli in the performance of his own duties as Gateway's President. Given that, Fareri was acting well within his rights and duties as director to rely on and assume that Carnicelli would properly perform his duties; the Complaint does not allege that Fareri had knowledge of any misconduct by Carnicelli or that he had (or should have had) any reason to anticipate negligence by Carnicelli, with whom he had worked since 2006 (Complaint ¶15), and no such reasons are articulated in the Motion.

## **BACKGROUND**

4. Fareri formed Gateway in 2006 to provide construction services to his various development projects. (Complaint ¶15.) Fareri had been Gateway's sole shareholder, and Carnicelli had been employed by Gateway since 2006, until 2014, when, pursuant to a Shareholders' Agreement dated January 1, 2014, Carnicelli became its President and Fareri gave Carnicelli 98 (49%) of Gateway's shares, retaining 51% for himself. (Counterclaim ¶¶1, 3, 4, 5.)

5. "Prior to the execution of the Shareholders' Agreement, Carnicelli had been employed by Gateway as its vice president and was or should have been fully familiar with the nature of Gateway's business and the terms of its contracts, agreements, and arrangements with the Fareri Project Entities." (Id. ¶6.)

6. Pursuant to the Shareholders' Agreement, Carnicelli was employed as President of Gateway. (Id. ¶6.)

7. Pursuant to Section 5.1(d) of the Shareholders' Agreement, his duties as President included:

> iii. Be engaged in, and often times, lead client and project pursuit efforts;
>
> iv. Provide oversight in managing all necessary resources throughout the entire project from start-up through closeout and ensure that the owner's expectations, budgetary and profitability objectives are exceeded.
>
> \* \* \*
>
> vi. Prepares budgets that will achieve profitability objectives while taking into account project-specific challenges.
>
> vii. Provide leadership and business judgment on all financial and profitability aspects of projects within position scope.
>
> \* \* \*
>
> x. Participate in, and at times, lead the estimating/budgeting process for competitive proposals.
>
> \* \* \*
>
> **xii. Responsible for ensuring projects achieve budget and profitability objectives**.
>
> \* \* \*
>
> xiv. Accurately forecast project financial performance.

(Id. ¶8 (emphasis added).)

8. The Shareholders' Agreement does not ascribe any responsibilities to Fareri, and instead only describes him (at §3) as Chairman of the Board of Directors.

9. "[A]fter the execution and effectiveness of the Shareholders' Agreement, Carnicelli was responsible for negotiating, and he did negotiate, the terms of the construction and construction management agreements Gateway executed and entered into with the Fareri Project Entities." (Counterclaim ¶11.)

10. Carnicelli left Gateway in 2019. (Id. ¶15.)

3

11. On October 9, 2020, Carnicelli commenced this action in Connecticut state court [Dkt 1-1].

12. Gateway commenced a Chapter 7 case on May 25, 2021, after which this action was removed, transferred, and referred to this Court.

13. The Complaint asserts both claims by Carnicelli against Fareri and claims by the Trustee on behalf of Gateway against Fareri. (The Trustee's claims had been asserted by Carnicelli when the action was pending in Connecticut state court.)

14. The Trustee's claims include one for breach of fiduciary duty (Complaint ¶84) based upon allegations that "[t]he Bronxville Project was just one instance in which Mr. Fareri and his entities refused to pay the Company [Gateway] its fair, agreed-upon labor rates and fees for services rendered. On multiple other Projects, entities owned and controlled by Mr. Fareri have paid the Company only enough to cover the Company's out-of-pocket costs and have withheld management fees and usual customary labor fees. Those Projects include construction projects at 3030 Westchester Avenue, 415 Greenwich Avenue, Old Track Residential, The Harbor, 1162 East Putnam Avenue and Temple Street." (Id. ¶32.) The Complaint does not allege that the nature of Gateway's business or the manner in which Carnicelli operated the same changed at any time after the Shareholders' Agreement was entered into.

15. The Counterclaim is for common law indemnity, and alleges: "If Gateway failed to negotiate, charge, or collect an appropriate fee or compensation for the services it rendered … for any Fareri Project Entity, then Carnicelli was solely responsible therefor and for any associated breach of duty" (id. ¶12; see also id. ¶17 (similar)); and "If Gateway failed to generate or collect sufficient funds with which to make a profit that could be distributed to its shareholders, Carnicelli was solely responsible therefor" (id. ¶13).

4

**ARGUMENT**

**I. THE COUNTERCLAIM STATES A CLAIM FOR RELIEF**

**A. Legal Standard**

16. The pleading standard applicable to complaints under Rule 12(b)(6) applies equally to counterclaims. *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015).

17. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*.

**B. The Counterclaim is Based on Allegations of Negligence**

18. Carnicelli argues that common law indemnity is unavailable as to the breach of fiduciary duty claim because the claim is based solely on allegations of intentional misconduct, not negligence. (Motion at 4-5.)

19. That is false. As noted above, the claim is based on allegations that Gateway failed to collect contractually owed fees for services rendered in relation to projects indirectly owned at least in part by Fareri. (Complaint ¶32.) Putting aside that the breach of contract allegation is conclusory, the Complaint being devoid of any allegation as to contract terms, the timing of the breach or the amount of resulting damages, the Counterclaim alleges (at ¶¶12-13, 17) that to the extent Gateway has uncollected receivables in relation to projects indirectly owned by Fareri, that is entirely the fault of a failure to act.

