

DAVIDOFF HUTCHER & CITRON LLP
ATTORNEYS AT LAW
605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

WEST PALM BEACH
ATTORNEYS AT LAW
1107 NORTH OLIVE AVENUE
WEST PALM BEACH, FL 33401
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

WRITER'S DIRECT: 914-381-7400
E-MAIL: RLR@DHCLEGAL.COM

July 29, 2022

VIA ELECTRONIC FILING AND EMAIL

Honorable Sean H. Lane
U.S. Bankruptcy Court
Southern District of N.Y.
300 Quarropas Street
White Plains, New York 10601

      **Re:** **In re The Gateway Development Group, Inc., Debtor**
            **Chapter 7, Case No. 21-22304 (SHL)**              .

            **James Carnicelli, Jr. and Howard P. Magaliff, Chapter 7, Trustee of The Gateway Development Group, Inc., Plaintiffs, v. John J. Fareri, Julie Fareri and Christopher Sheskier, Defendants; Adv. Proc. 21-7093 (the "Adversary Proceeding")**

Honorable Judge:

     This firm represents James Carnicelli Jr. ("Mr. Carnicelli"). We write this letter in preparation for the upcoming status conference on the Adversary Proceeding. The Court requested a status conference prior to scheduling Mr. Carnicelli's Motion to Dismiss the Counterclaim filed by Defendant John J. Fareri ("Fareri"). There are additional matters regarding the Adversary Proceeding that Mr. Carnicelli believes that the Court should address.

     Mr. Carnicelli's position is that this Chapter 7 Case, Development was filed primarily as a litigation tactic by Fareri, the Chairman of the Debtor, without calling a meeting of shareholders. Fareri's intent is to disenfranchise his long-time equity junior partner, Mr. Carnicelli, the 49% shareholder of the Debtor, and deprive him of any effectual right of due process.

The facts this Court should be aware of include:

- Fareri is one of the wealthiest and most successful real estate developers in Connecticut and Westchester. He is the 51% shareholder and sole director of the Debtor, The Gateway Development Group, Inc. ("Development"). Mr. Carnicelli is the 49% shareholder. Development is a construction management services company that managed projects for numerous real estate companies owned and controlled by Fareri.

- Fareri caused Development to file this case without any legitimate need for bankruptcy protection. At the time of filing, Development was solvent, and except to the extent deliberately rendered insolvent by Fareri, at all times remained solvent. This is uncontested, and buttressed by a review of the Examiner's Report (Docket of In re Gateway Kensington LLC [Kensington Docket], filed in the U.S. Bankruptcy Court, Southern District of New York, Case No. 21-22274 [the "Kensington Case"], ECF No. 106). Just a few months prior, as of the end of calendar year 2020, Development's books and records showed more than $1.7 million in assets and less than $50k in liabilities. In April 2021, Development won an arbitration award of more than $14 million, rendering it even more solvent. Indeed, Development's Chapter 7 Petition itself showed that Development was solvent, with estimated assets at between $10 million and $50 million and liabilities at only between $1 million and $10 million.

- The self-evident purpose of this bankruptcy case and the companion Kensington Case was to enable Fareri to (1) avoid or at least significantly delay payment of a $14 million arbitration award in favor of Development, and (2) sabotage Mr. Carnicelli's claims against him in Connecticut state court, where the court had ordered discovery and a hearing to consider attachment of Fareri's assets.

- The arbitration award was issued by a panel of three arbitrators, composed of construction experts (the "Panel") after multiple days of evidentiary hearings in an arbitration brought derivatively by Mr. Carnicelli on behalf of Development against Gateway Kensington LLC ("Kensington") (the "Arbitration"). The Panel found Kensington (controlled by Fareri) liable to Development (also controlled by Fareri but with Mr. Carnicelli as a minority shareholder) for more than $14 million dollars.

- There is an Examiner's Report in the Kensington Case that details fraudulent transfers by Fareri prior to filing the Kensington Case so as to attempt to render Kensington unable to pay Development, despite the nearly $50

million in profits taken by Fareri from Kensington. Judge Drain has described the Report as excellent.

