Avery Samet
John W. Brewer
AMINI LLC
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jbrewer@aminillc.com
- and -
Leonard Benowich
BENOWICH LAW, LLP
1025 Westchester Avenue
White Plains, New York 10604
(914) 946-2400
leonard@benowichlaw.com
Attorneys for Defendants and
Counterclaim Plaintiff

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | . |
| THE GATEWAY DEVELOPMENT GROUP, INC., | Chapter 7 |
| | Case No. 21-22304-shl |
| Debtor. | Adv. Proc. No. 21-7093-shl |
| JAMES CARNICELLI, JR. and HOWARD P. MAGALIFF, Chapter 7 Trustee of The Gateway Development Group, Inc., | |
| Plaintiffs, | **OBJECTION OF DEFENDANTS TO PLAINTIFFS' MOTION TO REMAND OR ABSTAIN** |
| v. | |
| JOHN J. FARERI, JULIE FARERI and CHRISTOPHER SHESKIER, | Re: Dkt. 48 |
| Defendants. | |
| JOHN J. FARERI, | |
| Counterclaim Plaintiff, | |
| v. | |
| JAMES CARNICELLI, JR., | |
| Counterclaim Defendant. | |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ........................................................................................................................... 1

PROCEDURAL HISTORY AND RELATED BACKGROUND .................................................. 4

ARGUMENT ................................................................................................................................. 10

I.     THE MOTION IS UNTIMELY ....................................................................................... 10

II.    THE 9027(e)(3) STATEMENT IS A RED HERRING.................................................... 14

III.   EVEN BEYOND PLAINTIFFS' UNJUSTIFIED DELAY, THE EQUITABLE REMAND FACTORS FAVOR DENIAL OF THE MOTION ........................................ 17

IV.   MANDATORY ABSTENTION IS UNAVAILABLE ................................................... 20

V.    PERMISSIVE ABSTENTION IS UNAVAILABLE....................................................... 22

CONCLUSION............................................................................................................................... 23

**Cases**

*In re Adelphia Commc'ns Corp.*,
285 B.R. 127 (Bankr. S.D.N.Y. 2002) ........................................................................18

*AHT Corp. v. Bioshield Techs.*,
265 B.R. 379 (Bankr. S.D.N.Y. 2001) ..........................................................12, 21, 22

*In re Balco Equities Ltd., Inc.*,
323 B.R. 85 (Bankr. S.D.N.Y. 2005) ..........................................................................21

*In re BearingPoint, Inc.*,
453 B.R. 486 (Bankr. S.D.N.Y. 2011) ........................................................................15

*Blackacre Bridge Capital, LLC v. Korff* (*In re River Ctr. Holdings, LLC*),
288 B.R. 59 (Bankr. S.D.N.Y. 2003) ..........................................................................19

*CAMOFI Master LCD v. U.S. Coal Corp.*,
527 B.R. 138 (Bankr. S.D.N.Y. 2015) ..........................................................17, 18, 19

*Cavanaugh v. Geballe*,
28 F.4th 428 (2d Cir. 2022) .......................................................................................10

*Colorado River Water Conserv. Dist. v. United States*,
424 U.S. 800 (1976) ..............................................................................................10, 23

*Matter of Consolidated Bancshares, Inc.*,
785 F.2d 1249 (5th Cir. 1986) .....................................................................................5

*Dittmer v. County of Suffolk*,
146 F3d 113 (2d Cir. 1998) .........................................................................................23

*In re Eight-115 Associates, LLC*,
626 B.R. 383 (Bankr. S.D.N.Y. 2021) ........................................................................14

*Greiner v. Columbia Gas Transmission Corp.*,
41 F. Supp. 2d 625 (S.D. W. Va. 1999) ................................................................13, 20

*Hart v. Bello*,
No. 11-cv-67, 2011 WL 1584577 (S.D.N.Y. April 27, 2011) ................................17

*Joremi Enters. Inc. v. Herkowitz* (*In re New 118th LLC*),
396 B.R. 885 (Bankr. S.D.N.Y. 2008) ..............................................................11, 14

*Mt. McKinley Ins. Co. v. Corning Inc.*,
    399 F.3d 436 (2d Cir. 2005)...................................................................21

*New Orleans Pub. Serv. v. Council of New Orleans*,
    491 U.S. 350 (1989)........................................................................23

*In re New York City Off-Track Betting Corp.*,
    434 B.R. 131 (Bankr. S.D.N.Y. 2010)..................................................23

*In re Pixius Communications, LLC*,
    No. 19-ap-5110, 2020 WL 3813237 (Bankr. D. Kan. June 11, 2020)....................11

*Residential Funding Co., LLC v. UBS Real Estate Secs., Inc.* (*In re Residential Capital, LLC*),
    515 B.R. 52 (Bankr. S.D.N.Y. 2014)....................................................22

*In re Rubenstein*,
    No. 09-ap-2056, 2010 WL 3765952 (Bankr. D. Conn. Sept. 20, 2010),.................18

*Security Farms v. Int'l Broth. Of Teamsters, Chauffers, Warehousemen & Helpers*,
    124 F.3d 999 (9th Cir. 1997) ...........................................................20

*In re Waugh*,
    165 B.R. 450 (Bankr. E.D. Ark. 1994) .................................................21

*Wellness Int'l Network, Ltd. v. Shariff*,
    575 U.S. 665 (2015).......................................................................16

**Statutes and Rules**

11 U.S.C. § 323.................................................................................5

28 U.S.C. § 1334.................................................................1, 10, 11, 22

28 U.S.C. § 1452...............................................................1, 4, 10, 11

28 U.S.C. § 157.................................................................................6

Fed. R. Civ. P. 41.............................................................................1

Fed. R. Bankr. P. 9027.......................................................3, 7, 12, 14, 15, 16

Fed. R. Bankr. P. 9033.......................................................................16

Defendants respectfully submit this Objection to Plaintiffs' motion (Dkt. 48) ("Motion") to remand or abstain under 28 U.S.C. §§ 1334(c) and 1452(b).

