# EXHIBIT 8

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES CARNICELLI JR.,<br>                    Plaintiff,<br><br>v.<br><br>JOHN J. FARERI,<br>JULIENNE FARERI ZIELINSKI and<br>CHRISTOPHER SHESKIER,<br>                    Defendants. | Case No. 3:22-cv-1078<br><br><br><br>August 25, 2022 |

## <u>NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that the defendants John J. Fareri, Julienne Fareri Zielinski and Christopher Sheskier (together, the "Defendants"), pursuant to 28 U.S.C. § 1452(a) and Rule 9027, Fed. R. Bankr. P., hereby remove this action to the United States District Court for the District of Connecticut from the Connecticut Superior Court ("State Court"), where the action was initiated sub nom. *JAMES CARNICELLI, JR. v. JOHN J. FARERI, ET AL.*, Superior Court for the Judicial District of Stamford/Norwalk at Stamford, [Return Date 9/6/2022, docket number to be assigned upon return to Court], and is now pending (the "2022 Action"). In support, Defendants state:

1.      The 2022 Action appears to be nothing more than a replead of an action already removed and transferred and currently pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court").

2.      On October 9, 2020, the plaintiff James M. Carnicelli, Jr. ("Plaintiff"), both in his individual capacity and in a derivative capacity as sole minority shareholder, commenced an action (the "2020 Action') against Defendants and The Gateway Development Group, Inc.

("Development").  *Carnicelli v. Fareri*, X08 FST-CV20-6048778-S, 2021 WL 1235749, at *1 (Conn. Sup. Ct., Jud. Dist. of Stamford-Norwalk, Mar. 5, 2021).

3.      On May 25, 2021, Development filed a chapter 7 bankruptcy case in the U.S. Bankruptcy Court for the Southern District of New York, assigned Case No. 21-bk-22304 ("Chapter 7 Case").

4.      On June 10, 2021, Howard P. Magaliff, the Chapter 7 Trustee of Development, removed the 2020 Action pursuant to 28 U.S.C. § 1452(a) and Fed. R. Bankr. P. 9027, whereupon it was transferred to the Bankruptcy Court (Case No. 3:21-cv-792, ECF Doc. #25) and assigned Case No. 21-ap-7093.  At a hearing on a motion to dismiss, the Bankruptcy Court expressly held that (ECF Doc. #17, at 41:4-10) the breach of fiduciary duty claims are derivative (not direct) claims. The complaint was subsequently amended, and the second amended pleading (ECF Doc. #24) asserts fifteen causes of action against Defendants but acknowledges (see sixth, seventh, eighth, ninth and tenth causes of action, at ¶¶80-102) that the breach of fiduciary duty and aiding and abetting claims belong to the Trustee, not Mr. Carnicelli.

5.      Notwithstanding that, Mr. Carnicelli commenced a new, second case – the 2022 Action-- in State Court, asserting what would appear in essence to be the same breach of fiduciary duty claims as are asserted in the adversary proceeding, but directly rather than derivatively.  In accordance with Fed. R. Bankr. P. 9027(a)(1), all process and pleadings in the 2022 Action are attached hereto.

6.      The Bankruptcy Court has subject matter jurisdiction over said breach of fiduciary duty and aiding and abetting claims pursuant to 28 U.S.C. § 157(a) and 1334(b) and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).  Resolution of said claims would likely have a preclusive effect on similar claims asserted by the Trustee in the adversary proceeding, and thus

would have a clear and direct impact on estate property under 11 U.S.C. § 541.  Their resolution would also significantly affect estate administration and the allowance or disallowance of claims filed in the Chapter 7 Case.  It collaterally attacks decisions entered in the adversary proceeding and exposes the Defendants to simultaneous litigation over the same claims at the same time.

7.      Upon removal, Defendants intend to move to transfer the subject action to the Bankruptcy Court.

8.      In accordance with Fed. R. Bankr. P. 9027(a)(3), this Notice of Removal is being filed within 30 days after service of the complaint. The defendant Julienne Fareri Zielinski first learned of the summons and complaint (both dated August 5, 2022) in the 2022 Action on August 8, 2022 when copies were delivered to her residence.  The defendant Christopher Sheskier was served with the process on August 11, 2022.   As of August 24, 2022 the defendant John J. Fareri was not aware of having received service, but had been made aware of the summons and complaint after it had been delivered to Ms. Zielinski on August 8.

9.      In accordance with Fed. R. Bankr. P. 9027(a)(1), Defendants state that they do not consent to entry of final orders or judgment by the Bankruptcy Court on Mr. Carnicelli's breach of fiduciary duty and aiding and abetting claims.

NOW, THEREFORE, all parties to the State Court action *JAMES CARNICELLI, JR. v. JOHN J. FARERI, ET AL.*, Superior Court for the Judicial District of Stamford/Norwalk at Stamford, [Return Date 9/6/2022, docket number to be assigned upon return to Court]  are hereby notified that removal of said action and all claims and causes of action therein to the United States District Court for the District of Connecticut has been or will be affected upon the filing of a copy of this Notice of Removal with the Clerk of the State Court pursuant to Fed. R. Bankr. P. 9027(c); and the parties to said 2022 action shall proceed no further in the State Court unless and until the action is remanded.