20. A cause of action against the board chairman for failure to collect a receivable, when responsibility for managing the company's day-to-day operations was given to an officer-employee by contract, is in practical terms a claim based on an omission, a failure to supervise, and thus a negligence claim. A director is not an insurer of the honesty of the corporation's employees or the success of its business. "To be held liable, directors must have had some knowledge of the misconduct or have been negligent in failing to exercise reasonable diligence. Directors are justified in delegating the conduct of the main business to officers and subordinates and, in the absence of grounds for distrust, may assume that such persons will be upright in the performance of their duties." 3A Fletcher Cyc. Corp. § 1070 (Inadequate supervision); *see also In re Mundo Latino Mkt. Inc.*, 590 B.R. 610, 618 (Bankr. S.D.N.Y. 2018). The Complaint alleges nothing that could give rise to anything but a claim for negligence.

### C. The Elements of a Common law Indemnification Claim are Adequately Pleaded

21. Four separate elements must be pleaded to recover for indemnification: (1) that the other tortfeasor was negligent; (2) that his negligence, rather than the plaintiff's, was the direct, immediate cause of damages; (3) that he was in exclusive control of the situation to the exclusion of the plaintiff, and (4) that the plaintiff did not know of such negligence, had no reason to anticipate and could reasonably rely on the other tortfeasor not to be negligent. *Skuzinski v. Bouchard Fuels Inc.*, 694 A.2d 788, 791 (Conn. 1997).

22. As to the first two elements, the Counterclaim (at ¶¶12-13, 17) alleges negligence by Carnicelli in failing to collect fees due Gateway, and that his negligence was the immediate cause of damages. These elements are not challenged by the Motion.

23. As to the third element, the Trustee alleges that Carnicelli's "responsibilities … included providing leadership and business judgment on the financial and profitability aspects of

various Projects." (Complaint ¶25; *see also* Shareholders' Agreement ¶5) and that Carnicelli "took an active role in managing the Company as it worked on and completed numerous Projects for entities controlled by Mr. Fareri." (Complaint ¶28.) These allegations are more than sufficient to satisfy the pleading requirements as to relative control.

24. Carnicelli contends that the requisite degree of control is lacking because the Counterclaim "does not allege that Mr. Carnicelli had *exclusive* control over the terms of Gateway's compensation for the work it did for Mr. Fareri's entities." (Motion at 5, emphasis added.) This argument ignores the fact, as prescribed by the Shareholders' Agreement, that he was "Responsible for ensuring [that] projects achieve budget and profitability objectives" (Shareholders' Agreement ¶5.1(d)(xii), and it ignores paragraph 11 of the Counterclaim—which alleges that "Carnicelli was responsible for negotiating, and did negotiate, the terms of the construction and construction management agreements Gateway executed and entered into with the Fareri Project Entities." These allegations sufficiently describe the exclusive control that was exercised by Carnicelli; the Counterclaim need not use the word "exclusive" when the circumstances alleged in the Counterclaim establish just that. Moreover, the case cited by Carnicelli, *Skuzinski*, 694 A.2d at 794 (Motion at 5), acknowledged that the question of exclusive control is ordinarily a question of fact. In *McAvoy v. Highgate Condominium Ass'n, Inc*., 2020 WL 854629, at *2 (Conn. Super. Jan. 15, 2020), the Court recognized that "[t]he general rule is that questions involving exclusive control … generally present[] a question of fact." That Court distinguished *Skuzinski* as presenting the "rare example" of a case about exclusive control over a sidewalk where "the disagreement between the parties did not turn upon any meaningful dispute about the fact alleged." In *McAvoy*, as in this case, "this case presents a plethora of disputed facts, thereby implicating the general rule that issues regarding exclusive control" present questions of

fact and should not be resolved on motion. (*Id.* at *4.) Carnicelli's references to irrelevant provisions from the Shareholders' Agreement do not change that he had exclusive control over the negotiation and administration of Gateway's contracts and operations.[1]

25. As to the fourth element, Carnicelli's argument that Fareri's status as sole director "renders implausible the idea that if Mr. Carnicelli had been negligent, Mr. Fareri would have not known or had reason to anticipate it" (Motion at 7) fails. Carnicelli *argues* that he wasn't negligent because if he was Fareri would have known about it. But the nature of, and motivation for Carnicelli's actions or omissions are questions of fact, as is the question of Fareri's knowledge of Carnicelli's acts or omissions, all of which raise an inquiry not appropriately determinable on a motion to dismiss.

## **CONCLUSION**

The Motion should be denied and Fareri should be granted such other and further relief as the Court deems just and proper.

---

[1] Carnicelli's desperation is manifest when his Motion intentionally takes the Counterclaim's allegations out of context. On page 5, the Motion argues that Fareri concedes Carnicelli did not have exclusive control by alleging in paragraph 14 of the Counterclaim: "If Fareri transferred the right or ability to perform construction or construction management services that had been performed or might have been performed by Gateway to another person or entity,…"

But the context of the entire paragraph demonstrates the Motion's disingenuity. That paragraph speaks to the time when Carnicelli had departed Gateway and was no longer exercising his Presidential duties:

> 14. If Fareri transferred the right or ability to perform construction or construction management services that had been performed or might have been performed by Gateway to another person or entity, it was only after (a) Carnicelli had determined to depart his employment at and with Gateway, to compete with Gateway for such work (including with respect to the "Goshen" project), and to render Gateway unable to perform such services, and (b) full disclosure of all material facts concerning any such business opportunity were disclosed to and known by all of Gateway's directors and officers.

Dated: New York, New York
       July 5, 2022

Respectfully submitted,

/s/ Avery Samet
Avery Samet
Jeffrey Chubak
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
- and -
Leonard Benowich
BENOWICH LAW, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400
leonard@benowichlaw.com
Attorneys for Defendant and Counterclaim Plaintiff John J. Fareri