- The insider claims asserted in this case (Development) are a further attempt to disenfranchise Mr. Carnicelli in that they attempt to take the funds to be paid under the plan by Fareri in the Kensington Case and recycle back to Fareri. The insider claims were never, ever, found on Development's books and records, and are a recent fabrication made to buttress Fareri's litigation position.

- The Adversary Proceeding seeks damages for many other Development projects, other than Kensington, some of which are more than a billion in total value, and along with Mr. Carnicelli's personal claims, are essentially a two-party dispute involving hundreds of millions in damages. The Trustee removed the underlying Connecticut state litigation and is now a co-plaintiff with Mr. Carnicelli.[1]

### *The Arbitration Award*

The background of the dispute between Fareri and Mr. Carnicelli is described in the Award of Arbitrators dated April 23, 2021 (the "Award"), docketed in this case as ECF Docket No. 19-4. The Award was entered on behalf of Mr. Carnicelli both in a derivative capacity as a 49% shareholder of Development and in his individual capacity. During the Arbitration, the Panel of three arbitrators criticized Fareri's contentions, stating that Fareri's testimony that he was unaware of a contract between Development and Kensington was "inaccurate at best, at the very least unpersuasive, and inconsistent with his Declaration." The Panel also recognized that Fareri had "conceded Development was due more than the pass-through amounts it was paid." Among other critical issues raised in Arbitration, Fareri had criminal counsel attend and Christopher Sheskier, who was the Chief Financial Officer for all Fareri companies, ("Sheskier"), availed himself of the Fifth Amendment over 17 times – likely because of tax fraud that he and Fareri are perpetrating against New York state arising from brownfield credits received by Fareri on the Kensington project. These proceedings are simply a continuation of Fareri's efforts to complicate Mr. Carnicelli's pursuit of justice. The Court should note that this criminal counsel, for Fareri and Sheskier, was paid for by Kensington.

### *The Connecticut Litigation*

On October 9, 2020 Mr. Carnicelli commenced the action No. FST-CV-20-6048778-S (the "Connecticut Civil Action"), in Superior Court in and for the Judicial District of State of Connecticut Superior Court of Stamford/Norwalk at Stamford (the "Connecticut Court") against

---
[1] Mr. Carnicelli asserts the right to 49% of the profits in the other projects as well as in Kensington, and it is for that, among other reasons, that Mr. Carnicelli asserts a $297,000,000 claim against Development.

Fareri, his daughter and Administrator Julie Fareri, and his CFO, Sheskier (the "CT Defendants"). Mr. Carnicelli brought both direct and derivative claims including for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, statutory theft, conversion, and unfair trade practices based on misappropriation of corporate opportunities and assets and other corporate wrongdoing. These claims arose from Development's projects for Fareri's entities other than Kensington, where Fareri had either intentionally underpaid Development or transferred projects away to other Fareri entities, in which Mr. Carnicelli had no ownership interest, solely as to deprive Debtor, Development, and derivatively, Mr. Carnicelli, of hundreds of millions in profits. The Connecticut Court understood these issues, denying Fareri's motion to dismiss, denying his motion to stay, denying his motion to compel arbitration, and limiting his other procedural tactics. On the eve of a due date to produce discovery and a hearing on other relief, Fareri commenced this case and took cover behind the protections of this Court, including the automatic stay. After the Development filing, on June 10, 2021, Howard Magaliff, Chapter 7 Trustee (the "Development Trustee") removed the action to the United States District Court, District of Connecticut, for referral to the United States Bankruptcy Court, Southern District of New York (defined as the "Adversary Proceeding"), which transfer occurred August 2, 2021. Despite the fact that this Adversary Proceeding has been pending for over a year, we anticipate seeking a pre-motion conference under LBR 7007-1(b) to discuss discovery delays.

### *The Kensington Proceeding*

Mr. Carnicelli refers the Court to the Examiner's Report, Kensington Docket ECF No. 106, for additional background on the Kensington bankruptcy proceeding. Mr. Carnicelli moved, early in the Kensington Case, for the appointment of a trustee pursuant to 11 U.S.C. §1104 (the "Trustee Motion"). The Trustee Motion was resolved with the consensual appointment of Fred Stevens as Examiner to investigate suspect transfers and transactions involving the Kensington and Development debtors, Fareri, Sheskier, and approximately 75 entities under their control. The Examiner thereafter filed his Report, detailing wholesale random transfers of assets to related entities, without consideration, and the endeavor to render the Kensington and Development estates insolvent and unable to pay their debts as they matured, including the debt to Development and derivatively and directly to Mr. Carnicelli.