## INTRODUCTION

1.       This Motion presents the extraordinary circumstance of Plaintiffs seeking to abandon this federal forum they chose, and in which they have engaged in significant and substantive litigation for well over a year, because they have now apparently decided that their tactical advantage is best served by picking up their claims and going back to Connecticut state court. The law does not permit such blatant "round-trip" forum shopping.

2.       This action should continue to be litigated in this Court, as it has been over the past year, pursuant to the proposed case management plan agreed to by all of the parties. It is unfair and prejudicial to the Defendants to remand the case after the multiple rulings by this Court, the multiple amendments of the pleadings by the Plaintiffs, and the discovery conducted in this Court under the federal rules. Doing so would only cause further substantial delay, uncertainty and mischief.

3.       The Gateway Development Group, Inc. (the "Debtor") is owned 51% by Defendant Mr. Fareri and 49% by Plaintiff Mr. Carnicelli. Fareri was the Chairman and Carnicelli was the President. In 2019 disputes arose between them and Fareri effectively closed the Debtor. Carnicelli commenced an action asserting both direct and derivative claims against Fareri and the other Defendants in Connecticut state court. In June 2021, upon commencement of this bankruptcy, the Trustee removed the action here. The Trustee explained that the claims would significantly affect the administration of the estate, involve the allowance or disallowance of claims against the estate, plus counterclaims against the estate, and the adjustments of debtor-creditor-equity relationships. Carnicelli initially fought that removal, sought remand and moved to dismiss the entire bankruptcy case.

1

4. Since then, this Court has held numerous hearings and issued numerous rulings construing Plaintiffs' claims. The parties, including both Plaintiffs, have affirmatively and repeatedly sought this Court's intervention: in addition to his motion to dismiss the bankruptcy, which Carnicelli withdrew after a hearing at which the Court told him he was likely to lose, this Court has ruled on two motions to dismiss and a motion to amend. In May 2022, Carnicelli filed a motion to dismiss Fareri's counterclaim against him, which Fareri opposed. This Court has also presided over the companion Chapter 11 bankruptcy case of Gateway Kensington, LLC ("Kensington"), which plays a large role in the Second Amended Complaint asserted by Plaintiffs. In July 2022, the parties all agreed to a discovery and case management plan which they jointly submitted to this Court, pursuant to which fact discovery would end in December.

5. Fundamentally, the parties dispute who can assert which claims against whom: Carnicelli has repeatedly tried to control the breach of fiduciary duty claims against the Defendants, as has the Trustee; after rulings by this Court, Carnicelli also filed those same claims as a proof of claim against the Estate. Fareri's related entities have filed claims against the Estate arising from Carnicelli's prepetition control of the Debtor; and Carnicelli, as aforementioned creditor, objects to those claims and asserts that the Fareri claims are further evidence of damages in this adversary proceeding. This is why the Trustee removed the case initially and is also why both Carnicelli and the Trustee asserted that their claims are core.

6. In August 2022, Carnicelli commenced a second state court action against the Defendants in which he asserted the Trustee's fiduciary duty claims as his own direct claims, despite this Court's previous ruling holding that he could not do so. After the Defendants removed that second action to federal court in order to bring it here, Carnicelli voluntarily withdrew the

action without prejudice and filed the instant motion. Defendants believe that this Court's prior rulings bar Carnicelli from asserting such claims.

7. The sole asserted basis for Plaintiffs' Motion is Defendants' Rule 9027(e)(3) statement declining to consent to entry of final orders or judgment by the Bankruptcy Court. Defendants filed that statement on July 11, 2022 pursuant to the scheduling order that had been agreed to by all parties. Under Supreme Court precedent and the Bankruptcy Rules, Defendants are entitled to an extra layer of judicial review before any adverse judgment may be entered against them. The exercise of that right has nothing to do with the Bankruptcy Court's jurisdiction and nothing to do with the further litigation of this case in the Bankruptcy Court. We believe this ground for remand is pretextual, a way to gain substantial delay or some unarticulated litigation advantage by transferring the case out of the forum in which it is and has been proceeding. Indeed, nothing in the Motion explains why this case should go to any other court from any equitable perspective.

8. As discussed below, the Motion is untimely because it was filed after the parties repeatedly sought substantive relief from this Court: the Trustee affirmatively removed the action to this Court and chose this forum to file his initial claims; Carnicelli withdrew his motions to remand and dismiss after oral argument before this Court on the latter; both Plaintiffs filed two amended complaints after multiple rulings by this Court dismissing, construing and allowing the amendment of various claims; Carnicelli moved to dismiss Mr. Fareri's counterclaims; and the parties' have proceeded under the federal discovery rules pursuant to the agreed plan which the parties' jointly submitted to this Court in July. Even if the Motion were timely, the equitable factors properly considered on this Motion do not support equitable remand.

9.      Finally, even if the Motion were not untimely, mandatory abstention is unavailable because there is no state law action to abstain in favor of, given the Trustee's removal of the original state court action in June 2021. Thus, abstention would simply result in de facto dismissal of this action. For all of these reasons, this Court should deny the Motion.

## PROCEDURAL HISTORY AND RELATED BACKGROUND

10.      The Trustee is the Chapter 7 Trustee of the Debtor, which filed for bankruptcy in this District on May 25, 2021. (Case No. 21-22304, Dkt. 1.) At the time the Debtor was a named defendant in this action, then pending in Connecticut state court. On June 10, 2021, the Trustee removed the action to the U.S. District Court for the District of Connecticut (Dkt. 1-1), and a few days later moved to transfer the case to this Court (Dkt. 1-8). The Trustee asserted:

> Resolution of these and the other claims and causes of action asserted in the Civil Action will significantly affect the administration of the estate and would involve the allowance or disallowance of the claims against the estate, counterclaims by the estate, attempts to exercise control of or obtain property of the estate, and proceedings affecting the liquidation of assets of the estate and the adjustment of debtor-creditor and equity security holder relationships of the Debtor's estate. The Trustee consents to the entry of final orders or judgments by the Bankruptcy Court.