Dated: New Haven, Connecticut
August 25, 2022

THE DEFENDANTS:
JOHN J. FARERI, JULIENNE FARERI
ZIELINSKI and CHRISTOPHER SHESKIER

By:   /s/James C. Graham
James C. Graham, (ct06064)
Neubert, Pepe & Monteith, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510
Tel: 203-821-2000
Fax: 203-821-2009
jgraham@npmlaw.com

Avery Samet
Amini LLC
131 West 35th Street
Ste 12th Floor
New York, NY 10001
212-490-4700
Email: asamet@aminillc.com

# ATTACHMENT

(All Process and Pleadings in Case Being Removed)

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-22
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on ADA accommodations, contact a court clerk or go to: *www.jud.ct.gov/ADA.* |
| --- |

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*



Instructions are on page 2.

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
| --- | --- | --- |
| 123 Hoyt Street, Stamford, CT 06905 | ( 203 ) 965 − 5297 | September 6, 2022 |

| ☒ Judicial District | G.A. | At *(City/Town)* | Case type code *(See list on page 2)* | |
| ☐ Housing Session   ☐ Number: | | Stamford | Major: C | Minor: 90 |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
| --- | --- |
| Pastore LLC, 4 High Ridge Park, Third Floor, Stamford, CT 06905 | 433711 |

| Telephone number | Signature of plaintiff *(if self-represented)* |
| --- | --- |
| ( 203 ) 658 − 8454 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)* |
| --- | --- |
| ☒ Yes   ☐ No | jpastore@pastore.net |

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
| --- | --- | --- |
| **First plaintiff** | Name:    James Carnicelli, Jr.<br>Address: 14 Dunham Road, Scarsdale, NY 10583 | P-01 |
| **Additional plaintiff** | Name:<br>Address: | P-02 |
| **First defendant** | Name:    John J. Fareri<br>Address: 559 Steamboat Road, Unit A-2 Greenwich, CT 06830-7185 | D-01 |
| **Additional defendant** | Name:    Julienne Fareri Zielinski<br>Address: 4 Cove Ridge Lane, Old Greenwich, CT 06870 | D-02 |
| **Additional defendant** | Name:    Christopher Sheskier<br>Address: One Greenwich Park South, Suite 350, Greenwich, CT 06831 | D-03 |
| **Additional defendant** | Name:<br>Address: | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 3 | ☐ Form JD-CV-2 attached for additional parties |
| --- | --- | --- |

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed *(Sign and select proper box)* | | Name of person signing |
| --- | --- | --- | --- |
| 08/05/2022 | | ☒ Commissioner of Superior Court<br>☐ Clerk | Joseph M. Pastore III, Esq. |

| If this summons is signed by a Clerk: | For Court Use Only |
| --- | --- |
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.<br>c. The court staff is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | A TRUE COPY<br>ATTEST<br>JOHN CORELLI<br>STATE MARSHAL<br>COUNTY OF FAIRFIELD |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
| --- | --- | --- | --- |

RETURN DATE: SEPTEMBER 6, 2022

| | | |
|---|---|---|
| JAMES CARNICELLI JR., | : | |
| | : | SUPERIOR COURT |
| Plaintiff, | : | |
| | : | JUDICIAL DISTRICT OF |
| vs. | : | |
| | : | STAMFORD/ NORWALK |
| JOHN J. FARERI, JULIENNE FARERI ZIELINSKI, | : | |
| and | : | AT STAMFORD |
| CHRISTOPHER SHESKIER, | : | |
| | : | AUGUST 5, 2022 |
| Defendants | | |

## COMPLAINT

For his complaint against Defendants John J. Fareri ("Mr. Fareri"), Julienne Fareri Zielinski ("Ms. Fareri"), Christopher Sheskier ("Mr. Sheskier") (collectively, the "Defendants"), Plaintiff James Carnicelli Jr. ("Plaintiff or "Mr. Carnicelli"), by and through his undersigned counsel, sets forth and alleges as follows:

## NATURE OF ACTION

1.     This is an action to hold Mr. Fareri, the majority shareholder of The Gateway Development Group, Inc. ("Development"), accountable for his wrongful actions toward Mr. Carnicelli, Development's minority shareholder, and to hold responsible Ms. Fareri and Mr. Sheskier for aiding and abetting Mr. Fareri's wrongful actions.

2.     Mr. Fareri is a real estate mogul. He is the majority (51%) shareholder of Development as well as the Chairman of its Board of Directors; he was thereby legally required to act in the best interests of both Development and its minority (49%) shareholder, Mr. Carnicelli. However, despite his legal obligations, Mr. Fareri wrongfully purported to terminated Mr.

1

Carnicelli from Development and diverted millions of dollars that should have been paid to Development to other entities he controls.

3.     When Mr. Carnicelli questioned Mr. Fareri's unlawful conduct, Mr. Fareri unilaterally suspended Development's operations and purported to terminate Mr. Carnicelli as President of Development. With the assistance of Ms. Fareri, Mr. Fareri transferred Development's assets and personnel to other entities he controlled. Mr. Fareri and Ms. Fareri also transferred Development's projects to those other entities, including a $1.2 billion development in Mount Pleasant, New York (the "North 80 Project").