### *The Insider Claims*

Of the 15 claims filed in the Development case, one was filed by the New York State taxing authority (for $2287.70), one by the IRS (for $0, as amended) and one by Westchester Stucco (for $151,888.01) . The remaining claims, in the aggregate amount of $309,476,288.52, were filed by Mr. Carnicelli and insider Fareri-controlled entities[2] (the "Insider Claims" or "Fareri Entities"). All of the Proofs of Claim for the Insider Claims were completed and signed by Fareri. It is

---

[2] Gateway Kensington LLC, Greenwich Premier Services Co., 2 Dearfield Drive LLC, John Fareri, 415 GA Acquisition LLC, 1162 East Putnam LLC, Old Track Properties LLC, 3030 Westchester Realty LLC, The Steamboat Property LLC, Goshen Plaza LLC and Westchester Electrical Systems Corp.

obvious, then, that the only interested parties are dueling shareholder constituencies, Mr. Carnicelli on one hand and Fareri and the Fareri Entities on the other.

Mr. Carnicelli has requested that the Development Trustee file objection to the Insider Claims. The Insider Claims, which in aggregate exceed $10,000,000, are detailed on the attached chart. Documents ordered to be produced by the Connecticut Court demonstrate that these supposed liabilities were not recorded on Development's books and records prior to Development's filing under Chapter 7, and it is clear that they were falsely manufactured in an effort to materially dilute Mr. Carnicelli's recovery of funds derived from the confirmation of the Kensington Plan. Indeed, in the Arbitration, on or about December 9, 2020, Fareri testified that "(t)here is no risk to Gateway Development." Yet somehow on the eve of the filing of this bankruptcy, over $10,000,000 of risk appeared out of nowhere, magically, as Insider Claims. We believe these claims should be valued at zero and have requested that the Development Trustee commence appropriate proceedings.

The Insider Claims should be rejected for multiple reasons, including, but not limited to, the following:

*First*, the Fareri Entities are collaterally estopped from maintaining the Insider Claims based on the findings of fact by the Panel in the Arbitration. The counterclaim that was withdrawn by Kensington in the Arbitration was premised on other projects at issue here, with the Insider Claims having the same "excess billing" allegations. These issues, and the computation of damages as found in the Arbitration, cannot be relitigated. *See Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 189-90 (1977); *see also Piller v. Princeton Realty Assocs*. LLC, 173 A.D.3d 1298, 1303 (App. Div. 3rd Dept. 2019) ("The doctrines of res judicata and collateral estoppel apply to arbitration awards."); A*.B. Med. Servs. PLLC v. N.Y. Cent. Mut. Fire Ins. Co.*, 12 Misc. 3d 500 (Civ. Ct. 2006).

At very least, the Award collaterally estops the reassertion of the Kensington Insider Claim. Kensington filed a claim against the Debtor for $828,397.23. This is essentially the same claim Kensington withdrew during the arbitration. Under well-established principles of res judicata and collateral estoppel, Kensington is precluded from pursuing the claim. *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration").

*Second*, Fareri has previously conceded that Development is owed money on the projects that are the subject of the Insider Claims, not the other way around. A document concerning these projects was admitted into evidence at the Arbitration (the "Discussion Document"), which is attached. The Discussion Document was prepared by Sheskier at Fareri's direction. It constitutes an admission that Development is owed monies on the same projects Fareri now claims that he is owed monies on, because the Discussion Document shows substantial monies as Development *receivables*, while the Insider Claims require a flow of monies in the opposite direction, now as Development *debts*.