(Dkt. 1-1, ¶8). Defendants did not oppose the removal or transfer.

11.      Almost immediately, Carnicelli moved in this Court to dismiss the bankruptcy case as filed in bad faith and moved in the Connecticut federal court to remand the action to state court under 28 U.S.C. § 1452(b); he also objected to the Trustee's transfer motion. (Dkt. 1-13 and 1-14.) Carnicelli's brief accompanying his remand motion informally sought abstention as well. (Dkt. 1-15, at 13.)

12.      On July 12, 2021, this Court held a hearing on Carnicelli's motion to dismiss the chapter 7 case and indicated that it would be denied: "I have a considerable degree of skepticism with respect to the motion to dismiss, given that we're in a Chapter 7 case with a trustee and many

creditors. [T]he 'bad faith' case law under 707(a) for a corporate debtor is very limited in its applicability. And that's particularly so with respect to someone who's appearing on a derivative basis, or whose claim is on a derivative basis. So you're certainly free to pursue the motion, but I'm giving you a heads-up that, at least based on the papers, it doesn't appear like a winner for me". (July 21, 2021 Hr'g Tr. at 28:1-16, annexed as Exh. 1 to the Declaration of Avery Samet dated September 30, 2022 ("Samet Decl.").)

13. Following the hearing, Carnicelli moved to withdraw all of his pending motions stating, "[a]fter good faith discussions with" the Trustee, he had (i) moved to withdraw his remand motion, (ii) moved to withdraw his objection to transfer from the District of Connecticut to this Court, and (iii) moved to withdraw his motion to dismiss the Debtor's chapter 7 case. (Dkt. 1-17.) The case was thus subsequently transferred to this Court (Dkt. 1-19), pursuant to the joint agreement of the Trustee and Carnicelli, the same parties who now wish to undo that transfer and belatedly send the case back to the state court from which the Trustee had removed it.

14. The bankruptcy filing had an immediate effect on the case even before removal. Pre-bankruptcy, Carnicelli had been pursuing not only his individual claims, as an employee and shareholder of the Debtor. He was also pursuing derivative claims against the Defendants on behalf of the Debtor. But once the chapter 7 case was filed and the Trustee was appointed, those causes of action became assets of the Debtor's bankruptcy estate, controlled exclusively by the Trustee as a matter of federal law. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253-54 (5th Cir. 1986) ("If an action belongs to the corporation … then the action becomes property of the estate once the bankruptcy petition is filed"); *see also* 11 U.S.C. § 323 ("The trustee … is the representative of the estate [and] has capacity to sue and be sued").

15.    On August 26, 2021, Carnicelli filed a proof of claim against the Debtor's estate asserting $300 million in damages arising from the same claims as he had initially filed against the Defendants.  (Samet Decl. Exh. 2.)  Somewhat confusingly, Carnicelli has taken the position in his initial disclosures (*Id.* Exh. 3) that his damages in this action against the Defendants constitute the same damages as sought in his proof of claim against the estate.

16.    On December 7, 2021, the Trustee and Carnicelli jointly filed an Amended Complaint (Dkt. 10), in which Carnicelli asserted his purported individual claims against only Fareri, and the Trustee asserted the Debtor's claims against all three Defendants.  Both Plaintiffs asserted that their claims were core: "The claims are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A) and (O), or in the alternative as to the claims of Mr. Carnicelli, are related to the Company's bankruptcy case pursuant to 28 U.S.C. §157(c)(1)." (Dkt. 24, ¶12).

17.    Fareri promptly moved to dismiss Carnicelli's claims against him (Dkt. 11), arguing among other things that they included disguised derivative claims that could only be asserted by the Trustee.

18.    In his oral decision at the hearing on Fareri's motion, Judge Drain dismissed several of Carnicelli's purported individual claims on the ground that, as Fareri urged, they sought to assert claims that belonged to the Debtor and which he was forced to concede could only be prosecuted by his co-Plaintiff, the Trustee.  (Dkt. 17 (transcript), at 38 (Carnicelli's claim "for failure to maintain financial records is a derivative one"), 41 ("claim should therefore be viewed as a derivative claim and not a direct claim"), ibid. (claims for breach of specific section of agreement "is one that only the corporation would hold").  The Court then entered an order (Dkt. 16) dismissing one of the four causes of action Carnicelli had alleged in the Amended Complaint against Fareri and dismissing two of the others in part, without prejudice to seek leave to amend.

19.     Carnicelli then filed a motion for leave to file a Second Amended Complaint. (Dkt. 18.)  Fareri objected to the motion in part (Dkt. 21), and the Court granted the motion only in part (Dkt. 23), refusing to allow a portion of a tortious interference theory that Carnicelli had sought to add.

20.     Both Plaintiffs then filed their joint Second Amended Complaint (Dkt. 24), as limited by the Court's decision, and Defendants answered (Dkt. 26) with Fareri asserting a contribution counterclaim against Carnicelli arising from the Trustee's claims against him. Carnicelli filed a motion to dismiss Fareri's counterclaim (Dkt. 30) and Fareri filed an objection to that motion.  (Dkt. 35.)

21.     On May 9, 2022, Trustee's counsel sent Defendants' counsel a proposed scheduling order, under which Defendants' Rule 9027(e)(3) statement would be due on May 16, 2022.  (Samet Decl. Exh. 4.)