4.     When Mr. Carnicelli prosecuted an arbitration derivatively on behalf of Development against Gateway Kensington LLC ("Kensington"), one of Mr. Fareri's entities, to recover the fees Development was owed, Mr. Fareri fought the claim, giving testimony that the arbitration panel (the "Panel") found to be "inaccurate at best, at the very least unpersuasive, and inconsistent with his Declaration."

5.     When the Panel awarded Development more than $14 million, Mr. Fareri caused Kensington to file for bankruptcy, thereby frustrating Development's ability to collect on the award and ultimately delaying Development's collection of the funds by years. And when Mr. Carnicelli filed an action derivatively on behalf of Development in this Court to hold Mr. Fareri accountable for his misconduct, Mr. Fareri caused Development to file a petition under Chapter 7 in the bankruptcy court (the "Development Bankruptcy").

6.     While Mr. Carnicelli has previously brought both direct and derivative claims in this Court for some of Mr. Fareri's wrongful conduct, those claims have been removed and transferred to the Southern District of New York Bankruptcy Court, where they were deemed the

property of the Development bankruptcy estate and controlled by the Development Chapter 7 trustee. Those claims did not seek remedies for Mr. Fareri's breach of his fiduciary duty to Mr. Carnicelli as a minority shareholder.

7.     Mr. Fareri, by suspending Development's operations, transferring its projects and ultimately filing for bankruptcy, not only destroyed the company in which Mr. Carnicelli had invested many years of his life and poured his heart and soul. He also intentionally eviscerated Mr. Carnicelli's ability to fight for Development's earned compensation and his rightful share of Development's profits.

8.     Mr. Fareri's actions preventing Mr. Carnicelli from collecting the award he won for Development, wresting control of the derivative claims from Mr. Carnicelli, terminating Development's operations, usurping its projects for his own companies and filing for bankruptcy on its behalf, stand in flagrant breach of the fiduciary duties he owes to the minority shareholder in a closely held corporation.

9.     Ms. Fareri, the Secretary of Development, and Mr. Sheskier, the self-proclaimed Chief Financial Officer of Development, were complicit in Mr. Fareri's misconduct and actively participated in misstating Development's financial records (including the schedules of liabilities it filed in bankruptcy court), improperly suspending Development's operations, and unlawfully diverting profits that should have been paid to Development to other entities owned controlled by Mr. Fareri.

10.     Mr. Carnicelli therefore brings this action to recover damages for injuries he suffered personally arising from Mr. Fareri's breach of his duty as majority shareholder to Mr. Carnicelli as minority shareholder.

## THE PARTIES

11.     Plaintiff James Carnicelli Jr. is an individual, the President of Development and a resident of the State of New York. Mr. Carnicelli is 49% shareholder of Development, a Connecticut corporation with a principal place of business at 2 Dearfield Drive, Greenwich, Connecticut.

12.     Defendant John J. Fareri is an individual, the Chairman of the Board of Directors of Development and a resident of Greenwich, Connecticut. Mr. Fareri is the 51% shareholder of Development.

13.     Defendant Julienne Fareri Zielinski is an individual and a resident of Old Greenwich, Connecticut. Ms. Fareri is the Secretary of Development and the registered agent of Development. On information and belief, Mr. Fareri and Ms. Fareri are father and daughter.

14.     Defendant Christopher Sheskier is an individual. On information and belief, he is a resident of the State of New York. Upon information and belief, Mr. Sheskier is a Certified Public Accountant. Mr. Sheskier is Mr. Fareri's "attorney in fact," with power to act on Mr. Fareri's behalf. He performed financial and accounting services for Development as well other entities controlled by Mr. Fareri, and he holds himself out to be the Chief Financial Officer of Development.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper with the Superior Court of the State of Connecticut because (1) Mr. Fareri is a resident of Connecticut, (2) Ms. Fareri is a resident of Connecticut, (3) all of the Defendants transacted business within Connecticut, availed themselves of the laws of Connecticut, and committed wrongful acts in Connecticut.

16.     Venue is proper in the Judicial District of Stamford/Norwalk at Stamford because

the offices of Development, where a majority of the alleged misconduct occurred, is located within the judicial district and two of the Defendants reside within the judicial district.

## BACKGROUND FACTS

### *Development's Structure and Purpose*

17.    Mr. Fareri is a well-established developer, real estate mogul, and the owner and manager of commercial, industrial, and residential real estate development operating primarily in Westchester County, New York; the Lower Hudson Valley; New York, and Fairfield County, Connecticut, although his development projects extend far beyond the tri-state area. Mr. Fareri is the principal, majority shareholder, and otherwise controls or owns approximately 70 other companies in addition to Development. To date, on information and belief, Mr. Fareri and these affiliated companies have developed, repositioned and/or currently own approximately $1.5 billion and 5 million square feet of real estate.

18.    Fred Stevens was appointed an Examiner in a bankruptcy proceeding in the Southern District of New York entitled *In re Gateway Kensington,* Case No. 21-22274 (RDD) related to the Bronxville Project, etc. (defined below). Mr. Stevens prepared a report, dated January 25, 2022 (the "Examiner's Report"), accepted by the Federal Bankruptcy judge in that case. It states:

> Mr. Fareri is a well-established and very successful developer, owner, and manager of commercial, industrial, and residential real estate, primarily in the Lower Hudson River Valley region of New York, and southwest Connecticut. Mr. Fareri is the principal or significant owner of over seventy (70) limited partnerships, limited liability companies, corporations and other special purpose entities involved in the ownership, development, investment, and/or management of real estate.