| Job/Entity | Discussion Document (*Receivable*) | Unsecured Claim Per Proof of Claim (*Payable*) | Claim Register No. | Total Swing |
|---|---|---|---|---|
| Old Track Properties LLC | $ 634,181.00 | $ 8,810,665.16 | Claim 11 | $ 9,444,846.16 |
| 3030 Westchester Realty LLC | $ 511,032.00 | $ 62,475.51 | Claim 12 | $ 573,507.51 |
| 415 GA Acquisition LLC | $ 183,050.00 | $ 209,847.31 | Claim 8 | $ 392,987.31 |
| 1162 East Putnam LLC | $ 140,000.00 | $ 46,802.31 | Claim 9 | $ 186,802.31 |
| Goshen Plaza LLC | $ 46,500.00 | $ 33,994.05 | Claim 14 | $ 80,494.05 |
| **Total** | **$ 1,514,763.00** | **$ 9,163,784.34** | | **$ 10,678,633.34** |

Thus, judicial estoppel precludes Fareri from taking a position in the Development Case that is inconsistent with the position taken in the Arbitration, in the Discussion Document.

*Third*, while the change in direction of flow of monies is questionable in and of itself, it is even more so considering that at least 11 "investigations" were conducted internally by the Fareri organization, as well as by their retained experts, including FTI Consulting and the PKF O'Connor Davies accounting firm, before the "factual" basis for the Insider Claims was suddenly "discovered" by Fareri.

*Fourth*, at least some of these projects predate this case by five years. This not only is further evidence that the Insider Claims were a recent fabrication for strategic purposes, it also means that Development would be entitled to raise a laches defense against them.

*Fifth*, the voluntary payment doctrine would preclude the insiders from recovering amounts they had voluntarily paid over to Development.

*Sixth*, each of the Fareri Entities would have filed years of tax returns, which likely show these as costs incurred, and which likely reflect tax benefits for the entities based on those costs. Accordingly, there would be a tax estoppel, which (as in the Arbitration) would preclude Fareri from now contending that Development owes debts, or alternatively would preclude Fareri from amending the entities' tax returns to conform to his litigation position.

*Seventh*, with respect to the by far largest Insider Claim, Old Track, Fareri contends the basis of the claim is costs in excess of a firm fixed price contract. Sheskier, however, admitted there were unquantified change orders. In fact, discovery will demonstrate that the original contract did not include significant work that was requested by the owner and ultimately included in the

project's final product. This claim fails thus fails handily on the merits, in addition to the reasons noted above.

*Eighth*, the notion that Sheskier first 'found' the Old Track agreement just before the Development Case filing – after all of the internal and expert investigations mentioned above – 'find' a document, just as they did in the Arbitration, at the eleventh hour, in an attempt to disavow a prior litigation position. This claim, in all likelihood, is barred by the applicable six-year statute of limitations. In fact, the proof of claim confirms that at least part of the claim pre-dated 2015.

*Ninth,* any distribution to Fareri and related entities should be equitably subordinated pursuant to 11 U.S.C. §510(c) as a result of their conduct with reference to the Kensington and Development estates, as partially detailed in the Examiner's Report (Kensington Docket, ECF No. 106).

As demonstrated, there are numerous grounds to object to and/or seek subordination of the Insider Claims, and if the Development Trustee is disinclined to do so, Mr. Carnicelli requests such an opportunity.

### *The Adversary Proceeding Should Be Remanded*

On July 11, 2022, the CT Defendants filed a Statement Pursuant to Bankruptcy Rule 9027(e)(3) stating that they do not consent to core jurisdiction by this Court. This means that all the parties in the Adversary Proceeding do not wish to litigate these issues further in the Bankruptcy Court, and the Adversary Proceeding is ripe for remand.

In view of the recent confirmation of the Kensington Chapter 11 case and its promise of payment of 100%, with interest, of the claim filed in the Kensington Chapter 11 by the Development Trustee, there is no further bankruptcy-related business in connection with the Adversary Proceeding. Thus, Mr. Carnicelli intends to file a Motion to Remand this proceeding to the Connecticut Court. The costs and expenses of discovery and trial should not be borne by the Development estate and its non-insider creditors.

DAVIDOFF HUTCHER & CITRON LLP

July 29, 2022

Honorable Sean H. Lane
U.S. Bankruptcy Judge
Page -8-

     We thank the Court in advance for its consideration of these issues. If you have any questions, please do not hesitate to contact the undersigned.

                                                     Respectfully,

                                                   /s/ Robert L. Rattet

CC:    All counsel via ECF