22.     The parties then agreed to mediate their dispute before Judge Drain (Dkt. 31); however, the mediation session, held June 6, 2022, did not yield a settlement.

23.     After failure of the mediation process, the draft scheduling order proposed by Trustee's counsel in May was edited with revised dates, including a July 11, 2022 deadline for Defendants' Rule 9027(e)(3) statement.

24.     Consistent with the proposed schedule, Defendants filed their Rule 9027(e)(3) statement on July 11, 2022, in which they exercised their right not to consent to this Court entering final judgments in non-core matters.  (Dkt. 36.)

25.     On July 18, 2022, Carnicelli submitted the proposed scheduling order to the Court, under cover of an email representing that it "has been reviewed and approved by all parties." (Samet Decl. Exh. 5.)

26.     Although the Court has not yet entered the proposed scheduling order, the parties have been actively litigating consistent with the dates therein and according to the Federal Rules applicable in this Court:

(a)  The parties conducted their Rule 26(f) conference on June 23rd;

(b)  The parties exchanged their Rule 26(a) disclosures on July 11;

(c)  The parties have both served and answered Rule 34 document requests, and have made substantial productions to each other;[1]

27.     In addition to party discovery Plaintiffs have made extensive use of the interstate subpoena power afforded them under Rule 45.  Carnicelli has served eleven subpoenas on nonparties, including five subpoenas in New York State (i.e., outside of Connecticut).  Those parties have all responded under the Federal discovery rules.  Carnicelli served one of those subpoenas on Fred Stevens, Esq., the Court-appointed examiner in the affiliated Kensington bankruptcy case.  (Samet Decl. Exh. 6).  Defendants have objected to that subpoena arguing that federal bankruptcy law provides that court-appointed bankruptcy examiners "should be immune from outside discovery requests," given their status as quasi-judicial officers and the fiduciary nature of their role.  (*Id.* Exh. 7.)

28.     The parties have exchanged numerous discovery letters in an attempt resolve discovery disputes, including: (i) the extent of the Trustee's privilege under bankruptcy law; (ii) whether discovery can take place into a federal bankruptcy examiner; (iii) the effect of the confirmed Chapter 11 plan in the companion Kensington case; (iv) the format and process for document production of a debtor's documents under Rule 34; and (v) the sufficiency of the parties'

---

[1] Defendants produced documents to the Trustee at the outset of the case and made further productions on September 2 and 9, 2022, Carnicelli made productions on September 12 and 22, 2022 and the Trustee made his production on September 22, 2022.

objection under Rule 34.  On September 12, 2022, Carnicelli wrote to this Court complaining about Defendants' productions and contending discovery has not proceeded fast enough (Dkt. 50); and on September 28, 2022, counsel for the parties met-and-conferred regarding various discovery matters.[2]

29.     On July 29, 2022, Carnicelli wrote to the Court (Dkt. 40) explaining that the claims—his claims and those of the Trustee—in this adversary proceeding were intertwined with the proofs of claim filed against the Debtor by him and several entities controlled by Fareri. Nevertheless, and for the first time, Carnicelli indicated at the very end of that letter that he intended to move to remand.  The Court held a preliminary conference on the letter on August 2, 2022.

30.     On August 5, 2022, only three days later, Carnicelli served a new action in Connecticut state court (the "New Carnicelli Action") against the Defendants, in which he purported to assert only individual claims—not the Trustee's derivative claims.  But, in fact, the claims Carnicelli asserted in the New Carnicelli Action were claims that this Court had previously held belonged to, and could only be brought by the Trustee, as derivative claims.  (Samet Decl. Exh. 8, notice of removal attaching complaint).  The complaint in the New Carnicelli Action asserted one breach of fiduciary duty claim against Fareri, and aiding and abetting claims against the other two Defendants, in each case based on the same conduct as the fiduciary duty and aiding and abetting claims asserted by the Trustee in this action. (*Id.*)

31.     Defendants promptly removed the New Carnicelli Action to the U.S. District Court for the District of Connecticut on August 25, 2022.  (*Id.*)

---

[2] Those discussions are ongoing and we are hopeful that many if not all of them will be resolved by the parties.

32.     On August 30, 2022, the day before the present Motion was filed in this Court, Carnicelli filed a Fed. R. Civ. P. 41(a)(1)(A)(i) notice, dismissing the New Carnicelli Action without prejudice, thus purportedly reserving the right to refile it at a more tactically opportune time.  (Samet Decl. Exh. 9.)  This stratagem prevented Defendants from transferring the New Carnicelli Action to this Court and then promptly moving to dismiss it as a end-run around this Court's prior orders.

33.     On August 31, 2022, Plaintiffs filed this Motion.

## ARGUMENT

34.     No party has challenged this Court's subject matter jurisdiction over the case under 28 U.S.C. § 1334, as Plaintiffs have alleged.  (Dkt. 24, ¶12.)  Rather, Plaintiffs' attempt to escape from the forum they themselves chose more than a year ago as the proper venue for this litigation is based solely on the grounds of equitable remand and abstention.  But all abstention doctrines are exceptions to the fundamental principle that "Federal courts have a 'virtually unflagging obligation … to exercise the jurisdiction given to them.'"  *Cavanaugh v. Geballe*, 28 F.4th 428, 430 (2d Cir. 2022) (vacating lower court decision to abstain and quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

35.     Defendants oppose the Motion because this Court is the appropriate forum for resolution of the disputes between the parties hereto.  The parties are following the scheduling order submitted to this Court. According to that schedule, fact discovery will end on December 15, 2022. Remanding this case to a state court at this point will only add inevitable delay, uncertainty, and expense to this litigation.