19.    Mr. Carnicelli is a real estate developer and construction manager who began working for Mr. Fareri's organization in or around 2004.

20.     Incorporated by Mr. Fareri in 2006 with Mr. Carnicelli's assistance, Development operated primarily as a construction management company that managed projects undertaken by many of Mr. Fareri's real estate development companies (the "Fareri Entities"). Mr. Fareri was initially Development's sole shareholder and Mr. Carnicelli was an employee.

21.     On January 14, 2014, in consideration of Mr. Carnicelli's efforts as a valued employee of Development, Mr. Fareri and Mr. Carnicelli entered into a Shareholders' Agreement (the "Shareholders' Agreement"), pursuant to which, Mr. Carnicelli was issued 98 of Development's 200 outstanding shares with Mr. Fareri retaining the remaining 102 shares. Accordingly, Mr. Carnicelli owns 49% of Development and Mr. Fareri owns 51% of Development, making Mr. Carnicelli the minority shareholder, and Mr. Fareri the majority shareholder.

22.     The Examiners Report states:

Development was owned exclusively by Mr. Fareri until in or around January 1, 2014, when Mr. Fareri agreed to have Development issue ninety-eight (98) shares to Mr. Carnicelli, resulting in the reduction of Mr. Fareri's interest from one-hundred to fifty-one (100 to 51%) percent, and Mr. Carnicelli receiving a forty-nine (49%) percent stake.

23.     The Shareholders' Agreement requires that "the operation of [Development] in accordance with this Agreement will be in the best interest of [Development] and its Shareholders and creditors."

24.     Section 4.1 of the Shareholders' Agreement lists three officers who "shall remain as such during the entire term of this Agreement": Mr. Fareri as Chairman of the Board of Directors, Mr. Carnicelli as President and Ms. Fareri as Secretary.

25.     The Shareholders' Agreement expressly provides that "no officer" - including Mr.

6

Carnicelli, the President - "shall be removed with or without cause, for any reason whatsoever, during the term of [the] Agreement."

26.     Pursuant to Section 5 of the Shareholders' Agreement, Mr. Carnicelli is entitled to receive an annual base salary of $250,000 per his role as President of Development.

27.     Mr. Fareri represented to Mr. Carnicelli, and Mr. Carnicelli understood, that Development would be paid the profits that were usual and customary in the construction industry for the projects Development undertook for other entities owned 100% by Mr. Fareri (the "Projects"). In turn, Mr. Carnicelli would receive shareholder distributions based on his 49% ownership position in Development. Indeed, a principal purpose of the Shareholders' Agreement was to recognize and reward Mr. Carnicelli for his valued service to the Company by providing a means by which he could share in the actual profits associated with the Projects.

28.     For every dollar owed to Development that Mr. Fareri diverted to a company of which he is the 100% owner, Mr. Fareri effectively doubled his money because he thereby avoids paying Mr. Carnicelli his 49% share.

29.     The Examiners Report states:

In Mr. Carnicelli's view, he was a true partner of Mr. Fareri's with respect to Development's construction management business and should have shared nearly equally with Mr. Fareri in any of Development's financial success. Mr. Carnicelli admits that he had no interest or partnership with Mr. Fareri in the other Fareri Companies, most of which involved discrete real estate development projects. Accordingly, while in Mr. Carnicelli's view he was entitled to his allocable portion of Development's profits, he had no entitlement to the profits of any other Fareri Companies, including Kensington. This put Mr. Carnicelli in the unique position of being almost singularly interested in Development's financial performance rather than the performance of the Fareri Companies as a whole. Indeed, Mr. Carnicelli appears to be the only person within Mr. Fareri's organization who was uniquely invested in the interests of just one Fareri Company as opposed to the collective. Consistent with this idea, Mr. Carnicelli contends that Development should have conducted its business with other Fareri Companies in the same way

7

that it would have if it were dealing with unrelated third parties, such that Development should have established and enforced competitive agreements with other Fareri Companies at market rates of return.

30.     As a result of the foregoing, Mr. Fareri had, and continues to have, an irreconcilable conflict of interest.

31.     Mr. Fareri took no steps to resolve the conflict of interest; instead, he capitalized on it.

32.     Mr. Carnicelli's responsibilities at Development are detailed in Section 5 of the Shareholders' Agreement and include providing leadership and business judgment on the financial and profitability aspects of various Projects.

33.     Section 5.2 of the Shareholders' Agreement provides that there would be no change in Mr. Carnicelli's salary or in his duties during the term of his employment.

34.     Pursuant to Section 16.8 of the Shareholders' Agreement, "[p]roper accounting records of all [Development] business shall be kept and shall remain open to inspection (or copying) by any of the Shareholders ... at all reasonable times."

### Diversion of Development Profits

35.     As Development's President, Mr. Carnicelli took on an active role in managing Development as it worked on and completed numerous Projects for the Fareri Entities.