## I.     THE MOTION IS UNTIMELY

36.     Plaintiffs move for both mandatory abstention under § 1334(c)(2) and equitable remand under § 1452(b).  As discussed below, abstention makes little sense in this context because

there is no pending state proceeding. Nevertheless, both abstention and equitable remand are subject to a requirement that they be sought timely, not a year into a case and not after choosing to proceed in federal court. *See* 28 U.S.C. § 1334(c)(2) ("Upon timely motion of a party…"); *see In re Pixius Communications, LLC*, No. 19-ap-5110, 2020 WL 3813237, at *6 n.14 (Bankr. D. Kan. June 11, 2020) ("Because a remand motion under § 1452(b) is based upon "any equitable ground," the timing of the remand motion may be a factor to be considered in determining whether remain is appropriate").

37.    Plaintiffs' conduct in this case compels the conclusion that abstention and remand are inappropriate. The Trustee initially removed this action from Connecticut state court; Carnicelli first opposed, then consented to removal; both Plaintiffs then joined together to file a joint Amended Complaint, and then, after Fareri's motion to dismiss, a joint Second Amended Complaint. (Dkt. 10, 24.)  Plaintiffs aggressively pushed the pace of discovery, a pace all parties have now agreed to in the proposed scheduling order, and they participated in mediation with Judge Drain. After that mediation failed to reach a settlement, Plaintiffs (led by Carnicelli) sought and found a pretext to disavow their prior consent to and insistence on this Court's jurisdiction.

38.    Courts in this district have taken a multi-factor approach to judging the timeliness of such a motion:

> The relevant considerations include (1) whether the movant moves as soon as possible after he or she should have learned the grounds for such a motion, … (2) whether the moving party has already invoked the substantive process of the federal court on a matter going to the merits of the complaint, and in particular, moved for abstention only after receiving an unfavorable outcome, … and (3) whether the granting of the motion would prejudice or delay the rights of others.

*Joremi Enters. Inc. v. Herkowitz* (*In re New 118th LLC*), 396 B.R. 885, 893 (Bankr. S.D.N.Y. 2008) (case citations and internal quotations omitted).

39.    All of these factors lead to the conclusion that the Motion is untimely. Plaintiffs point to Defendants' Rule 9027(e)(3) statement as the trigger for their Motion. But that statement itself was not untimely or delayed; it was filed consistent with the parties' agreed schedule. Plaintiffs' argument is nothing but a pretextual red herring and highlights the fact that both Plaintiffs insisted on and actively consented to this Court's jurisdiction for more than a year. The timing of Carnicelli's suggestion that he would seek remand (a suggestion apparently made even before he consulted with his co-plaintiff, the Trustee) demonstrates it is a knee-jerk effort at forum shopping, an attempt by Carnicelli to re-consider and rescind his consent to removal of this action to this Court over a year earlier.

40.    As to the second factor, as noted, both Plaintiffs affirmatively and substantively invoked this Court's jurisdiction: they have jointly filed not one but two complaints here. Indeed, the Trustee had not filed *any* claims against Defendants until after the Connecticut state court action was removed and transferred to this Court. As detailed above, Plaintiffs filed this Motion only after Carnicelli suffered multiple *unfavorable outcomes* in this Court: Judge Drain's first ruling dismissing substantial portions of his claims in the First Amended Complaint; and his second ruling dismissing a proposed new claim in Carnicelli's proposed Second Amended Complaint. *See AHT Corp. v. Bioshield Techs.*, 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001) ("It would make a mockery of the 'timely motion' requirement to permit defendants to litigate matters of substance on the merits in the bankruptcy court and, after receiving an adverse ruling, seek to transfer the litigation to a different venue").

41.    Finally, as to the third factor, after 15 months of active and substantive litigation in federal court, to grant such a belated Motion would "prejudice and delay" Defendants' rights. The delay that will be caused by starting all over again in a new court, partway through discovery and

with a number of pending discovery disputes unresolved (with all discovery requests and objections thereto having been drafted in accordance with federal procedural law rather than Connecticut procedural law), is obvious. *E.g. Greiner v. Columbia Gas Transmission Corp.*, 41 F. Supp. 2d 625, 627 n.4 (S.D. W. Va. 1999) (denying motion to remand on the ground of timeliness "[b]ecause the action has progressed substantially before the Court"). The parties are on track for fact discovery to be completed by December 15, 2022. There is no reasonable prospect that that schedule would or could hold if the case were to start again in Connecticut state court.

42. Moreover, Defendants will be prejudiced by being compelled to litigate in the state court issues as to which this Court clearly has superior competence, such as (i) which claims and remedies belong to the Trustee—especially given Carnicelli's repeated efforts to usurp and assert those claims and remedies in his individual capacity; (ii) ensuring that the issues litigated in the arbitration (Dkt. 19-4) precipitating the Kensington case are not re-litigated in this case; (iii) the disputes over allowance of the proofs of claims filed in the Debtor's bankruptcy case; (iv) regulating discovery into the examiner appointed by the Bankruptcy Court in the Kensington case; and (v) the effect that confirmation of a full-repay chapter 11 plan in that case has on the damages case herein.

43. Plaintiffs point to cases holding that a remand motion is timely if it was delayed by the pursuit of settlement negotiations. (Motion ¶54.) But that is not what happened here. The parties' mediation was held—and ended—on June 6, 2022, and the mediation process had only begun approximately one month earlier, after multiple rounds of substantive motion practice ruled on by Judge Drain. Carnicelli's first suggestion that he might seek remand came in his counsel's July 29, 2022 letter to this Court, even though he consulted with his co-Plaintiff, the Trustee, who advised this Court at the August 2, 2022 conference that he needed time to consider the suggestion.

44. By contrast, in *Joremi Enterprises*, 396 B.R. at 893-94, the party seeking remand had moved for it within a week after it became clear that their settlement negotiations would not succeed. Similarly, in *In re Eight-115 Associates, LLC*, 626 B.R. 383, 393 (Bankr. S.D.N.Y. 2021), another case in which the delay in filing the remand motion was attributed to settlement negotiations, the court stressed that the party seeking remand had (unlike Plaintiffs here) never filed any pleadings in the adversary proceeding.