36.     Despite Development's successful performance and Mr. Fareri's representations to Mr. Carnicelli, the Fareri Entities repeatedly failed to pay Development fair profits consistent with industry standards.

37.     Notwithstanding his obligations to Development as a director and the majority shareholder and his representations and agreement with Mr. Carnicelli, Mr. Fareri kept the profits

8

from the various Projects in other entities and withheld them from Development and Mr. Carnicelli. Mr. Fareri would pay Development for its "costs," meaning the salaries and wages necessary for Development to perform the services, not the "rate multipliers" on the professionals' time that would create profit for Development.

38.     This scheme created a great savings for Mr. Fareri's other entities while depriving Development of standard business profit and Mr. Carnicelli of his value as the 49% owner.

39.     A particularly egregious example of Mr. Fareri's wrongdoing involves a condominium development for the Village of Bronxville, New York (the "Bronxville Project"). Development performed extensive environmental mediation and construction work for Gateway Kensington, LLC ("Kensington"), a business entity controlled by Mr. Fareri. A written agreement memorialized the terms of the services engagement between Development and Kensington and set forth fee schedules.

40.     As a result of Development's work, upon information and belief, Kensington sold the condominiums for over $100 million and Mr. Fareri personally received over $14 million in redevelopment tax credits from New York State plus approximately $40 million in profits for the condominiums through Kensington.

41.     Development, however, did not receive the fees to which it was entitled, despite the contractually binding agreement between Kensington and Development. Mr. Fareri refused to pay Development more than $16 million for work performed on the Bronxville Project.

### *Arbitration and Kensington Bankruptcy*

42.     In December 2019, Mr. Carnicelli commenced an arbitration derivatively on behalf of Development against Kensington (the "Arbitration") seeking fees due to Development for

services rendered on the Bronxville Project.

43.     During the Arbitration, Mr. Fareri's position during his testimony was that he was unaware of the Contract between Kensington and Development. After discovery on the matter, the Panel found Mr. Fareri's position in his testimony to be "inaccurate at best, at the very least unpersuasive, and inconsistent with his Declaration."

44.     During the Arbitration, Mr. Sheskier testified on direct examination by Kensington's counsel. On cross examination, however, he invoked the Fifth Amendment *17 times* to avoid answering questions by opposing counsel and to escape liability for his wrongful conduct.

45.     As the Examiner's Report explains, Mr. Fareri effectively accused Mr. Sheskier, his own CFO, of fraud at the arbitration:

> Mr. Fareri claimed that Contract 2 and Kensington's requests for BTCs were actually fraudulent and were prepared by, among others, Mr. Sheskier. However, even though Mr. Fareri all but accused Mr. Sheskier of fraud, he continued (and continues) to employ Mr. Sheskier and hold him in a position of significant trust.

46.     The Examiner further found as follows:

> The arbitrators appeared to find it difficult to fathom that Mr. Fareri would keep Mr. Sheskier in his employ if he really did those things without Mr. Fareri knowing. In the end, the arbitrators appeared to find Mr. Carnicelli's position clear, consistent, and simple, while Mr. Fareri's position was laden with inconsistencies and things the arbitrators could not logically reconcile. The Examiner has no reason or basis to revisit the well-supported decision of the panel in Arbitration and has adopted the panel's conclusions and factual findings for purposes of this Report.

47.     On April 25, 2021, the Panel unanimously awarded Development $14,226.806 and Mr. Carnicelli $104,640.38 (the "Award"). Mr. Carnicelli brought a special proceeding to confirm the Award in New York state court.

48.     On May 14, 2021, the return date of Mr. Carnicelli's petition to confirm the Award,

Kensington filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code, preventing entry of a judgment and distribution of the Award. That litigation tactic delayed justice, and obfuscated the truth for a period of time for the benefit of Mr. Fareri. Ultimately, that bankruptcy has resulted in a plan requiring Mr. Fareri personally to guarantee millions in payments to the Estate. The Examiner Report explains why: "Based on the foregoing, the Examiner concludes that there is a high likelihood of success in recovering all distributions made by Kensington during the three-year lookback period preceding the Petition Date, subject to reduction if Mr. Fareri successfully asserts a defense of offset for contributions made during the same period."

49.    The Bronxville Project was just one instance in which Mr. Fareri and his entities refused to pay Development fair labor rates and fees for services rendered. On multiple other Projects, Fareri Entities have paid Development only enough to cover Development's out of pocket costs and have withheld management fees and usual and customary labor fees. Those Projects include without limitation Projects at 3030 Westchester Avenue, 415 Greenwich Avenue, Old Track Residential, The Harbor, 1162 East Putnam Avenue, and Temple Street.

50.    Among other things, the fees identified by Defendants do not reflect the usual and customary labor rates that Development is owed for each Project. Accordingly, a complete accounting is required to determine the total amount due to Development.

51.    In 2019, Mr. Sheskier prepared a document at Mr. Fareri's direction (the "Discussion Document") reflecting costs and fees related to the Projects. The Discussion Document concedes that significant construction management fees were owed to Development on all of the Projects.

*Development's Operations are Suspended*

52.     Throughout 2018 and 2019, Mr. Carnicelli demanded that Mr. Fareri honor his obligations and pay Development the profits it had earned on the Bronxville Project and other Projects.