45. Finally, we have not located any case in which a party that made a remand/abstention motion, voluntarily withdrew it, filed *three* amended complaints in response to multiple Court orders and hearings, and then moved to remand in the midst of fact discovery. Virtually all of the arguments raised now could have been raised in Carnicelli's June 2021 motion, which he voluntarily abandoned before it could be ruled on.

## II. THE 9027(e)(3) STATEMENT IS A RED HERRING

46. Plaintiffs claim that Defendants' Rule 9027(e)(3) statement declining to consent to entry of final judgment by the Bankruptcy Court was untimely (Motion ¶1 n.1, ¶21), and in his July 29, 2022 letter to this Court, Carnicelli's counsel Robert Rattet wrote that this "means that all of the parties in the Adversary Proceeding do not wish to litigate these issues further in the bankruptcy Court, and the Adversary Proceeding is ripe for remand" (Dkt. 40, at 7). This self-serving contention could not be further from the truth. At the time of his letter, Mr. Rattet spoke only for Mr. Carnicelli, and none of the other parties.

47. Indeed, Defendants timely filed their Rule 9027(e)(3) statement in accordance with the mutually-agreed discovery schedule.[3]

---

[3] Again, Plaintiffs submitted the agreed schedule to this Court for approval on July 18, 2022, after Defendants filed their statement on the agreed date.

48.     Significantly, Plaintiffs are not asking this Court to strike Defendants' Rule 9027(e)(3) statement as untimely and declare that Defendants have waived or lost their constitutional rights to request a trial and entry of final judgment by the by the District Court. This alone demonstrates that Plaintiff's Motion is opportunistic and entirely pretextual.

49.     The Motion suggests without explanation (at ¶¶2-3, 30) that Plaintiffs had assumed that Defendants would consent to entry of final judgment in the Bankruptcy Court, insinuating that they had somehow relied on that assumption in failing to seek remand or abstention earlier. But that makes little sense given the events which took place as discussed throughout, and in any event Plaintiffs agreed that Defendants would submit the statement by July 11, 2022. Neither Plaintiff filed their multiple complaints, motions or notices "conditionally."

50.     But the issue remains a red herring. Plaintiffs do not cite a single case in which the possibility of district court de novo review of a trial conducted in bankruptcy court was a factor favoring remand to state court. The one case they do cite (Motion ¶33) is *In re BearingPoint, Inc*., 453 B.R. 486, 488 (Bankr. S.D.N.Y. 2011), which did not involve a remand motion at all, but a completely different, and unusual, fact pattern. In that case, the trustee of a post-confirmation liquidating trust sought a modification of terms of the reorganization plan so that it had authority to bring specific contemplated (but not-yet-filed) lawsuits in state court when it believed it was in the interests of the liquidating trust to do so. In approving the request to modify the plan to give the trustee that discretion, Judge Gerber noted among other things the possible inefficiency of his inability to enter final judgment if the case were brought in bankruptcy court.

51.     By contrast, here the Trustee was the one who deliberately brought the case to this forum by removing from the state court over fourteen months before he changed his mind and joined with Carnicelli (who had likewise changed his mind) and filing this Motion. If the Trustee

had thought state court a more efficient or advantageous forum, he could simply have declined to remove the case in the first place.

52.     But in any event, it is no surprise Plaintiffs have not found a case in which remand was thought justified because one or more parties had refused to waive their constitutional right to have an Article III judge involved before final judgment was entered in a non-core bankruptcy dispute.  Rule 9027(e)(3) implements the balance recognized by the Supreme Court most recently in *Wellness Int'l Network, Ltd. v. Shariff*, 575 U.S. 665 (2015):  litigants have a right to have final judgments entered in non-core matters by an Article III judge, but can waive that right (either explicitly or implicitly) and consent to entry of final judgment by the bankruptcy court. Rule 9027(e)(3) provides for an orderly process that makes a clear record as to whether parties have or have not consented to waive that right.

53.     In this case, Defendants are happy for this Court to conduct the trial as well as preside over all pre-trial proceedings.  But they have thus far decided to retain their option, in the event of an adverse recommendation by this Court, to have the record reviewed by a district judge pursuant to the routine process provided for in Rule 9033.  It would be highly inequitable for this Court or any bankruptcy court to order equitable remand as a penalty for a party which had elected not to waive a right given to it by the Constitution, the Code, and the Rules.

54.     That said, this Court has previously addressed the issue of whether the possibility of two-tier review under Rule 9033 can be a factor in granting equitable remand in *CAMOFI Master LCD v. U.S. Coal Corp.*, 527 B.R. 138, 144 (Bankr. S.D.N.Y. 2015).  In that case the parties seeking remand complained that proceeding to trial in bankruptcy court would deprive them of their right to a jury trial and this Court noted that, if appropriate, that concern could be

addressed at a later stage by transferring the case to district court for the actual trial, and was thus not a ground for remand to state court.

## III.  EVEN BEYOND PLAINTIFFS' UNJUSTIFIED DELAY, THE EQUITABLE REMAND FACTORS FAVOR DENIAL OF THE MOTION

55.     It is the Plaintiffs' burden, as the movants, to show that equitable remand is warranted. *CAMOFI*, 527 B.R. at 143.

56.     This Court in *CAMOFI*, 527 B.R. at 143, cites seven factors "commonly considered in the equitable remand analysis":

> (A) the effect on the efficient administration of the bankruptcy estate;
>
> (B) the extent to which issues of state law predominate;
>
> (C) the difficulty or unsettled nature of the applicable state law;
>
> (D) comity;
>
> (E) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> (F)  the existence of the right to a jury trial; and
>
> (G) prejudice to the involuntarily removed defendant(s).