53.     In response, Mr. Fareri wrongfully suspended Development's operations and purported to terminate Mr. Carnicelli's role as president at Development.

54.     Specifically, on October 18, 2019, Ms. Fareri wrote to Mr. Carnicelli and stated:

I have spoken to [Mr. Fareri] and he asked me to reach out to you. Given the overall circumstances, acting as the majority shareholder and the sole director, of [Development] **he has decided to suspend operations of Development**. This means that at this point you should not come to the office at 2 Deerfield **and [Mr. Fareri] has decided to award the Goshen project to WESCORP**, please refrain from going to this site also. As of the end of workday today, October 18, 2019, you will no longer have access to your Gateway email or work computer.

[Mr. Fareri] does not believe it is appropriate or productive for you and he to engage in any further direct communications until there is a resolution of the current situation; and, in that regard, we are suggesting that you engage an attorney to represent you in negotiating a mutually acceptable settlement. (emphasis added)

55.     Upon suspending Development's operations, Mr. Fareri, with Ms. Fareri's assistance, transferred Development's Projects to other entities, thus diverting work and profits away from Development to other Fareri-controlled entities.

56.     Mr. Fareri and Ms. Fareri sent the following notice dated October 18, 2019, notifying all the Fareri staff that Development had ceased operations and transferring various staff members to other Fareri entities:

"Today, after approximately thirteen years with us, Jim Carnicelli will be leaving the Fareri Team to pursue other professional options, effective at the end of today. Gateway Development will cease operations as of today. Rest assured that all of you who currently work for Gateway **still have employment**. For the time being, Tony Martinez will take over all construction related activities in Goshen. Susan and Dax please report to Tony. Kevin and the Design team lease report directly to

John. Junior and his crew members will report to Neil for the Bronxville Engineer's report punchlist. We expect a seamless transition and know that we can continue to rely on all of you."

57.     Mr. Fareri and Ms. Fareri also took Development's assets, including trucks and other equipment, and put them to use for the benefit of those other companies wholly owned by Mr. Fareri (in which Mr. Carnicelli has no financial interest).

58.     Mr. Fareri and Ms. Fareri also reassigned the staff of Development, including without limitation its Head Architect and its Project Manager, to other entities controlled by Mr. Fareri.

59.     Thus. Development's operations were terminated, and its assets were transferred to other entities controlled by Mr. Fareri without consent from Mr. Carnicelli, its President and 49% shareholder).

60.     The transfer of Development's Projects represents a gross usurpation of Development's corporate opportunities. For example, the Goshen project (referred to in Ms. Fareri's email quoted above) was a redevelopment Project encompassing 13-acres in the Village of Goshen, New York for which an entity controlled by Mr. Fareri had engaged Development to provide services (the "Goshen Project"). Mr. Fareri took the Goshen Project from Development and gave it to another entity he controlled.

61.     Mr. Fareri and Mr. Sheskier have acknowledged that, at the time Mr. Fareri took the Goshen Project from Development, Development was owed more than $65,100 in fees for construction services rendered. Once again, however, that amount falls far shy of the amount Development should have been paid. The fee is arbitrary and does not reflect the usual and customary labor rates Development is entitled. In addition, if Development had not been deprived of the opportunity to complete the Goshen Project. it would have earned additional fees.

13

62.     Even more significant than the Goshen Project was the North 80 Project (f/k/a the North 60 Project), a $1.2 billion development of nearly 3 million square feet of space in the Town of Mount Pleasant, New York. On information and belief, Mr. Fareri diverted the North 80 Project, which is expected to be highly profitable, from Development to another entity that he controls.

63.     As of the date Mr. Fareri wrongfully suspended Development's operations, Development had already began work on North 80 and provided years of architectural and pre-construction services.

64.     Mr. Fareri intended that Development would serve as the construction services manager on North 80, as it had on every other significant project since 2014. Mr. Carnicelli, for his part, intended to lead Development as it provided those services.

65.     In July 2017, Neil De Luca, Fareri's project leader, wrote to Mr. Carnicelli to advise him that the Town Supervisor had advised Mr. De Luca and Mr. Fareri that he believed the Town would support three types of housing at North 80. Mr. De Luca congratulated Mr. Carnicelli, writing "WeeOoooo!!! Thought you might like to know, as you will probably be busy out there for the next fifteen years."

66.     By diverting Projects, including without limitation the Goshen Project and the North 80 Project, away from Development for his own benefit, Mr. Fareri demonstrated a disregard for Development's business expectancies and Mr. Carnicelli's rights as a minority shareholder.

67.     On information and belief, as Chairman of the Board, Mr. Fareri has not held a Board meeting, conducted a shareholder vote, or otherwise properly governed Development.

68.     Defendants, in their to scheme to convert, steal or otherwise defraud Mr. Carnicelli

of money to which he was rightfully entitled, engaged in self-dealing, unauthorized manipulation, misallocation and diversion of profits owed to Development.

69.     Defendants have effectively taken substantial profits from past Development Projects, ongoing Development Projects, and prospective Development Projects.

### Manipulation of Development's financial records

70.     Upon information and belief, Mr. Fareri, with the assistance of Mr. Sheskier, manipulated Development's books and records.