57.     The Court went on to note that this list was "merely illustrative" and other factors were often also considered, such as the "duplicative and uneconomical use of judicial resources" and the "lessened possibility of inconsistent results."

58.     Plaintiffs have cited (Motion ¶25) *Hart v. Bello*, No. 11-cv-67, 2011 WL 1584577, at *5 (S.D.N.Y. April 27, 2011) for a list of twelve factors considered in equitable remand motions, with heavy overlap with the *CAMOFI* list, but also including, e.g. the likelihood of "forum shopping by one of the parties."

59.     Here, Plaintiffs' forum-shopping motivation is obvious.  They were the ones (by removal in the case of the Trustee and by voluntary withdrawal of the earlier remand motion by

Carnicelli) who chose this forum in the first place, but have now decided (in the wake of multiple rulings adverse to Carnicelli by Judge Drain) that they would prefer to be somewhere else. In *In re Rubenstein*, No. 09-ap-2056, 2010 WL 3765952, at *5 (Bankr. D. Conn. Sept. 20, 2010), the court denied a motion seeking both permissive abstention and equitable remand, noting that "[t]he fact that the Plaintiff is the party who sought to litigate the issue … in this Court, and now seeks to have that very issue submitted to a different court, suggests a belated attempt at forum-shopping and weighs heavily against the Court exercising its discretion to abstain." The same is true here.

60.     That the Plaintiffs' alleged claims arise under substantive Connecticut law (Motion ¶27) is true, but "this is a 'modest factor,' as bankruptcy judges 'address matters of state law on a regular basis.'" *CAMOFI*, 527 B.R. at 145 (quoting *In re Adelphia Commc'ns Corp.*, 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002)). Moreover, as already noted, the key issue of which state-law claims may be brought by the Trustee on behalf of the Debtor rather than Carnicelli on behalf of himself is driven by the unique federal bankruptcy-law policy of giving the Trustee exclusive control of state law claims that could otherwise be asserted derivatively by individual shareholders such as Carnicelli. And additional bankruptcy law issues are lurking elsewhere in the case, such as whether or not the Plaintiffs' attempt to subpoena the examiner is legitimate and whether Carnicelli may end-run Judge Drain's prior rulings via the claims he asserted (and may seek to assert again in the future) in the New Carnicelli Action.

61.     Plaintiffs explicitly alleged in the Second Amended Complaint that the "Company Claims" brought by the Trustee were core claims (Dkt. 24, ¶12). Now that they seek a different result, they acknowledge (Motion ¶27) that the very same claims are non-core. Equity should not reward that approach.

62.     Moreover, while they cite cases that supported remand based on the state law at issue in those disputes being difficult or unsettled, they make no claim that the Connecticut law applicable to the claims in the Second Amended Complaint is difficult, unsettled, or otherwise outside this Court's ability to master, as indeed Judge Drain's prior substantive decisions interpreting Connecticut law in dismissing certain of Carnicelli's claims and denying in part his motion for leave to amend have shown.  This factor thus cuts against remand.

63.     As to comity, Plaintiffs again rely (Motion ¶29) on cases involving "uncharted" issues of state law, which are not claimed to be present here.  Moreover, Plaintiffs here are not themselves Connecticut residents, and as the Court noted in *CAMOFI*, 527 B.R. at 148, out-of-state plaintiffs are not well-positioned to insist on remand to the courts of a state where they do not reside.  In addition (*ibid*., citing *Blackacre Bridge Capital, LLC v. Korff* (*In re River Ctr. Holdings, LLC*), 288 B.R. 59, 70 (Bankr. S.D.N.Y. 2003)), "Comity is also not a material factor where a matter does not involve state public policy or the state's public interest."  Here, the underlying real estate development that gave rise to the Kensington bankruptcy and its various ramifications including this Debtor's bankruptcy and the adversary proceeding is located in New York, not Connecticut, and the Debtor is owned 51% by Connecticut resident Fareri but 49% by New York resident Carnicelli.  (Dkt. 24 (second amended complaint), ¶16.)

64.     Other factors recognized in the case law but not mentioned in the Motion cut against remand.  For example, "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case" cuts against remand, as shown by Carnicelli's counsel's own letter to the Court of July 29, 2022. (Dkt. 40.)   In that letter, Carnicelli made a number of contentions about "additional matters regarding the Adversary Proceeding" that were about the Debtor's underlying Chapter 7 case.  For example, Carnicelli claimed that the Chapter 7 case was an inappropriate (and

presumably bad-faith) filing, even though he had over a year previously withdrawn his motion to dismiss that case. (Id. at 1-2.) Carnicelli also claims that the Trustee should take action to disallow claims filed in the Debtor's Chapter 7 case by entities affiliated with Fareri. (Id. at 5-7.) Given Carnicelli's own position that all of these core issues in the Chapter 7 case are inextricably entwined with the claims in this adversary proceeding, this Court should take him at his word. This factor cuts against remand.

65. Plaintiffs do not seek a jury trial and neither do Defendants, so that factor cuts against remand.

66. As to "prejudice to the involuntarily-removed defendants," Defendants did not choose this forum, but as set forth above believe it is the most appropriate forum for this dispute and will now be prejudiced as also described above if the case is sent off to a different forum mid-stream.

67. Concerns about "duplicative and uneconomical use of judicial resources" and the "lessened possibility of inconsistent results" also cut against remand here, especially given Carnicelli's overt desire to use the Connecticut state courts to revive the claims that Judge Drain previously dismissed.

68. For all of these reasons, heightened by the Plaintiffs' unjustified delay in bringing the Motion and their obvious forum-shopping, remand would be inequitable and inappropriate. *See also AHT*, 265 B.R. at 384 (quoted above).