71.     In July 2020, Mr. Sheskier informed Mr. Carnicelli that Development's 2019 income tax returns were unavailable and that there were no funds available for distributions to shareholders. He further instructed Mr. Carnicelli that based on his "internal review" of financial records, the prior year financial records and tax returns would need to be amended.

72.     Mr. Sheskier further refused to deliver to Mr. Carnicelli his K-1 schedules and other tax documents and back up information despite repeated requests.

### The Development Bankruptcy

73.     On October 28, 2020, Mr. Carnicelli filed an action in this Court (the "Connecticut Action"), individually against Defendants and Development and derivatively on behalf of Development.

74.     Mr. Carnicelli asserted direct claims against Mr. Fareri for breach of the Shareholders' Agreement, breach of the covenant of good faith and fair dealing, breach of Connecticut General Statute § 31-72, and fraud. Mr. Carnicelli's derivative claims on behalf of Development against Mr. Fareri included breach of fiduciary duty, statutory fraud, conversion, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (the "Derivative

Claims"). Mr. Carnicelli also sought a judicial dissolution of Development. Mr. Carnicelli did not assert a direct claim for breach of fiduciary duty against Mr. Fareri as a majority shareholder.

75.     Mr. Fareri made several unsuccessful attempts to dismiss, limit, or stay the Connecticut Action, including a motion to dismiss the Derivative Claims on the ground that Mr. Carnicelli was not a proper plaintiff. This Court denied Mr. Fareri's motions, entered a Case Management Order providing for discovery, and ordered Mr. Fareri to produce Development's books and records separate from and in advance of discovery on the ground that Mr. Carnicelli was entitled to them under the Shareholders' Agreement.

76.     After issuance of the Award, on May 11, 2021 Mr. Carnicelli applied for a temporary injunction and preliminary injunction in the Connecticut Action, seeking to secure amounts to which he and Development were entitled.

77.     A preliminary injunction hearing was set for May 26, 2021. On that morning, Defendants filed a Notice of Bankruptcy advising the Court that Gateway had filed a Chapter 7 petition (the "Petition") for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), which had the effect of staying all proceedings in the Connecticut Action including the preliminary injunction hearing and production of documents.

78.     It is abundantly clear that Mr. Fareri caused Development to file its Petition in an effort to evade responsibility for his wrongful conduct and frustrate Mr. Carnicelli's ability to recover the damages to which he and Development are entitled.

79.     The Petition and the Development Bankruptcy are the product of fraud as, on information and belief, Development was not insolvent at the time of the filing by virtue of the

Award.

80.     Just a few months prior, as of the end of calendar year 2020, Development's books and records showed more than $1.7 million in assets and less than $50k in liabilities. In April 2021, Development won the Award of more than $14 million, rendering it even more solvent.

81.     Development's Petition itself showed the company to be solvent, with estimated assets at between $10 million and $50 million and liabilities at between only $1 million to $10 million.

82.     Development had no legitimate reason to be in bankruptcy, except for Mr. Fareri's malicious and self-serving intentions to escape accountability for his actions.

83.     In a further fraud on the Bankruptcy Court, Mr. Fareri caused Development to file Schedules containing more than $10 million of supposed liabilities to his other entities related to the Projects. These liabilities did not appear on Development's balance sheets prior to the commencement of the Development Bankruptcy. They appear to be self-serving fraud by Mr. Fareri.

84.     Mr. Sheskier was principally responsible for assembling and presenting the false information contained in the Schedules.

85.     The liabilities reflected on the Schedules are completely inconsistent with the Discussion Document, also prepared by Mr. Sheskier. They represent a transparent attempt by Mr. Fareri, with the assistance of Mr. Sheskier, to reduce Mr. Carnicelli's claim to equity in the Development Bankruptcy.

86.     Mr. Fareri certified under the penalties of perjury that the filing of the Petition was in the best interests of Development's shareholders. However, Mr. Fareri did not approach Mr.

Carnicelli to seek input prior to filing the Petition. Mr. Carnicelli is the only other shareholder of Development, besides Mr. Fareri himself.

87.    Following the commencement of the Development Bankruptcy, a Chapter 7 Trustee was appointed and assumed control of the Derivative Claims. The Trustee immediately removed the Connecticut Action from this Court, the forum of Mr. Carnicelli's choice, to the United States District Court for the District of Connecticut. The case was then transferred to the District Court for the Southern District of New York and referred to the Bankruptcy Court.

88.    The control of the derivative claims now rested in the hands of the Trustee, a party who lacks Mr. Carnicelli's knowledge of the business and personal stake in the claims.

89.    Thus, based on the facts alleged, and in addition to other facts yet to be discovered, Mr. Fareri has not only gutted Development and stripped it of all its assets, but also abused the bankruptcy system and frustrated Mr. Carnicelli's efforts to redress the injuries that he and Development have suffered. Mr. Fareri's actions were intended to damage Mr. Carnicelli personally and render his stake in Development worthless.

## FIRST CAUSE OF ACTION
### (Breach of Fiduciary Duty as to Mr. Fareri)

90.    Mr. Carnicelli repeats and realleges Paragraphs 1-89.

91.    As majority shareholder, Mr. Fareri owes a duty of loyalty, good faith and fair dealing to Mr. Carnicelli, the minority shareholder.