## IV. MANDATORY ABSTENTION IS UNAVAILABLE

69. At the outset, "abstention is inappropriate where, as here, the only state civil proceeding was removed to federal court. Consequently, there is no parallel state proceeding." *Greiner*, 41 F. Supp. 2d at 627 n.4. *See also Security Farms v. Int'l Broth. Of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1010 n.10 (9th Cir. 1997) ("If [the] Court

were to abstain, nothing would happen because there is only one lawsuit. What movant really seeks is remand ... back to State Court").

70. Plaintiffs cite *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005) (Motion ¶50) for the proposition that abstention is available in removed actions. However, in *Mt. McKinley*, Corning's insurers had filed a declaratory judgment action in New York County Supreme Court. *Id.* at 440. Corning removed the state court action, and the next day commenced an adversary proceeding against them. *Id.* There, abstention from consideration of the adversary proceeding would permit the removed state court action to proceed. Here, in contrast, abstention would simply result in de facto dismissal without prejudice.

71. Moreover, as Plaintiffs concede (Motion ¶53), the timeliness of a motion for abstention is an essential and statutorily-required element. As shown above, the Motion was grossly untimely, and that factor alone makes mandatory abstention unavailable. *AHT*, 265 B.R. at 384; *Greiner*, 41 F. Supp. 2d at 627 n.4 (quoted above); *see also In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 93 (Bankr. S.D.N.Y. 2005) (finding motion to abstain untimely when filed six months after creditor was made party to state court action); *In re Waugh*, 165 B.R. 450, 452 (Bankr. E.D. Ark. 1994) (denying motion to abstain as untimely when filed nearly four months after complaint). Both Plaintiffs affirmatively chose to file two amended complaints in this Court (Dkt. 10, 24), the latter of which was answered six months ago (Dkt. 26), and in the interim Carnicelli filed also filed the removed-and-voluntarily-dismissed New Carnicelli Action. Plaintiffs selected this forum and cannot use abstention to evade the consequences of their own litigation decisions.

72. The pretextual ground for delay, namely the supposed assumption that Defendants would waive their right to post-trial review of this Court's proposed findings and conclusions by an Article III judge, has nothing to do with any of the mandatory abstention factors set forth in the

statute. And, again, the untimeliness is heightened by the fact that Carnicelli made and then withdrew a remand motion over a year before making the present Motion, while the Trustee, who chose this forum, used this forum to file last December the affirmative claims against the Defendants he now claims are subject to mandatory abstention, which if true would mean he ought not to have brought them in this Court to start with. *AHT Corp.*, 265 B.R. at 384 ("Section 1334(c) is subverted when it is employed as a litigation stratagem or tactic. The 'timely motion' requirement precludes a defendant from essaying litigation in the bankruptcy court and, after a setback, invoking mandatory abstention under Section 1334(c)(2)").

73.     As to the other factors, however, Plaintiffs again devote considerable space (Motion ¶¶36-40) to arguing that their claims are all non-core, without acknowledging that they affirmatively alleged in the Second Amended Complaint (¶12) that at least some of their claims were core. They do not and cannot explain their change of position, which is obviously motivated by pure gamesmanship.

## V.     PERMISSIVE ABSTENTION IS UNAVAILABLE

74.     Plaintiffs, as movants, bear the burden of showing permissive abstention is appropriate. *See*, *e.g.*, *Residential Funding Co., LLC v. UBS Real Estate Secs., Inc.* (*In re Residential Capital, LLC*), 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014).

75.     Plaintiffs themselves concede (Motion ¶65) that the permissive abstention analysis is essentially identical to the equitable remand analysis, thus making the former doctrine practically meaningful only in cases that had not been previously removed from state court. In any event, equitable remand is not appropriate here for the reasons set forth at length above, and Plaintiffs offer no arguments as to why permissive abstention would or could be appropriate when equitable remand is not.

76.     Instead, Plaintiffs invoke various general abstention doctrines without even attempting to argue their applicability to the facts of this case.  Motion ¶¶61-62 (raising *Colorado River* abstention).  But in the very case they cite, *Colorado River*, 424 U.S. at 813-14 (quotations omitted), the Supreme Court emphasized that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that it was "never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court could entertain it."

77.     Moreover, *Colorado River* abstention is a technical doctrine, which requires as a precondition the existence of parallel lawsuits pending simultaneously in state and federal court.  *See, e.g.*, *Dittmer v. County of Suffolk*, 146 F3d 113, 117-18 (2d Cir. 1998).  There is no parallel action currently pending in state court, making the doctrine entirely irrelevant.

78.     Plaintiffs also raise (Motion ¶64) the now-largely-obsolete doctrine of so-called *Magnolia* abstention, but the case they cite, *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 148 (Bankr. S.D.N.Y. 2010) (a chapter 9 case) simply mentioned the *Magnolia* case in passing before abstaining in a dispute involving New York's regulation of gambling based on the entirely separate *Burford* abstention doctrine.  That doctrine is generally applicable only when a federal court is asked "to interfere with the proceedings or orders of state administrative agencies."  *New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 361 (1989).  That threshold factor is completely absent from this case, and Plaintiffs could not and do not invoke *Burford* abstention here.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: New York, New York          Respectfully submitted,
       September 30, 2022

                                   /s/ Avery Samet
                                   Avery Samet
                                   John W. Brewer
                                   AMINI LLC
                                   131 West 35th Street, 12th Floor
                                   New York, New York 10001
                                   (212) 490-4700
                                   asamet@aminillc.com
                                   jbrewer@aminillc.com
                                   - and -
                                   Leonard Benowich
                                   BENOWICH LAW, LLP
                                   1025 Westchester Avenue
                                   White Plains, New York 10604
                                   (914) 946-2400
                                   leonard@benowichlaw.com
                                   Attorneys for Defendants and
                                   Counterclaim Plaintiff