92.    Mr. Fareri breached his fiduciary duties by advancing Mr. Fareri's own interests above Mr. Carnicelli's by committing the wrongful acts alleged herein, which deprived Mr. Carnicelli of his equity.

93.    Mr. Fareri's actions are the proximate cause of Mr. Carnicelli's losses.

94.     Accordingly, Mr. Carnicelli has been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Aiding and Abetting Breach of Fiduciary Duty as to Ms. Fareri)**

95.     Mr. Carnicelli repeats and realleges Paragraphs 1-89.

96.     Mrs. Fareri and is  liable to Mr. Carnicelli for aiding Mr. Fareri in breaching Mr. Fareri's fiduciary duties owed to Mr. Carnicelli.

97.     Mrs. Fareri was  aware of her role in Mr. Fareri's actions that underlie Mr. Fareri's breach of fiduciary duties owed to Mr. Carnicelli, and knew these actions to be in breach of Mr. Fareri's fiduciary duties to Mr. Carnicelli.

98.     Mrs. Fareri knowingly and substantially assisted Mr. Fareri in breaching fiduciary duties owed to Mr. Carnicelli by her involvement in wrongfully terminating Mr. Carnicelli from Development, suspending Development's operations, and transferring Development's assets to other entities controlled by Mr. Fareri.

99.     Accordingly, Mr. Carnicelli has been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
**(Aiding and Abetting Breach of Fiduciary Duty as to Mr. Sheskier)**

100.    Mr. Carnicelli repeats and realleges Paragraphs 1-89.

101.    Mr. Sheskier is liable to Mr. Carnicelli for aiding Mr. Fareri in breaching Mr. Fareri's fiduciary duties owed to Mr. Carnicelli.

102.    Mr. Sheskier was aware of his role in Mr. Fareri's actions that underlie Mr. Fareri's breach of fiduciary duties owed to Mr. Carnicelli, and knew these actions to be in breach of Mr. Fareri's fiduciary duties to Mr. Carnicelli.

19

103.   Mr. Sheskier knowingly and substantially assisted Mr. Fareri in breaching fiduciary duties owed to Mr. Carnicelli by his involvement in wrongfully terminating Mr. Carnicelli from Development, suspending Development's operations, and transferring Development's assets to other entities controlled by Mr. Fareri.

104.   Mr. Sheskier is responsible for knowingly fabricating documents in order to assist Mr. Fareri in breaching Mr. Fareri's fiduciary duties owed to Mr. Carnicelli.

105.   Accordingly, Mr. Carnicelli has been harmed in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff James Carnicelli respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

1.   Awarding the Plaintiff compensatory and incidental damages against all Defendants;

2.   Imposing a constructive trust on entities in which the Defendants, or any of them, hold a controlling interest;

3.   Awarding Plaintiff all costs incurred in this action including without limitation attorneys' fees; and

4.   Awarding the Plaintiff any legal and equitable relief that the Court deems just.

PLAINTIFF,
JAMES CARNICELLI, JR.


By: _____
Joseph M. Pastore III
Melissa Rose McClammy
Paul R. Fenaroli
Pastore LLC
Juris No. 433711
4 High Ridge Park. Third Floor
Stamford. CT 06905
203-658-8454 (Tel.)
jpastore@pastore.net
mmcclammy@pastore.net
pfenaroli@pastore.net

A TRUE COPY
ATTEST

JOHN CORELLI
STATE MARSHAL
COUNTY OF FAIRFIELD

21

JAMES CARNICELLI JR.,                              :

                Plaintiff,         :      SUPERIOR COURT

                                  :

   vs.                                              :      JUDICIAL DISTRICT OF

                                  :      STAMFORD/ NORWALK

JOHN J. FARERI, JULIE FARERI ZIELINSKI, and   :

CHRISTOPHER SHESKIER,                          :      AT STAMFORD

                                  :

              Defendants         :      AUGUST 5, 2021

## <u>STATEMENT OF AMOUNT IN DEMAND</u>

The amount in demand in this action is more than Fifteen Thousand Dollars ($15,000)

exclusive of interest and costs.

Dated: August 5, 2022

                                    PLAINTIFF,
                                    **JAMES CARNICELLI, JR.**

                                    By: _____
                                    Joseph M. Pastore III
                                    Melissa Rose McClammy
                                    Paul R. Fenaroli
                                    Pastore LLC
                                    Juris No. 433711
                                    4 High Ridge Park, Third Floor
                                    Stamford. CT 06905
                                    203-658-8454 (Tel.)
                                    jpastore@pastore.net
                                    mmcclammy@pastore.net
                                    pfenaroli@pastore.net

A TRUE COPY
ATTEST

JOHN CORELLI
STATE MARSHAL
COUNTY OF FAIRFIELD

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal, with attachments, was served by United States first class mail, postage prepaid, this 25th day of August 2022 upon, Attorney Joseph M. Pastore III, Pastore LLC, 4 High Ridge Park, Third Floor, Stamford CT 06905, counsel for the plaintiff James Carnicelli, Jr.

_____ */s/ James C. Graham* _____

James C. Graham